No. 23-12155

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

———————————

AUGUST DEKKER, *et al.*,

Plaintiffs-Appellees

v.

SECRETARY, FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION,
*et al.*,

Defendants-Appellants

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

———————————

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE IN SUPPORT OF
PLAINTIFF-APPELLEES AND URGING AFFIRMANCE

———————————

SAMUEL R. BAGENSTOS
 General Counsel

AARON D. SCHUHAM
 Associate General Counsel

CARY LACHEEN
STEPHEN M. RICHMOND
ALESDAIR H. ITTELSON
 Attorneys
 Department of Health & Human Services
 200 Independence Ave., SW
 Washington, D.C.  20201

KRISTEN CLARKE
 Assistant Attorney General

BONNIE I. ROBIN-VERGEER
ANNA M. BALDWIN
 Attorneys
 U.S. Department of Justice
 Civil Rights Division
 Appellate Section
 Ben Franklin Station
 P.O. Box 14403
 Washington, D.C.  20044-4403
 (202) 305-4278

*Dekker v. Secretary, Florida Agency for Health Care Admin.*, No. 23-12155

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rules 26.1-1 to 26.1-3 and 28-1(b), counsel for amicus curiae United States hereby certifies that in addition to those identified in the briefs filed by appellants and plaintiffs-appellees, the following individuals have an interest in the outcome of this case:

1. Bagenstos, Samuel R., U.S. Department of Health and Human Services, counsel for United States;

2. Baldwin, Anna M., U.S. Department of Justice, Civil Rights Division, counsel for United States;

3. Clarke, Kristen, U.S. Department of Justice, Civil Rights Division, counsel for United States;

4. Ittelson, Alesdair H., U.S. Department of Health and Human Services, counsel for United States;

5. LaCheen, Cary, U.S. Department of Health and Human Services, counsel for United States;

6. Richmond, Stephen M., U.S. Department of Health and Human Services, counsel for United States;

7. Robin-Vergeer, Bonnie I., U.S. Department of Justice, Civil Rights Division, counsel for United States;

*Dekker v. Secretary, Florida Agency for Health Care Admin.*, No. 23-12155

8.    Schuham, Aaron D., U.S. Department of Health and Human Services,

counsel for United States.

s/ Anna M. Baldwin
ANNA M. BALDWIN
  Attorney

Date:  December 4, 2023

# TABLE OF CONTENTS

**PAGE**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ................................................... C-1

INTEREST OF THE UNITED STATES ................................................ 1

STATEMENT OF THE ISSUES ............................................................. 1

STATEMENT OF THE CASE ................................................................ 3

    A.    The Medicaid Program And Relevant Medicaid Requirements ..........3

    B.    Florida's Coverage Exclusions For "Treatment Of Gender
Dysphoria" And "Sex-Reassignment Prescriptions
Or Procedures" .....................................................................6

    C.    Procedural History ...............................................................9

SUMMARY OF ARGUMENT ..............................................................13

ARGUMENT

    I.    The district court correctly held that the challenged coverage
exclusions violate the Medicaid statute...............................................14

        A.    The challenged coverage exclusions violate Medicaid's
EPSDT requirement. ...............................................................15

        B.    The challenged coverage exclusions violate Medicaid's
comparability requirement. .......................................................18

    II.    The district court correctly held that the challenged
coverage exclusions violate Section 1557 of the ACA......................20

        A.    The challenged exclusions facially discriminate on
the basis of sex. .....................................................................21

**TABLE OF CONTENTS (continued):**                    **PAGE**

B.    The challenged exclusions discriminate based on
sex by targeting transgender persons. ........................................23

C.    The district court's Section 1557 holding is not at odds
with *Eknes-Tucker* or *Adams*. ....................................................24

III.    If the Court reaches the equal-protection issue, it should
remand for additional factfinding on whether SB254 was
enacted with a discriminatory purpose................................................27

CONCLUSION ..................................................................................... 30

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF CITATIONS

**CASES:**                                                          **PAGE**

*A.C. v. Metropolitan Sch. Dist. of Martinsville*, 75 F.4th 760 (7th Cir. 2023),
    *pet. for cert. pending*, No. 23-392 (filed Oct. 11, 2023) ........................ 22-23

*Adams v. School Bd. of St. Johns Cnty.*,
    57 F.4th 791 (11th Cir. 2022) (en banc)........................................... 11, 26-28

*Alexander v. Choate*, 469 U.S. 287 (1985).................................................4

\* *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731 (2020)....................................... *passim*

*Boyden v. Conlin*, 341 F. Supp. 3d 979 (W.D. Wis. 2018) ...................................21

*Collins v. Hamilton*, 349 F.3d 371 (7th Cir. 2003)...................................16

*Cooper v. Harris*, 581 U.S. 285 (2017) ...................................28

*Curtis v. Taylor*, 625 F.2d 645 (5th Cir. 1980)...........................................3

*Davis v. Shah*, 821 F.3d 231 (2d Cir. 2016) ...........................................19

*Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518 (3d Cir. 2018) ...........................25

*Doe v. CVS Pharm., Inc.*, 982 F.3d 1204 (9th Cir. 2020)......................................21

*Douglas v. Independent Living Ctr. of S. Cal., Inc.*, 565 U.S. 606 (2012)...............3

*Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205 (11th Cir. 2023),
    *pet. for reh'g en banc pending* (filed Sept. 11, 2023) ............................. 24-28

*Fain v. Crouch*, 618 F. Supp. 3d 313 (S.D. W. Va. 2022),
    *appeal pending*, No. 22-1927 (4th Cir. docketed Sept. 6, 2022),
    *reh'g en banc granted* (4th Cir. Apr. 12, 2023)
    (argued Sept. 21, 2023)........................................................ 19, 21

*Fils v. City of Aventura*, 647 F.3d 1272 (11th Cir. 2011)......................................29

**CASES (continued):**                                                      **PAGE**

*Flack v. Wisconsin Dep't of Health Servs.*,
  395 F. Supp. 3d 1001 (W.D. Wis. 2019)........................................... 18-19, 21

*Fletcher v. Alaska*, 443 F. Supp. 3d 1024 (D. Alaska 2020)...................................21

*Franklin v. Gwinnett Cnty. Pub., Sch*s., 503 U.S. 60 (1992)....................................25

*Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668 (6th Cir. 2013)..................................25

* *Garrido v. Dudek*, 731 F.3d 1152 (11th Cir. 2013)................................ 4-5, 18, 20

*Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011) ........................................... 10, 23

*Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110 (9th Cir. 2023)....................25

*Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586 (4th Cir. 2020),
  *cert. denied*, 141 S. Ct. 2878 (2021)...............................................................23

