No. 23-12155

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

AUGUST DEKKER, ET AL.,
*Plaintiffs-Appellees*,

v.

SECRETARY, FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION, ET AL.,
*Defendants-Appellants*,

On Appeal from the United States District Court for the Northern District of Florida,
Civil Action No. 4:22-cv-325-RH-MAF

_____

BRIEF OF *AMICUS CURIAE*, THE TREVOR PROJECT, INC.  IN SUPPORT OF
PLAINTIFFS-APPELLEES

_____

Shireen A. Barday
Mark C. Davies
Jingxi Zhai
PALLAS PARTNERS (US) LLP
75 Rockefeller Plaza
New York, NY 10019
(212) 970-2300
shireen.barday@pallasllp.com
mark.davies@pallasllp.com
jingxi.zhai@pallasllp.com

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

<u>Page(s)</u>

CERTIFICATE OF INTERESTED PERSONS .................................................... iv

CORPORATE DISCLOSURE STATEMENT ........................................................x

IDENTITY & INTEREST OF AMICUS CURIAE .................................................1

SUMMARY OF ARGUMENT .................................................................................2

    I.    ENFORCEMENT OF THIS LAW DIRECTLY HARMS
          MENTAL HEALTH AND WELL BEING CAUSING
          IRREPARABLE HARM.......................................................................4

    II.   ENFORCEMENT OF THIS LAW WILL INCREASE
          SUICIDALITY AND CAUSE IRREPARABLE HARM ...................8

CONCLUSION......................................................................................................12

CERTIFICATE OF COMPLIANCE.......................................................................14

CERTIFICATE OF SERVICE ...............................................................................15

# TABLE OF AUTHORITIES

Page(s)

STATUTES

Florida Administrative Code 59G-1.050(7)........................................................2, 3

OTHER AUTHORITIES

Amy E. Green et al., *Association of Gender-Affirming Hormone Therapy With Depression, Thoughts of Suicide, and Attempted Suicide Among Transgender and Nonbinary Youth*, J. of Adolescent Health, (2021) ........................................3

Annelou L.C. de Vries et al., *Puberty Suppression in Adolescents With Gender Identity Disorder: a Prospective Follow-Up Study*, 8 J. Sexual Med. (2011)...4, 5

Christal Achille et al., *Longitudinal Impact of Gender-affirming Endocrine Intervention on the Mental Health and Well-being of Transgender Youths: Preliminary Result,* Int'l J. of Pediatric Endocrinology (2020) ............................................................................6

David C. Call, Mamatha Challa & Cynthia J. Telingator, *Providing Affirmative Care to Transgender and Gender Diverse Youth: Disparities, Interventions, and Outcomes*, 23 Current Psychiatry Rep. (2021)........................................................4

Jack L. Turban et al., *Access to Gender-affirming Hormones During Adolescence and Mental Health Outcomes Among Transgender Adults*, 17 PLoS ONE 1, 10–11 (2022)..................................................................................................................9

Jack L. Turban et al., *Pubertal Suppression for Transgender Youth and Risk of Suicidal Ideation*, 145 Pediatrics 1 (2020), https://doi.org/10.1542/peds.2019-1725 .................................................................................................................10

Laura E. Kuper et al., *Body Dissatisfaction and Mental Health Outcomes of Youth on Gender-Affirming Hormone Therapy*, 145 Pediatrics 1 (2019) ........................5

Luke Allen et al., *Well-being and Suicidality Among Transgender Youth after Gender-affirming Hormones*, 7 Clinical Practice in Pediatric Psychol. (2019).....5

The Trevor Project 2021 National Survey on LGBTQ Youth Mental Health, https://www.thetrevorproject.org/wp-content/uploads/2021/05/The-Trevor-Project-National-Survey-Results-2021.pdf.........................................................6, 7

The Trevor Project, *2023 U.S. National Survey Data Analysis Gender Affirming Care* (Oct. 26, 2023), https://www.thetrevorproject.org/wp-content/uploads/2023/02/EMBARGOED_2.28.23_The-Trevor-Project-Research-Brief_Black-TGNB-Youth-Mental-Health.pdf................................7, 8