*Katie A. v. Los Angeles Cnty.*, 481 F.3d 1150 (9th Cir. 2007) ...........................5, 15

*Lakoski v. James*, 66 F.3d 751 (5th Cir. 1995) .........................................................25

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986) .........................................25

* *Moore v. Reese*, 637 F.3d 1220 (11th Cir. 2011) ..............................................4, 15

*Olmstead v. L.C.*, 527 U.S. 581 (1999)............................................................. 24-25

*Pediatric Specialty Care, Inc. v. Arkansas Dep't of Human Servs.*,
  293 F.3d 472 (8th Cir. 2002) ..........................................................................16

*Pereira v. Kozlowski*, 996 F.2d 723 (4th Cir. 1993).................................................16

*Pinneke v. Preisser*, 623 F.2d 546 (8th Cir. 1980) ..................................................19

*Pullman-Standard v. Swint*, 456 U.S. 273 (1982) ...................................................28

*Rogers v. Lodge*, 458 U.S. 613 (1982)......................................................................28

## CASES (continued): PAGE

\* *Rush v. Parham*, 625 F.2d 1150 (5th Cir. 1980)............................................ 11, 16

*S.D. v. Hood*, 391 F.3d 581 (5th Cir. 2004)................................................16

*Vengalatorre v. Cornell Univ.*, 36 F.4th 87 (2d Cir. 2022) ....................................25

*Weaver v. Reagen*, 886 F.2d 194 (8th Cir. 1989) ....................................16

*Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
858 F.3d 1037 (7th Cir. 2017) ........................................................22

*White v. Beal*, 555 F.2d 1146 (3d Cir. 1977) ..........................................20

*Wolfe v. Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860 (8th Cir. 2011).......................25

## STATUTES:

Affordable Care Act
    42 U.S.C. 18116....................................................................1, 3
    42 U.S.C. 18116(a) ........................................................... 21, 25

Medicaid Act
    42 U.S.C. 1395hh......................................................................1
    42 U.S.C. 1396.........................................................................3
    42 U.S.C. 1396a(a)(10)........................................................ 2-5
    42 U.S.C. 1396a(a)(17)...........................................................16
    42 U.S.C. 1396d(a) .............................................................5, 15
    42 U.S.C. 1396d(a)(5)(A).........................................................5
    42 U.S.C. 1396d(a)(12) ...........................................................5
    42 U.S.C. 1396d(r)(5)..........................................................5, 15

20 U.S.C. 1681 .......................................................................... 20, 25

42 U.S.C. 2000e-2(a)(1)...................................................................25

42 U.S.C. 2000h-2...........................................................................2

Fla. Stat. § 286.311(2) (2023) ...................................................... *passim*

**STATUTES (continued):**                                                **PAGE**

Fla. Stat. § 409.905 (2023)..................................................................... 6, 19-20

Fla. Stat. § 409.905(9) (2023) ...................................................................6

Fla. Stat. § 409.906 (2023)......................................................................... 19-20

Fla. Stat. § 409.906(20) (2023) .................................................................6

Fla. Stat. § 456.001 (2023)........................................................................9, 22

**REGULATIONS:**

42 C.F.R. 430.15(b) ...................................................................................1

42 C.F.R. 440.230(c).............................................................................. 12, 18

42 C.F.R. 440.230(d) .................................................................................4, 19

42 C.F.R. 440.240(b) .................................................................................18

87 Fed. Reg. 47,916 (proposed Aug. 4, 2022)........................................26

Exec. Order No. 12,250, § 1-201, 3 C.F.R. 298 (1980 comp.)................2

Exec. Order No. 13,988, § 1, 86 Fed. Reg. 7023 (Jan. 20, 2021)...........2

Fla. Admin. Code r. 59G-1.050(7) (2022) ....................................... *passim*

**REGULATIONS:**

Centers for Medicare & Medicaid Servs., *State Medicaid Manual*,
    available at https://perma.cc/DJR3-56JK ......................................4

## INTEREST OF THE UNITED STATES

This case challenges a Florida administrative rule and state statute that, in 2022, withdrew Medicaid coverage for certain medical care for all transgender, Medicaid-eligible Floridians, both adults and adolescents.  The treatments at issue—puberty-delaying medications and hormone therapies—were previously covered by Florida's Medicaid program.  Except when used by transgender people to treat gender dysphoria, those medications remain covered.  Following a bench trial, the district court held that these exclusions violate the Medicaid statute, Section 1557 of the Affordable Care Act (ACA), and the Equal Protection Clause, and issued a permanent injunction.

The United States has a strong interest in States' compliance with Medicaid's requirements.  Congress directed the Secretary of Health and Human Services (HHS) to issue regulations implementing the Medicaid program, 42 U.S.C. 1395hh, and within HHS, the Centers for Medicare & Medicaid Services (CMS) oversees States' compliance with Medicaid requirements.  42 C.F.R. 430.15(b).  The United States also protects the rights of individuals seeking nondiscriminatory access to health programs and activities under Section 1557, 42 U.S.C. 18116.  Congress authorized the Secretary of HHS to promulgate regulations implementing Section 1557's nondiscrimination requirements.  42 U.S.C. 18116(c).  And the Department of Justice coordinates and implements

federal laws that protect individuals from discrimination on the basis of sex in a wide range of federally funded programs, including health coverage. Exec. Order No. 12,250, § 1-201, 3 C.F.R. 298 (1980 comp.).

The United States also has a strong interest in protecting the rights of individuals who are lesbian, gay, bisexual, transgender, and intersex. The President issued an Executive Order recognizing the right of all people to be "treated with respect and dignity" and receive "equal treatment" regardless of gender identity or sexual orientation. Exec. Order No. 13,988, § 1, 86 Fed. Reg. 7023 (Jan. 20, 2021). Congress also authorized the Attorney General to intervene in cases brought under the Fourteenth Amendment to vindicate sex-based denials of equal protection of the laws. *See* 42 U.S.C. 2000h-2.

The United States files this brief under Federal Rule of Appellate Procedure 29(a).

## STATEMENT OF THE ISSUES

The United States addresses the following questions:

1. Whether the district court correctly held that Florida's challenged coverage exclusions violate the Medicaid statute's comparability requirement, 42 U.S.C. 1396a(a)(10)(B)(i), as well as its requirement that States cover early and periodic screening, diagnostic, and treatment services for certain Medicaid-eligible

beneficiaries under age 21, 42 U.S.C. 1396a(a)(10)(A), 1396a(a)(43)(C),

1396d(a)(4)(B), and 1396d(r).

2.   Whether the district court correctly held that the challenged coverage

exclusions discriminate on the basis of sex in violation of Section 1557 of the

ACA, 42 U.S.C. 18116.