The Trevor Project, *National Survey on LGBTQ Mental Health* 2021, https://www.thetrevorproject.org/wp-content/uploads/2021/05/The-Trevor-Project-National-Survey-Results-2021.pdf.........................................................10

The Trevor Project, *National Survey on LGBTQ Mental Health* 2023, https://www.thetrevorproject.org/survey-2023/assets/static/05_TREVOR05_2023survey.pdf...........................................11

The Trevor Project, *Research Brief: Mental Health of Black Transgender and Nonbinary Young People* (Feb. 2023), https://www.thetrevorproject.org/wp-content/uploads/2023/02/EMBARGOED_2.28.23_The-Trevor-Project-Research-Brief_Black-TGNB-Youth-Mental-Health.pdf............................ 11, 12

iii

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, The Trevor Project states that the following persons and entities have an interest in the outcome of the case and this appeal.

1.    Academic Pediatric Association, Amicus

2.    Alstott, Anne, Amicus

3.    Altman, Jennifer, Counsel for Plaintiffs

4.    American Academy of Child and Adolescent Psychiatry, Amicus

5.    American Academy of Family Physicians, Amicus

6.    American Academy of Nursing, Amicus

7.    American Academy of Pediatrics, Amicus

8.    American College of Obstetricians and Gynecologists, Amicus

9.    American College of Osteopathic Pediatricians, Amicus

10.   American College of Physicians, Amicus

11.   American Medical Association, Amicus

12.   American Pediatric Society, Amicus

13.   American Psychiatric Association, Amicus

14.   Anderson, Barrett, Counsel for Amicus

15.   Association of American Medical Colleges, Amicus

16.   Barday, Shireen, Counsel for Amicus

17.    Bardos, Andy, Counsel for Amicus

18.    Barnes, Brian, Counsel for Amicus

19.    Beato, Michael, Counsel for Defendants

20.    Biomedical Ethics and Public Health Scholars, Amicus

21.    Boergers, Kathleen, Counsel for Amicus

22.    Boulware, Susan, Amicus

23.    Boyden Gray PLLC, Counsel for Amicus

24.    Bowdre, Alexander, Counsel for Amicus

25.    Brown, Louis, Jr., Amicus

26.    Burleigh, Clifton, Jr., Amicus

27.    Charles, Carl, Counsel for Plaintiffs

28.    Chriss, Simone, Counsel for Plaintiffs

29.    Chuang, Ming, Counsel for Amicus

30.    Clark, Kaila, Counsel for Amicus

31.    Commonwealth of Massachusetts, Amicus

32.    Coursolle, Abigail, Counsel for Plaintiffs

33.    Davies, Mark, Counsel for Amicus

34.    Debriere, Katherine, Counsel for Plaintiffs

35.    Dekker, August, Plaintiff

36.    District of Columbia, Amicus

37.    Do No Harm, Amicus

38.    Doe, Jane, Plaintiff

39.    Doe, John, Plaintiff

40.    Doe, Susan, Plaintiff

41.    Dunn, Chelsea, Counsel for Plaintiffs

42.    Endocrine Society, Florida Chapter of the American Academy of
        Pediatrics, Amicus

43.    Figlio, Erik, Counsel for Amicus

44.    Florida Agency for Health Care Administration, Defendant

45.    Florida Chapter of the American Academy of Pediatrics, Amicus

46.    Florida Policy Institute, Amicus

47.    Florida Voices for Health, Amicus

48.    Gonzalez-Pagan, Omar, Counsel for Plaintiffs

49.    Halley, Ted, Amicus

50.    Hartnett, Kathleen, Counsel for Amicus

51.    Helstrom, Zoe, Counsel for Amicus

52.    Heyer, Walt, Amicus

53.    Hinkle, Robert, U.S. District Court Judge

54.    Hussein, Abdul-Latif, Amicus

55.    Isasi, William, Counsel for Amicus