3.   Whether this Court, if it reaches plaintiffs' equal-protection claim, should

remand for further factfinding regarding whether Florida's statutory coverage

exclusion was enacted in part with a discriminatory purpose.

## STATEMENT OF THE CASE

### A.    The Medicaid Program And Relevant Medicaid Requirements

1.   The Medicaid program, established in 1965 by Title XIX of the Social

Security Act, 42 U.S.C. 1396 *et seq.*, is a cooperative federal-state program that

provides medical assistance to individuals of all ages whose income and resources

are insufficient to pay for necessary medical care.  42 U.S.C. 1396-1; *see Douglas

v. Independent Living Ctr. of S. Cal., Inc.*, 565 U.S. 606, 610 (2012).  The

Medicaid statute and its implementing regulations "prescribe[] substantive

requirements governing the scope of each state's program." *Curtis v. Taylor*, 625

F.2d 645, 649 (5th Cir. 1980).  Subject to these requirements, States "devise and

fund their own medical assistance programs . . . and the federal government

provides partial reimbursement." *Moore v. Reese*, 637 F.3d 1220, 1232 (11th Cir. 2011) (citing 42 U.S.C. 1396b(a), 1396d(b)).

Although participation in Medicaid is voluntary, States that opt to participate must comply with federal statutory and regulatory requirements. *Alexander v. Choate*, 469 U.S. 287, 289 n.1 (1985); *Garrido v. Dudek*, 731 F.3d 1152, 1153-1154 (11th Cir. 2013). The Medicaid statute requires participating States to cover certain health services for eligible beneficiaries, including physician services. 42 U.S.C. 1396a(a)(10)(A), 1396d. But it allows States to "place appropriate limits" on covered care based on "such criteria as medical necessity or on utilization control procedures." 42 C.F.R. 440.230(d); *see also Garrido*, 731 F.3d at 1154; *Moore*, 637 F.3d at 1232-1233.

2. Two Medicaid requirements are at issue in this case: the statute's early and periodic screening, diagnostic and treatment services (EPSDT) requirement and its comparability requirement.

Medicaid's EPSDT requirement mandates coverage of certain medical care for eligible beneficiaries under age 21. 42 U.S.C. 1396a(a)(10)(A), 1396a(a)(43)(C), 1396d(a)(4)(B), 1396d(r). Its purpose is to "[a]ssure that health problems are diagnosed and treated early, before they become more complex and their treatment more costly." Centers for Medicare & Medicaid Servs., *State Medicaid Manual* § 5010.B, available at https://perma.cc/DJR3-56JK. As a result

of the EPSDT requirement, States must cover medical, vision, dental, and hearing screening services.  42 U.S.C. 1396a(a)(10)(A), 1396a(a)(43)(C),1396d(a)(4)(B), 1396d(r)(1)-(4).

Under EPSDT's catch-all provision, States must cover "[s]uch other necessary health care, diagnostic services, treatment, and other measures described in [1396d(a)] to correct or ameliorate defects and physical and mental illnesses and conditions discovered by the screening services."  42 U.S.C. 1396d(r)(5).  Such measures include physician services and prescription drugs.  42 U.S.C. 1396d(a)(5)(A) and (12).  States must provide all services listed in Section 1396d(a) to EPSDT-eligible beneficiaries when those services are medically necessary.  *See Katie A. v. Los Angeles Cnty.*, 481 F.3d 1150, 1154 (9th Cir. 2007).

Medicaid's comparability provision requires, as relevant here, that "the medical assistance made available to any individual . . . shall not be less in amount, duration or scope than the medical assistance made available to any other such individual."  42 U.S.C. 1396a(a)(10)(B)(i).  Medicaid's comparability requirement "ensures equitable treatment of beneficiaries."  *Garrido*, 731 F.3d at 1154.

3.  Florida, like all other States, has chosen to participate in Medicaid.  Doc. 246, at 6.[1]  Florida law requires Medicaid coverage for "services and procedures"

---

[1]  "Doc. __ " refers to documents filed on the district court docket.  "Br. __" refers to Defendants' opening brief on appeal.

rendered by a licensed physician when "medically necessary for the treatment of an injury, illness, or disease."  Fla. Stat. § 409.905(9) (2023); *see also* Fla. Stat. § 409.906(20) (2023).  To qualify as medically necessary, Florida's Medicaid agency, the Agency for Healthcare Administration (AHCA), requires that the treatment be "consistent with generally accepted professional medical standards as determined by the Medicaid program, and not experimental or investigational." Fla. Admin. Code r. 59G-1.010(2.83) (2017).[2]

### B.    Florida's Coverage Exclusions For "Treatment Of Gender Dysphoria" And "Sex-Reassignment Prescriptions Or Procedures"

Until 2022, Florida's Medicaid program covered puberty-delaying medications (puberty blockers) for transgender adolescents and hormone therapies for transgender adolescents and adults.  Doc. 246, at 9.  "When AHCA considers providing Medicaid coverage for a type of medical treatment for the first time, it

---

[2]  AHCA generally considers medical care "experimental" or "investigational" in four circumstances (Doc. 246, at 7-8 (citing Fla. Admin. Code r. 59G-1.010(2.46))):  (1) when any required approval has not been given by the Food and Drug Administration (FDA); (2) when the treatment is undergoing certain clinical trials or being studied to determine safety or efficacy as compared to the standard treatments; (3) when expert consensus is that further safety or efficacy studies are needed; or (4) when the treatment is used for a purpose not approved by the FDA, "meaning the use is not listed in one of three compendia of off-label uses or supported by peer-reviewed literature" (*id.* at 8 (citing Fla. Admin. Code r. 59G-1.010(2.46) and AHCA 30(b)(6) Dep. (Doc. 235-1, at 53-55))).

sometimes prepares a report on whether the treatment is consistent with generally accepted professional medical standards—a 'GAPMS' report." *Id.* at 8.

In 2016, AHCA prepared a GAPMS report on puberty blockers for transgender adolescents. It concluded that Medicaid coverage for such treatment should be available on an individualized basis. Doc. 246, at 8. In 2017, AHCA staff prepared another GAPMS report, which was never formally adopted, regarding "treatment of transgender individuals with cross-sex hormones." *Ibid.* That report concluded that such treatment was "consistent with generally accepted professional medical standards and met the requirements for Medicaid coverage." *Ibid.* (internal quotation marks and citation omitted).

In 2022, AHCA reversed course. Doc. 246, at 9. While AHCA had previously issued GAPMS reports only when initially considering a treatment, "apparently for the first time ever, AHCA elected to prepare another report for these already-approved treatments." *Ibid.* The district court found that the process was initiated on direction from "the Executive Office of the Governor" and was driven by political, not medical, considerations. *Id.* at 9-10.