56.     Jazil, Mohammad, Counsel for Defendants

57.     K.F., Plaintiff

58.     Kamody, Rebecca, Amicus

59.     Kang, Katelyn, Counsel for Amicus

60.     Kline, Robert, Counsel for Amicus

61.     Kniffin, Eric, Counsel for Amicus

62.     Krasovec, Joseph, Counsel for Amicus

63.     Kuper, Laura, Amicus

64.     Lannin, Cortlin, Counsel for Amicus

65.     Laudue, Jade, Plaintiff

66.     Little, Joseph, Counsel for Plaintiffs

67.     Marstiller, Simone, Former Defendant

68.     Mauler, Daniel, Counsel for Amicus

69.     McCotter, R. Trent, Counsel for Amicus

70.     McKee, Catherine, Counsel for Plaintiffs

71.     McNamara, Meredithe, Amicus

72.     Meszaros, Marie, Amicus

73.     Miller, William, Counsel for Plaintiffs

74.     Mondry, Emily, Counsel for Amicus

75.     Morrison, Rachel, Amicus

76.   National Association of Pediatric Nurse Practitioners, Amicus

77.   Norohna, Maya, Amicus

78.   North Central Florida Council of Child and Adolescent Psychiatry,
      Amicus

79.   Olezeski, Christy, Amicus

80.   Pediatric Endocrine Society, Amicus

81.   Perko, Gary, Counsel for Defendants

82.   Pratt, Christine, Amicus

83.   Pratt, Joshua, Counsel for Defendants

84.   Ramer, John, Counsel for Amicus

85.   Reinhardt, Elizabeth, Counsel for Amicus

86.   Richards, Jay, Amicus

87.   Rivaux, Shani, Counsel for Plaintiffs

88.   Rothstein, Brit, Plaintiff

89.   Samuels, Valerie, Counsel for Amicus

90.   Severino, Roger, Amicus

91.   Shaw, Gary, Counsel for Plaintiffs

92.   Societies for Pediatric Urology, Amicus

93.   Society for Adolescent Health and Medicine, Amicus

94.   Society for Pediatric Research, Amicus

95.         Society of Pediatric Nurses, Amicus

96.         State of Alabama, Amicus

97.         State of Arkansas, Amicus

98.         State of California, Amicus

99.         State of Delaware, Amicus

100.        State of Georgia, Amicus

101.        State of Illinois, Amicus

102.        State of Indiana, Amicus

103.        State of Iowa, Amicus

104.        State of Kentucky, Amicus

105.        State of Louisiana, Amicus

106.        State of Maryland, Amicus

107.        State of Mississippi, Amicus

108.        State of Missouri, Amicus

109.        State of Montana, Amicus

110.        State of Nebraska, Amicus

111.        State of New York, Amicus

112.        State of North Dakota, Amicus

113.        State of Oregon, Amicus

114.        State of Rhode Island, Amicus

115.     State of South Carolina, Amicus

116.     State of Tennessee, Amicus

117.     State of Texas, Amicus

118.     State of Utah, Amicus

119.     State of Virginia, Amicus

120.     Szilagyi, Nathalie, Amicus

121.     The Trevor Project, Amicus

122.     Thompson, David, Counsel for Amicus

123.     Veroff, Julie, Counsel for Amicus

124.     Veta, D. Jean, Counsel for Amicus

125.     Weida, Jason, Defendant

126.     World Professional Association for Transgender Health, Amicus

127.     Zhai, Jingxi, Counsel for Amicus

Pursuant to Federal Rule of Appellate Procedure 26.1-2, Amici Curiae The Trevor Project certify that the CIP contained herein is complete.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, The Trevor Project, Inc. ("The Trevor Project") states it is a nonprofit 501(c)(3) organization.

The Trevor Project has no corporate parent and is not owned in whole or in part by any publicly held corporation.