The court found that, "from the outset," the new GAPMS process was a "biased effort to justify a predetermined outcome, not a fair analysis of the evidence." Doc. 246, at 9. While AHCA "ordinarily prepares reports internally, without retaining consultants," here, it "retained only consultants known in

advance for their staunch opposition to gender-affirming care." *Ibid.* At the end of

this process, AHCA determined that "puberty blockers [and] cross-sex hormones

. . . were not supported by generally accepted medical standards and were instead

experimental." *Id.* at 9-10.

AHCA then adopted Rule 59F-1.050(7), effective August 2022. The rule

states:

> (7) Gender Dysphoria.
>
>> (a) Florida Medicaid does not cover the following services for
>> the treatment of gender dysphoria:
>>
>>> 1. Puberty blockers;
>>> 2. Hormones and hormone antagonists;
>>> 3. Sex reassignment surgeries; and
>>> 4. Any other procedures that alter primary or secondary
>>> sexual characteristics.
>>
>> (b) For the purpose of determining medical necessity, including
>> Early and Periodic Screening, Diagnosis, and Treatment
>> (EPSDT), the services listed in subparagraph (7)(a) do not meet
>> the definition of medical necessity in accordance with Rule
>> 59G-1.010, F.A.C.

Fla. Admin. Code r. 59G-1.050(7).

During trial in this case, SB254 (2023) was enacted and signed into law.

Doc. 246, at 10. Section 3 of SB254 states that Florida "may not expend state

funds . . . for sex-reassignment prescriptions or procedures." Fla. Stat.

§ 286.311(2) (2023). Section 4 defines "[s]ex-reassignment prescriptions or

procedures" to include "puberty blockers" to "stop or delay normal puberty,"

"hormones or hormone antagonists," and any "medical procedure, including a surgical procedure," "to affirm a person's perception of his or her sex if that perception is inconsistent with the person's sex." *Id.* § 456.001(9)(a)(1)-(3) (2023). "Sex" is defined as "the classification of a person as either male or female based on the organization of the human body of such person for a specific reproductive role, as indicated by the person's sex chromosomes, naturally occurring sex hormones, and internal and external genitalia present at birth." *Id.* § 456.001(8).[3]

### C.    Procedural History

Four Medicaid-eligible Floridians, two adults (ages 20 and 28) and two minors, all of whom are transgender and seek medical treatment for gender dysphoria, sued to enjoin enforcement of Rule 59G-1.050(7). Doc. 1. After Florida passed SB254, plaintiffs filed an amended complaint challenging the statutory coverage exclusion. Doc. 233. The district court conducted a seven-day bench trial, featuring extensive expert medical testimony, and ruled in favor of plaintiffs on each claim.[4]

---

[3] Challenges to other provisions of SB254 are pending in *Doe v. Surgeon General*, No. 23-12159 (11th Cir.).

[4] The court held that no plaintiff had standing to challenge Florida's Medicaid coverage exclusions for gender-affirming surgery, as no plaintiff is currently seeking such care. Doc. 246, at 13-14.

1. The district court began with plaintiffs' equal-protection claim. The court held that the challenged rule and statute draw lines based on sex:

> Consider an adolescent Medicaid patient . . . that a physician wishes to treat with testosterone. . . . To know [whether the treatment is covered by Medicaid] one must know the adolescent's sex. If the adolescent is a natal male, the treatment is covered. If the adolescent is a natal female, the treatment is not covered. This is a line drawn on the basis of sex, plain and simple.

Doc. 246, at 30-31.

Second, the court found that the rule and statute "draw lines based on transgender status." Doc. 246, at 31. The court explained that, to know whether a Medicaid-eligible minor can be treated with puberty blockers, "one must know whether the child is cisgender or transgender." *Id.* at 32. The court concluded that the rule and statute also "[d]raw[] line[s] based on gender nonconformity." *Id.* at 31 (citing *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011)). Third, the court held that the adverse treatment of transgender individuals should trigger heightened scrutiny because they are a "discrete and insular minority." Doc. 246, at 32-34.

While the court determined that heightened scrutiny applied (Doc. 246, at 30-36), it held that the level of review was not dispositive because "the challenged rule and statute survive neither" intermediate nor rational-basis scrutiny. *Id.* at 36; *see also id.* at 34, 36-51 (discussing the State's justifications). The court also reasoned that even an "otherwise neutral law still violates the Equal Protection

- 10 -

Clause when it is 'motivated by purposeful discrimination.'" *Id.* at 38 (quoting

*Adams v. School Bd. of St. Johns Cnty.*, 57 F.4th 791, 810 (11th Cir. 2022) (en

banc)).  The court found that the rule and statute fail rational-basis review because

"the State's disapproval of transgender status . . . was a substantial motivating

factor in [their] enactment," and the State's justifications for the exclusions are

"largely pretextual." *Id.* at 37-38.  Accordingly, the court held that plaintiffs

prevailed on their equal-protection claim.

2.  Based on its findings of sex-based line drawing, the district court also

held that "plaintiffs are entitled to prevail" on their Section 1557 sex-

discrimination claim.  Doc. 246, at 51.

3.  For the Medicaid claims, the district court applied the framework

established in *Rush v. Parham*, 625 F.2d 1150 (5th Cir. 1980), which it recognized

as binding authority in this Circuit.  Doc. 246, at 14-15.  In *Rush*, a Medicaid

beneficiary challenged Georgia's refusal to cover gender-affirming surgery, which

the State had characterized as experimental and not medically necessary.  625 F.2d

at 1152-1153.  The Fifth Circuit remanded to the district court to determine, first,

whether the State had a policy prohibiting payments for experimental treatments,

and second, "whether its determination that transsexual surgery is experimental is

reasonable." *Id.* at 1156-1157.  *Rush* explained that the reasonableness

determination on remand would be controlled by "current medical opinion." *Id.* at 1157 n.13.

As in *Rush*, Florida has a pre-existing policy of providing coverage only for "medically necessary" services, which excludes experimental treatments. Doc. 246, at 7-8 (citation omitted). Thus, the district court found the second question controlling—whether Florida's determination that the excluded treatments are experimental is reasonable. *Id.* at 15. Informed by the extensive trial record, the court held it is not. *Ibid.*

Based on the trial record, the court concluded that plaintiffs are entitled to prevail on their EPSDT claim for eligible beneficiaries under age 21 "because the treatments at issue comport with the standards of care for their medical conditions and there are no alternative, equally effective treatments." Doc. 246, at 51-52. As to the comparability claim, the court found that "cisgender Medicaid beneficiaries are covered for the same puberty blockers and hormones at issue." *Id.* at 52. The court stated that it does not matter that "cisgender patients receive the drugs for a different diagnosis" than transgender patients because "federal law prohibits a state from denying or reducing a Medicaid-eligible patient's required services 'solely because of the diagnosis, type of illness, or condition.'" *Ibid.* (quoting 42 C.F.R. 440.230(c)). The court reasoned that "denying coverage for an illness

suffered only or primarily by a disfavored group is the very paradigm of prohibited discrimination based on diagnosis." *Ibid.*

Accordingly, the court declared that Florida Statute § 286.311(2) and Florida Administrative Code rule 59G-1.050(7) are invalid to the extent they categorically bar Medicaid coverage of puberty blockers and hormone therapies to treat gender dysphoria. Doc. 246, at 53.