## IDENTITY & INTEREST OF AMICUS CURIAE[1]

Founded in 1998, The Trevor Project is the nation's leading lesbian, gay, bisexual, transgender, queer, and questioning ("LGBTQ") youth crisis intervention and suicide prevention organization.  It is the only nationwide organization that offers accredited, free, and confidential phone, instant message, and text messaging crisis intervention services with an exclusive focus on LGBTQ youth.  Tens of thousands of individuals use these services every month.  In FY23, The Trevor Project's services reached over 500,000 LGBTQ crisis contacts.  By monitoring, analyzing, and evaluating data obtained from these services, The Trevor Project produces innovative research and insights that bring new knowledge, with clinical implications, on issues affecting LGBTQ youth.

The Trevor Project has a special interest in this litigation, as well as familiarity and knowledge of the significant benefits from transgender youth receiving necessary transgender medical care.  The Trevor Project is deeply concerned that reversing the District Court's order granting Plaintiffs' preliminary injunction in this case will place adolescents and young adults at a substantially increased risk of suicide and negatively impact their mental health, risks that are strongly and

---

[1] No party's counsel authored this brief in whole or in part.  No party, its counsel, or other person contributed money intended to fund the brief's preparation or submission.

1

consistently associated with experiencing disparate treatment based on gender identity and being deprived access to medically necessary gender affirming care. For these reasons, The Trevor Project has a substantial interest in this litigation.

The authority of amicus to file this brief in support of Plaintiffs-Appellees' Petition is pursuant to FRAP 29(a)(3). Amicus has received the consent of all parties to file.

## SUMMARY OF ARGUMENT

This Court should affirm the District Court's order enjoining Defendants-Appellants from enforcing Florida Administrative Code 59G-1.050(7) (hereafter the "Health Care Ban"). The Health Care Ban enacted by Florida denies transgender Medicaid beneficiaries access to crucial medical care, by denying coverage for gender affirming care to treat gender dysphoria. In doing so, the Health Care Ban contradicts generally accepted professional medical standards, and fails to account for the particular medical needs of transgender Medicaid beneficiaries, including transgender youth who are enrolled in Medicaid. For example, the Health Care Ban categorically prohibits Medicaid coverage for any health care service that "alter[s] primary or secondary sexual characteristics" whenever that service is being used to treat gender dysphoria and even though such coverage is not prohibited for cis gender individuals. The prohibited practices include prescribing puberty-delaying

medication, gender-affirming hormone therapies and "[a]ny other procedures that alter primary or secondary sexual characteristics."[2]

The Health Care Ban also poses a serious threat to the mental health and psychological well-being of transgender Floridians. Where medically indicated, access to pubertal suppression and hormone therapy has been demonstrated to provide critical improvements in the mental health of transgender youth. For example, for those who want it, gender affirming hormone therapy is associated with a 40% decrease in depression and suicidality, in a population already at greatly increased risk for self-harm and mental health disparities.[3] And when gender-affirming medical treatment is medically indicated but denied, there can be grave effects on the mental health of transgender youth and adults, including an increased rate of suicidality. By contrast, the myriad beneficial effects of gender-affirming medical treatment have been demonstrated through not only decades of peer reviewed clinical research, but also The Trevor Project's own survey data and its daily experience in working with transgender youth and young adults. The Trevor Project hears from transgender youth and young adults every day whose experiences indicate how dangerous a policy like this would be for their mental health. For these

---

[2] Florida Administrative Code 59G-1.050(7)(a).
[3] Amy E. Green et al., *Association of Gender-Affirming Hormone Therapy With Depression, Thoughts of Suicide, and Attempted Suicide Among Transgender and Nonbinary Youth*, J. of Adolescent Health, at 5 (2021).

reasons, and as set forth more fully below, it is critical that the Court affirm the District Court's order and enjoin Defendants-Appellants from enforcing the Health Care Ban.