4. The district court issued a permanent injunction and a final judgment. Doc. 246, at 53-54; Doc. 247.

## SUMMARY OF ARGUMENT

1. This Court should affirm the judgment that Florida's coverage exclusions for the gender-affirming care at issue here violate Medicaid's EPSDT and comparability requirements. The district court did not clearly err in finding, based on expert testimony and the extensive trial record, that Florida unreasonably determined that puberty blockers and hormone therapies are experimental for treatment of gender dysphoria.

2. This Court should likewise affirm the judgment that the challenged coverage exclusions violate Section 1557 of the ACA. The district court correctly determined that the challenged exclusions discriminate on the basis of sex and transgender status in violation of that statute.

- 13 -

3.  This Court need not reach plaintiffs' equal-protection claim if it invalidates the coverage exclusions on either or both statutory grounds.  But if it reaches the claim, the Court should remand for further factfinding regarding whether the statutory exclusion was enacted in part with a discriminatory purpose.

## ARGUMENT

### I.    The district court correctly held that the challenged coverage exclusions violate the Medicaid Statute.

Before 2022, Florida's Medicaid program covered puberty blockers and hormone therapies for treatment of gender dysphoria.  Florida's abrupt reversal in 2022, prohibiting coverage of these drugs solely when used by transgender people to treat gender dysphoria, was made without any material change in AHCA's regulations regarding what constitutes medical necessity, the criteria for determining generally accepted standards of care, or the factors defining experimental treatments.  *See* Doc. 246, at 7 (citing Fla. Admin. Code r. 59G-1.01(2.83); Fla. Admin. Code r. 59G-1.01(2.46)).  Nor was Florida's withdrawal of coverage the result of developments in medical literature or clinical practice.  Instead, as the district court found, treating gender dysphoria with these medications remains consistent with widely accepted standards of care.  *Id.* at 16-21.

The district court correctly held, based on the trial record, that by categorically barring coverage for puberty blockers and hormone therapies when

used to treat gender dysphoria, Florida violated Medicaid's EPSDT and

comparability requirements.

### A.    The challenged coverage exclusions violate Medicaid's EPSDT requirement.

Under Medicaid's EPSDT requirement, States must cover services described

in 42 U.S.C. 1396d(a) if "necessary . . . to correct or ameliorate" health conditions

in EPSDT-eligible beneficiaries under age 21.  42 U.S.C. 1396d(r)(5),

1396a(a)(10)(A), 1396a(a)(43)(C), 1396d(a)(4)(B); *see, e.g.*, *Moore v. Reese*, 637

F.3d 1220, 1233-1234 (11th Cir. 2011).  "The EPSDT obligation is thus extremely

broad."  *Katie A. v. Los Angeles Cnty.*, 481 F.3d 1150, 1154 (9th Cir. 2007).

As Florida notes, federal law does not require coverage of treatments that are

unsafe, ineffective, or experimental.  Br. 37-38.  But Florida is not the sole arbiter

of those judgments under the Medicaid statute.  As this Court recognized, while

Congress "could have conferred the 'final arbiter' role to the state, it did not."

*Moore*, 637 F.3d at 1259.  Instead, "[w]hen a state Medicaid agency has exceeded

the bounds of its authority by adopting an unreasonable definition of medical

necessity . . . , aggrieved Medicaid recipients have recourse in the courts."  *Ibid.*

Courts have routinely held that categorical exclusions of medically necessary care

otherwise allowable under the Medicaid statute violate the EPSDT requirement.[5]

In evaluating plaintiffs' EPSDT claim, the district court correctly relied on *Rush v. Parham*, 625 F.2d 1150 (5th Cir. 1980). Doc. 246, at 14-15. Florida agrees this is the correct framework. Br. 37.[6] Under *Rush*, the determinative question is whether, "based on current medical opinion," Florida could "reasonabl[y]" conclude that puberty blockers and hormone therapies are "experimental" treatments for gender dysphoria. 625 F.2d at 1157 & n.13.

Based on the extensive trial record, the court did not clearly err in finding that Florida's determination was not reasonable. Doc. 246, at 15. In making this finding, the court relied on AHCA's own standards for determining when a

---

[5] *See, e.g.*, *S.D. v. Hood*, 391 F.3d 581, 597 (5th Cir. 2004) (holding unlawful Louisiana's denial of coverage for medically necessary incontinence supplies to EPSDT-eligible beneficiaries); *Collins v. Hamilton*, 349 F.3d 371, 376 (7th Cir. 2003) (holding unlawful Indiana's denial of coverage for psychiatric residential treatment for EPSDT-eligible beneficiaries); *Pediatric Specialty Care, Inc. v. Arkansas Dep't of Human Servs.*, 293 F.3d 472, 480 (8th Cir. 2002) (holding unlawful Arkansas's denial of coverage for early-intervention day treatment to EPSDT-eligible beneficiaries); *Pereira v. Kozlowski*, 996 F.2d 723, 727 (4th Cir. 1993) (holding unlawful Virginia's denial of coverage for medically necessary organ transplants to EPSDT-eligible beneficiaries); *cf. Weaver v. Reagen*, 886 F.2d 194, 200 (8th Cir. 1989) (holding unlawful Missouri's denial of coverage for off-label AZT treatment to Medicaid beneficiaries with HIV because based on an unreasonably broad definition of "experimental" treatment).

[6] *Rush* involved the "reasonable standards" provision of the Medicaid statute, 42 U.S.C. 1396a(a)(17). *Rush* nonetheless provides the correct framework for both Medicaid claims here because the core issue is whether Florida reasonably determined that the care at issue is experimental for transgender people of all ages.

treatment is "experimental" or "investigational." *Id.* at 7. Rather than being experimental, the court found that "[t]he overwhelming weight of medical authority supports treatment of transgender patients with [puberty blockers] and cross-sex hormones in appropriate circumstances" (*id.* at 18), as part of the "widely accepted standard of care" (*id.* at 52). The court highlighted the long list of medical organizations supporting this care, including the American Academy of Pediatrics and the American Medical Association, and emphasized that, as far as the record reflected, "not a single reputable medical association has taken a contrary position." *Id.* at 18-19.