## I. ENFORCEMENT OF THIS LAW DIRECTLY HARMS MENTAL HEALTH AND WELL BEING CAUSING IRREPARABLE HARM.

Denial or disruption of gender-affirming medical care can cause irreparable physical and mental harm to transgender youth, because once an individual reaches the age of majority, it can be too late for gonadotropin-releasing hormone analogs, or "puberty blockers" and/or for gender-affirming hormone treatments to be fully effective in reversing the effects of gender-incongruent puberty.[4] For example, it is difficult to reverse testosterone's effect on deepening the voice.[5] Similarly, if a transgender girl being treated with puberty blockers is forced to temporarily discontinue use, endogenous puberty will resume—forcing her to go through gender-incongruent physiological changes, such as the development of facial hair and gonadal growth, which can be both traumatic and impossible to reverse.[6] Thus, affirming the District Court's decision is critical, since any disruption in care could

---

[4] David C. Call, Mamatha Challa & Cynthia J. Telingator, *Providing Affirmative Care to Transgender and Gender Diverse Youth: Disparities, Interventions, and Outcomes*, 23 Current Psychiatry Rep. 1, 4 (2021).
[5] *Id.*
[6] Annelou L.C. de Vries et al., *Puberty Suppression in Adolescents With Gender Identity Disorder: a Prospective Follow-Up Study*, 8 J. Sexual Med. 2276, 2277 (2011).

4

cause transgender youth to experience unwanted, traumatic, and potentially permanent physical changes that would otherwise be preventable with appropriate treatment.

Hormonal intervention also leads to myriad mental health benefits. A clinical study of puberty suppression patients demonstrated that after an average of two years of pubertal suppression, the percentage of youth who had previously been experiencing behavioral problems dropped from 44% to 22%, and the percentage of those experiencing emotional problems dropped from 30% to 10%.[7] Another clinical study on the use of gender-affirming hormone therapy found that after one year on hormones, youth reported small improvements in anxiety symptoms, small-to-moderate improvements in depressive symptoms, and large improvements in body satisfaction.[8] A third clinical study examined the effectiveness of gender-affirming hormones in improving psychological well-being among transgender youth referred to a transgender health specialty clinic, and found large improvements in youth well-being after beginning treatment.[9] Yet another longitudinal peer-reviewed study found improvements in depressive symptoms and quality of life

---

[7] *Id.*

[8] Laura E. Kuper et al., *Body Dissatisfaction and Mental Health Outcomes of Youth on Gender-Affirming Hormone Therapy*, 145 Pediatrics 1, 5–9 (2019).

[9] Luke Allen et al., *Well-being and Suicidality Among Transgender Youth after Gender-affirming Hormones*, 7 Clinical Practice in Pediatric Psychol. 302, 306 (2019).

among transgender youth when followed for approximately 1.5 years after beginning either puberty suppression or gender-affirming hormone therapy.[10]  The research overwhelmingly shows that the denial or disruption of access to medical treatments from this law would cause these transgender youth harm.

Qualitative data collected by The Trevor Project in its 2021 Survey confirms that access to hormones and the achievement of the resulting physical changes stemming from hormone therapy are often key to transgender young people's positive feelings about their gender.  In response to the question, "What are things that you do yourself that make you feel happy (or euphoric) about your gender?", respondents gave answers such as "Analyze what masculine features are emerging from my hormone therapy, hearing my own voice cracks," "Looking at my stomach and facial hair that's coming in," and "Testosterone has done the most work to make me feel better about myself.  My voice deepening and facial hair growing especially."[11]  These responses highlight positive feelings that are unique to access to medical care.

---

[10] Christal Achille et al., *Longitudinal Impact of Gender-affirming Endocrine Intervention on the Mental Health and Well-being of Transgender Youths: Preliminary Result,* Int'l J. of Pediatric Endocrinology, at 4 (2020).

[11] These qualitative responses are internal data that were gathered in the process of preparing The Trevor Project 2021 National Survey on LGBTQ Youth Mental Health, https://www.thetrevorproject.org/wp-content/uploads/2021/05/The-Trevor-Project-National-Survey-Results-2021.pdf.

Similarly, several adolescents reported feeling sad and gender-dysphoric when access to medical care was delayed or denied. In response to the question "What are things that others do that make you feel sad (or dysphoric) about your gender?", responses included "being too late with hormones to affect my voice," "being denied to transition, denied hormones," and "The state I live in has made it very difficult to get any kind of hormone treatment…before turning 18 years old."[12] The emphasis on medical treatment in particular makes it clear that any enforcement of the Health Care Ban would harm these adolescents' mental health.