The court acknowledged that these medications have "attendant risks" but found that benefits from treatment can outweigh those risks. Doc. 246, at 20. The court thus found that the "clinical evidence would support, though certainly not mandate, a decision by a reasonable patient and parent, in consultation with properly trained practitioners," to use puberty blockers "at or near the onset of puberty and to use cross-sex hormones later" to treat gender dysphoria. *Id.* at 21. The court further found that "[t]he record includes no evidence that these treatments have caused substantial adverse clinical results in properly screened and treated patients." *Ibid.*

In making these findings, the court relied on expert "testimony of well-qualified doctors who have treated thousands of transgender patients with [puberty

blockers] and cross-sex hormones over their careers and have achieved excellent results."  Doc. 246, at 21.  The court noted that even one of defendants' own experts "testified that treatment with [puberty blockers] and cross-sex hormones is sometimes appropriate," and that he would not ban such treatments.  *Id.* at 20.

Because the district court did not clearly err in finding that Florida's characterization of these treatments as experimental is not reasonable, this Court should affirm that the exclusions violate the EPSDT requirement.

### B.    The challenged coverage exclusions violate Medicaid's comparability requirement.

The district court also correctly held that the challenged coverage exclusions violate Medicaid's comparability requirement, 42 U.S.C. 1396a(a)(1)(B)(i).  Doc. 246, at 52.  Under this requirement, all services available to any categorically needy beneficiary (with exceptions inapplicable here) must be "equal in amount, duration, and scope" as those available to other such beneficiaries.  42 C.F.R. 440.240(b).  The comparability requirement thus "prohibits discrimination among individuals with the same medical needs stemming from different medical conditions."  *Flack v. Wisconsin Dep't of Health Servs.*, 395 F. Supp. 3d 1001, 1018 (W.D. Wis. 2019) (alteration and citations omitted).  The purpose of this requirement is to "ensure[] equitable treatment" of Medicaid beneficiaries.  *Garrido v. Dudek*, 731 F.3d 1152, 1154 (11th Cir. 2013).  In addition, a state Medicaid program "may not arbitrarily deny or reduce the amount, duration, or

scope of a required service . . . to an otherwise eligible beneficiary solely because of the diagnosis, type of illness, or condition."  42 C.F.R. 440.230(c).

A State violates the comparability requirement when it denies medical benefits to some individuals that it provides to others "simply by defining such services . . . as aimed at treating only some medical conditions."  *Davis v. Shah*, 821 F.3d 231, 257-258 (2d Cir. 2016).  Multiple courts have held that categorical exclusions of gender-affirming care violate Medicaid's comparability requirement. *See Pinneke v. Preisser*, 623 F.2d 546, 549 (8th Cir. 1980); *Flack v. Wisconsin Dep't of Health Servs.*, 395 F. Supp. 3d 1001, 1019 (W.D. Wis. 2019); *Fain v. Crouch*, 618 F. Supp. 3d 313, 333-334 (S.D. W. Va. 2022), *appeal pending*, No. 22-1927 (4th Cir. docketed Sept. 6, 2022), *reh'g en banc granted* (4th Cir. Apr. 12, 2023) (argued Sept. 21, 2023).

It is undisputed that Florida provides Medicaid coverage for puberty blockers and hormone therapies when needed to treat conditions other than gender dysphoria.  Defendants nonetheless argue the comparability claim fails because the efficacy of a treatment for one condition says nothing about its efficacy for a different condition.  Br. 39.  Florida misses the point.  To be sure, federal law allows Florida to "place appropriate limits on a service based on such criteria as medical necessity," 42 C.F.R. 440.230(d), and Florida has done so, Fla. Stat.

§§ 409.905, 409.906.[7] But here, as the district court correctly found based on the record before it, Florida unreasonably made a categorical determination that the treatments at issue for gender dysphoria are experimental as to both adolescents and adults and thus can never been medically necessary. Doc. 246, at 15-21.

Under federal law, Florida may not impose such a categorical bar that is based on diagnosis. *See White v. Beal*, 555 F.2d 1146, 1152 (3d Cir. 1977) (explaining that Medicaid "regulations permit discrimination in benefits based upon the degree of medical necessity but not upon the medical disorder from which the person suffers"). As the Third Circuit has explained, "nothing in the [Medicaid statute] permits discrimination based upon etiology rather than need for the service." *Id.* at 1151 (enjoining a Pennsylvania Medicaid policy that covered glasses for eye disease, but not for refractive errors).

This Court should thus affirm the district court's determination that defendants violated Medicaid's comparability requirement.

## II.    The district court correctly held that the challenged coverage exclusions violate Section 1557 of the ACA.

The district court correctly ruled that Florida's coverage exclusions violate Section 1557 of the ACA. Doc. 246, at 51. Section 1557 prohibits

---

[7] Under state law, to be medically necessary and covered by Florida Medicaid, a treatment must be "'individualized [and] specific,' 'not in excess of the patient's needs,' and 'not experimental.'" *Garrido*, 731 F.3d at 1155 (quoting Fla. Admin. Code r. 59G-1.010(166)(a)).

"discrimination" by recipients of federal financial assistance "on the ground prohibited under . . . title IX." 42 U.S.C. 18116(a). Under Title IX, "[n]o person . . . shall, on the basis of sex, . . . be subjected to discrimination." 20 U.S.C. 1681. Therefore, as under Title IX, Section 1557 "prohibits discrimination . . . on the basis of sex." *Doe v. CVS Pharm., Inc.*, 982 F.3d 1204, 1208 (9th Cir. 2020). Multiple courts rightly have held that categorical coverage exclusions for gender-affirming care violate Section 1557's prohibition on sex discrimination.[8]

### A. The challenged exclusions facially discriminate on the basis of sex.

Under the challenged exclusions, a Medicaid beneficiary's sex assigned at birth determines whether they can access hormone therapies and puberty blockers. The challenged rule explicitly and categorically precludes Medicaid coverage for "services for the treatment of *gender* dysphoria," including "*[s]ex* reassignment

---

[8] *See C.P. v. Blue Cross Blue Shield*, No. 3:20-cv-06145, 2022 U.S. Dist. LEXIS 227832, at *16 (W.D. Wash. Dec. 19, 2022) (holding that administration of a coverage exclusion "based on transgender status was discrimination 'on the basis of sex'"); *Fain*, 618 F. Supp. 3d at 327 (holding that exclusion of gender-affirming care "precludes a specific treatment that is connected to a person's sex and gender identity"); *Kadel* v. *Folwell*, No. 1:19-cv-272, 2022 U.S. Dist. LEXIS 218104, at *8 (M.D.N.C. Dec. 5, 2022) (holding that exclusion of gender-affirming care "facially discriminates on the basis of sex and transgender status"); *Fletcher v. Alaska*, 443 F. Supp. 3d 1024, 1027, 1030 (D. Alaska 2020) ("[D]efendant's policy of excluding coverage for medically necessary surgery" based on sex assigned at birth "is . . . sex discrimination."); *Flack*, 395 F. Supp. 3d at 1015 (holding that "the Challenged Exclusion [of gender-affirming care] discriminates on the basis of sex"); *Boyden v. Conlin*, 341 F. Supp. 3d 979, 997 (W.D. Wis. 2018) ("[T]he Exclusion on its face treats transgender individuals differently on the basis of sex.").

surgeries" and any "procedures that alter primary or secondary *sexual*

characteristics." Fla. Admin. Code. r. 59G-1.050(7)(a) (2022) (emphases added).