The importance of gender affirming care is particularly pronounced among transgender and non-binary people of color and those who have particular difficulty accessing gender affirming care, such as low-income and houseless young people.[13] These subgroups already report higher rates of depression symptoms and suicide contemplation.[14] White transgender and non-binary young people report higher rates of having received gender-affirming hormones than transgender and non-binary young people of color. Transgender and non-binary young people of color

---

[12] *Id.*

[13] The Trevor Project, *2023 U.S. National Survey Data Analysis Gender Affirming Care* (Oct. 26, 2023), https://www.thetrevorproject.org/wp-content/uploads/2023/02/EMBARGOED_2.28.23_The-Trevor-Project-Research-Brief_Black-TGNB-Youth-Mental-Health.pdf.

[14] *Id.*

reported higher rates of being unable to afford gender-affirming hormones.[15] Additionally, transgender and non-binary individuals unable to meet their basic needs reported higher rates of being unable to afford gender-affirming hormones compared to those who were able to meet their basic needs (65% to 33%), as well as higher rates of being very concerned about losing their gender-affirming hormones (55% to 35%) and higher rates of not being able to receive surgery due to cost (77% to 51%). Given these subgroup differences in access to care, transgender and non-binary people of color and those who have particular difficulty accessing health care are at a heightened risk of devastating and irreparable damage to their mental health associated with barriers to gender affirming care. This is especially pronounced with respect to Medicaid, which is often used by these communities to access necessary care.[16]

## II. ENFORCEMENT OF THIS LAW WILL INCREASE SUICIDALITY AND CAUSE IRREPARABLE HARM

Access to medical gender-affirming care for transgender adolescents is empirically associated with *decreased* suicidality. The Trevor Project's peer-reviewed 2020 study found that gender-affirming hormone therapy led to almost a 40% decreased likelihood of attempting suicide in the past year among those aged

---

[15] *Id.*

[16] *Id.*

8

13–17.[17]    Another study found that approximately one year of gender-affirming hormone therapy for adolescents led to a 75% reduction in the level of suicidality.[18] Yet another peer-reviewed study published in January 2022 found that transgender adults who had access to gender-affirming hormones between the ages of 14–17 had 60% lower odds of experiencing suicidal ideation in the previous year when compared to transgender people who wanted hormones but never had access to them.[19]  Critically, this study also found that access to gender-affirming hormone therapy during adolescence (ages 14–17) was associated with 30% lower odds of past-year suicidal ideation when compared to those who accessed such treatment as adults.[20]   Enforcement of the Health Care Ban would prevent Floridians from obtaining gender-affirming hormone therapy and the corresponding benefits in suicide prevention.

Puberty blockers, discussed above, are not only a time-sensitive treatment for the prevention of the physical impacts of gender-incongruent puberty—they also are vital in reducing suicidality among transgender young people.  According to a 2020 study of 20,619 transgender adults aged 18 to 36 years, transgender and nonbinary

---

[17] *See supra* note 3.
[18] *See supra* note 8.
[19] Jack L. Turban et al., *Access to Gender-affirming Hormones During Adolescence and Mental Health Outcomes Among Transgender Adults*, 17 PLoS ONE 1, 10–11 (2022).
[20] *Id.*

adults' use of puberty blockers during adolescence is associated with significantly lower lifetime suicidal ideation compared to those who desired puberty blockers but did not receive them.[21]  This is true even controlling for adults who were receiving hormone therapy at the time of the study.[22]  Thus, waiting for the age of majority to initiate gender-affirming medical treatment is not an adequate substitute for care in adolescence, and enforcement of the Health Care Ban risks increased rates of suicide for Florida's transgender population.  Moreover, since these medical treatments targeted by the Health Care Ban require continuous use to be effective, even a temporary pause in access for those who have already initiated treatment could lead to irreversible mental and physical harms.