Likewise, the statutory exclusion prohibits the use of state funds "for *[s]ex*-

reassignment prescriptions or procedures," Fla. Stat. § 286.311(2) (2023)

(emphasis added), which it defines as any procedure "to affirm a person's

perception of his or her *sex* if that perception is inconsistent with the person's *sex*

[assigned at birth]." *Id.* § 456.001(9)(a)(1)-(3) (emphasis added). As the district

court explained, whether a Medicaid beneficiary can access a treatment such as

testosterone depends on the patient's sex assigned at birth. If the beneficiary is "a

natal male, the treatment is covered." Doc. 246, at 30. But if the beneficiary "is a

natal female, the treatment is not covered." *Id.* at 31. As the court correctly

concluded, "[t]his is a line drawn on the basis of sex, plain and simple." *Ibid.*

In crafting the challenged exclusions, Florida could not "writ[e] out

instructions" to identify when the medications at issue are excluded from coverage

"without using the words man, woman, or sex (or some synonym)." *Bostock v.*

*Clayton Cnty.*, 140 S. Ct. 1731, 1746 (2020). Because the challenged exclusions

"cannot be stated without referencing sex," they are "inherently based upon a sex-

classification." *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858

F.3d 1037, 1047-1048, 1051 (7th Cir. 2017) (finding a sex-based classification

under the Equal Protection Clause and Title IX); *accord A.C. v. Metropolitan Sch.*

*Dist. of Martinsville*, 75 F.4th 760, 772 (7th Cir. 2023) (same), *pet. for cert.*

*pending*, No. 23-392 (filed Oct. 11, 2023); *Grimm v. Gloucester Cnty. Sch. Bd.*,

972 F.3d 586, 608, 616-617 (4th Cir. 2020) (same), *cert. denied*, 141 S. Ct. 2878

(2021).

> **B.** **The challenged exclusions discriminate based on sex by targeting transgender persons.**

In addition, and as the district court also correctly held, the challenged

exclusions discriminate based on sex because they discriminate based on

transgender status.  Doc. 246, at 32.  "[I]t is impossible to discriminate against a

person for being . . . transgender without discriminating against that individual

based on sex."  *Bostock*, 140 S. Ct. at 1741.  The challenged rule singles out a

diagnosis that only transgender people can receive—"treatment of *gender*

*dysphoria*"—as the basis for refusing coverage.  Fla. Admin. Code r. 59G-

1.050(7).  The statute likewise directly targets transgender people by prohibiting

coverage for "*sex*-reassignment prescriptions or procedures."  Fla. Stat.

§ 286.311(2) (2023).  By targeting transgender persons, the exclusions

"unavoidably discriminate[] against persons with one sex identified at birth" but

who identify with a different sex "today."  *Bostock*, 140 S. Ct. at 1746.

Finally, as the district court also correctly recognized, the exclusions

discriminate against transgender people based on gender nonconformity.  Doc.

246, at 31 (citing *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011)).

- 23 -

**C.    The district court's Section 1557 holding is not at odds with *Eknes-Tucker* or *Adams*.**

This Court's subsequent decision in *Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205 (11th Cir. 2023), *pet. for reh'g en banc pending* (filed Sept. 11, 2023), does not undercut the district court's Section 1557 ruling. *Eknes-Tucker* held that the challenged Alabama statute, which banned gender-affirming medical treatments for minors, does not discriminate based on sex in violation of the Equal Protection Clause because it "does not establish an unequal regime for males and females," as no minor of any sex can obtain transitioning medications. *Id.* at 1228. It also dismissed the statute's use of sex-based terminology to describe the procedures it prohibits because "the medical procedures that it regulates . . . are themselves sex-based," rendering the use of such terminology unavoidable. *Ibid.*

The *Eknes-Tucker* panel reached these conclusions because it declined to apply *Bostock*'s understanding of sex discrimination to the Equal Protection Clause. 80 F.4th at 1229. Because of the "materially different language" and the "different factual context," the panel believed that *Bostock* had "minimal relevance" to the equal-protection challenge to Alabama's ban on gender-affirming care. *Ibid.* But that reasoning does not apply here. Section 1557, through its incorporation of Title IX's prohibition on sex discrimination, contains similar language to Title VII. Indeed, the Supreme Court has "looked to its Title VII interpretations of discrimination in illuminating Title IX." *Olmstead v. L.C.*, 527

- 24 -

U.S. 581, 617 n.1 (1999) (citing *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75 (1992)).  Courts frequently interpret Title IX by reference to Title VII caselaw.[9]

The Supreme Court has emphasized that Title VII must be understood as "focus[ing] on individuals rather than groups."  *Bostock*, 140 S. Ct. at 1741.  Like Title VII, which prohibits discrimination against "any individual," 42 U.S.C. 2000e-2(a)(1), Title IX states that "[n]o person" shall be discriminated against "on the basis of sex," 20 U.S.C. 1681.  And Section 1557 prohibits "an individual" from being subjected to discrimination.  42 U.S.C. 18116(a).  Section 1557 thus requires no showing of group-based inequality between "males and females."  *Cf. Eknes-Tucker*, 80 F.4th at 1228.  Nor is this a case where a coverage exclusion applies across-the-board to certain procedures that inherently reference "sex." Instead, Florida's exclusions target transgender people and prevent them, because of their sex assigned at birth, from receiving care available to other Medicaid beneficiaries.

---

[9] *See Franklin*, 503 U.S. at 75 (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57 (1986), a Title VII case, in analyzing a Title IX claim); *see also Vengalatorre v. Cornell Univ.*, 36 F.4th 87, 103 (2d Cir. 2022); *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 535 n.103 (3d Cir. 2018); *Lakoski v. James*, 66 F.3d 751, 756 (5th Cir. 1995); *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 673 (6th Cir. 2013); *Wolfe v. Fayetteville, Ark. Sch. Dist.*, 648 F.3d 860, 866 (8th Cir. 2011); *Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1116 (9th Cir. 2023).