The Health Care Ban would therefore likely increase suicidality, which would have a devastating effect on an already vulnerable population.  Transgender youth and young adults are already at higher risk of suicide than their cisgender peers.  According to The Trevor Project's 2021 National Survey on LGBTQ Youth Mental Health, 52% of transgender and non-binary youth reported seriously considering

---

[21] Jack L. Turban et al., *Pubertal Suppression for Transgender Youth and Risk of Suicidal Ideation*, 145 Pediatrics 1, at 5–6 (2020), https://doi.org/10.1542/peds.2019-1725.

[22] *Id*. (control variable including current hormone treatment).

suicide in the last year, and 20% made a suicide attempt.[23]  This is compared to 32% of cisgender lesbian, gay, and bisexual youth considering suicide and 10% who made a suicide attempt.[24]

The Trevor Project's 2023 National Survey of more than 28,000 LGBTQ youth and young adults found that 41% of LGBTQ young people seriously considered attempting suicide in the past year.[25]  Young people who are transgender, nonbinary, or people of color reported higher rates of suicide contemplation than their peers.[26]  Additionally, 14% of LGBTQ young people attempted suicide in the past year, including nearly 1 in 5 transgender and nonbinary young people.[27]

The Trevor Project's recent research published in February 2023 found that Black transgender and non-binary young people reported nearly double the rate of having been physically threatened or harmed compared to Black cisgender LGBQ young people and a staggering 77% of Black transgender and non-binary young

---

[23]The Trevor Project, *National Survey on LGBTQ Mental Health* 2021, https://www.thetrevorproject.org/wp-content/uploads/2021/05/The-Trevor-Project-National-Survey-Results-2021.pdf.

[24] *Id.*

[25] The Trevor Project, *National Survey on LGBTQ Mental Health* 2023, https://www.thetrevorproject.org/survey-2023/assets/static/05_TREVOR05_2023survey.pdf [hereinafter 2023 Trevor Project National Survey].

[26] *Id.*

[27] *Id.*

11

people reported experiencing discrimination.[28] Devastatingly, one in four Black transgender and non-binary young people reported a suicide attempt in the past year.[29] These findings demonstrate the importance of suicide prevention for transgender and non-binary young people, and Black transgender and non-binary young people in particular. Allowing the Health Care Ban to be enforced would increase suicidality for these vulnerable groups and cause them irreparable harm.

## CONCLUSION

For the foregoing reasons, The Trevor Project respectfully requests that this Court affirm the District Court's order and enjoin Defendants-Appellants from enforcing the Health Care Ban.

---

[28] The Trevor Project, *Research Brief:  Mental Health of Black Transgender and Nonbinary Young People*, at 2 (Feb. 2023), https://www.thetrevorproject.org/wp-content/uploads/2023/02/EMBARGOED_2.28.23_The-Trevor-Project-Research-Brief_Black-TGNB-Youth-Mental-Health.pdf.
[29] *Id.* at 1.

Dated:  December 4, 2023

Respectfully submitted,

 */s/* Shireen A. Barday
Shireen A. Barday
Mark C. Davies
Jingxi Zhai
PALLAS PARTNERS (US) LLP
75 Rockefeller Plaza
New York, NY 10019
(212) 970-2300
shireen.barday@pallasllp.com
mark.davies@pallasllp.com
jingxi.zhai@pallasllp.com

*Attorneys for Amicus Curiae The Trevor Project, Inc.*

13

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation, as provided in Fed. R. App. P. 32(g), Fed. R. App. P. 29(b)(4), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) it contains 3,876 words.

2.      This brief complies with the type-face requirements, as provided in Fed. R. App. P. 32(a)(5), and the type-style requirements, as provided in Fed. R. App. P. 32(a)(6), because the brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman font.


Dated:  December 4, 2023          */s/ Shireen Barday*
                                  Shireen A. Barday

                                  *Counsel for Amicus Curiae*

14

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system on December 4, 2023.  Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:  December 4, 2023

*/s/ Shireen Barday*
Shireen A. Barday

*Counsel for Amicus Curiae*