Finally, the district court's Section 1557 ruling is not inconsistent with this Court's decision in *Adams v. School Board of St. Johns County*, 57 F.4th 791 (11th Cir. 2022) (en banc). The en banc Court agreed that the challenged policy in *Adams* involved a sex-classification, but held that it did not violate Title IX because of "statutory and regulatory carve-outs" "differentiating between the sexes when it comes to separate living and bathroom facilities, among others." *Id.* at 811. But Section 1557 has no carve-outs that allow discrimination in a State's Medicaid program. Because the medications at issue are covered by Florida Medicaid *except* when used by transgender people for treatment of gender dysphoria, the district court was correct in finding that the exclusions discriminate based on sex in violation of Section 1557. Doc. 246, at 51.[10]

---

[10] The district court's judgment is also consistent with HHS's post-*Bostock* understanding of prohibited sex discrimination under Section 1557. In August 2022, HHS issued a notice of proposed rulemaking clarifying that under Section 1557, "discrimination on the basis of sex includes . . . gender identity." Nondiscrimination in Health Programs and Activities, 87 Fed. Reg. 47,916 (§ 92.101(a)(2)) (proposed Aug. 4, 2022); *see also id.* at 47,857-47,859.

To be sure, the proposed rule states that "[n]othing in this section requires coverage of any health service where the covered entity has a legitimate, nondiscriminatory reason for determining that such health service fails to meet applicable coverage requirements, such as medical necessity requirements, in an individual case." 87 Fed. Reg. at 47,918 (§ 92.207(c)). But, as relevant here, the proposed rule provides that "[a] covered entity must not, in providing or administering health insurance coverage or other health-related coverage . . . have or implement a categorical coverage exclusion or limitation for all health services

### III. If the Court reaches the equal-protection issue, it should remand for additional factfinding on whether SB254 was enacted with a discriminatory purpose.

If this Court affirms the district court's invalidation of the challenged exclusions on either or both statutory grounds, it need not reach plaintiffs' equal-protection claim. Although, in our view, *Eknes-Tucker* was wrongly decided, it does not foreclose the equal-protection claim here. See *Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205, 1229-1230 (11th Cir. 2023). Instead, if this Court reaches the issue, it should remand for further factfinding regarding whether Florida acted with a discriminatory purpose in enacting the statutory exclusion. The district court found that "[t]he rule and statute . . . were motivated in substantial part by the plainly illegitimate purposes of disapproving transgender status and discouraging individuals from pursuing their honest gender identities. This was purposeful discrimination against transgender[]" persons. Doc. 246, at 38. Both *Eknes-Tucker* and *Adams* reaffirm that state action motivated by purposeful discrimination can violate the Equal Protection Clause. *See Eknes-Tucker*, 80

---

related to gender transition or other gender-affirming care." *Ibid.* (§ 92.207(b) and (b)(4)).

HHS anticipates issuing a final rule in the coming months following completion of the notice-and-comment rulemaking process. In any case, categorical coverage exclusions of gender-affirming care are inconsistent with the statute itself.

F.4th at 1230; *Adams v. St. Johns Cnty.*, 57 F.4th 791, 810 (11th Cir. 2022) (en banc).

Discriminatory intent is a "pure question of fact," reversible only for clear error. *Rogers v. Lodge*, 458 U.S. 613, 622-623 (1982) (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 287-288 (1982); *cf. Cooper v. Harris*, 581 U.S. 285, 309 n.8 (2017) (noting that the presumption of good faith is not the equivalent of a "super-charged, pro-State presumption on appeal, trumping clear-error review"). At trial, plaintiffs asserted that the challenged rule was motivated by purposeful discrimination and offered support for that finding under the traditional *Arlington Heights* framework. Doc. 199, at 139. But trial was already underway when they amended their complaint to challenge the newly passed *statutory* exclusion. Doc. 233. Florida argues that the district court erred by failing to accord SB254 a presumption of good faith and adds that the court "never considered[] any *Arlington Heights* evidence related to [SB254]." Br. 34-35. While that is untrue— as evidence relating to the GAPMS process and rulemaking are also relevant to the statute's enactment—it is correct that the court did not make specific, separate factual findings about SB254's legislative process.

But that is unsurprising. The district court had no reason, especially before this Court's decision in *Eknes-Tucker*, to rely primarily on discriminatory legislative intent to invalidate the statutory coverage exclusion. Thus, if this Court

reaches the equal-protection claim and is not persuaded that the exclusions fail the

applicable level of scrutiny, it should issue a limited remand for additional

factfinding as to the legislative process to enable appellate review of the district

court's findings of invidious purpose.  *Cf. Fils v. City of Aventura*, 647 F.3d 1272,

1280 (11th Cir. 2011) (noting a prior limited remand where the district court was

instructed to set forth the complete factual basis for its decision to deny qualified

immunity).

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's final judgment and injunction.

Respectfully submitted,

SAMUEL R. BAGENSTOS
  General Counsel

AARON D. SCHUHAM
  Associate General Counsel

CARY LACHEEN
STEPHEN M. RICHMOND
ALESDAIR H. ITTELSON
  Attorneys
  Department of Health & Human Services
  200 Independence Ave., SW
  Washington, D.C.  20201

KRISTEN CLARKE
  Assistant Attorney General

s/ Anna M. Baldwin
BONNIE I. ROBIN-VERGEER
ANNA M. BALDWIN
  Attorneys
  U.S. Department of Justice
  Civil Rights Division
  Appellate Section
  Ben Franklin Station
  P.O. Box 14403
  Washington, D.C.  20044-4403
  (202) 305-4278

**CERTIFICATE OF COMPLIANCE**

I certify, pursuant to Federal Rule of Appellate Procedure 32(g):

1.  This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), the brief contains 6472 words.

2.  This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Times New Roman, 14-point font.

s/ Anna M. Baldwin
ANNA M. BALDWIN
  Attorney

Date:  December 4, 2023

## CERTIFICATE OF SERVICE

I certify that on December 4, 2023, I electronically filed the foregoing

BRIEF FOR THE UNITED STATES AS AMICUS CURIAE IN SUPPORT OF

PLAINTIFFS-APPELLEES AND AFFIRMANCE with the Clerk of the Court for

the United States Court of Appeals for the Eleventh Circuit by using the appellate

CM/ECF system.

I certify that all participants in this case are registered CM/ECF users and

that service will be accomplished by the appellate CM/ECF system.

s/ Anna M. Baldwin<br>
ANNA M. BALDWIN<br>
 Attorney