No. 23-12155

# UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

DEKKER ET AL.,

*Plaintiffs-Appellees*,

v.

SECRETARY, FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION ET AL.,
*Defendants-Appellants*.

On Appeal from the U.S. District Court for the Northern District of Florida
(Tallahassee Division)
No. 4:22-cv-00325-RH-MAF,
The Honorable Robert L. Hinkle, Judge

## BRIEF OF AMICI CURIAE STATE OF CALIFORNIA AND 19 OTHER STATES IN SUPPORT OF PLAINTIFFS-APPELLEES AND AFFIRMANCE

ROB BONTA
Attorney General of California
RENU R. GEORGE
Senior Assistant Attorney General
KATHLEEN BOERGERS
Supervising Deputy Attorney General
STEPHANIE T. YU
NIMROD PITSKER ELIAS
LILY G. WEAVER
Deputy Attorneys General
STATE OF CALIFORNIA
OFFICE OF THE ATTORNEY GENERAL
1515 Clay Street, Oakland CA 94612
(510) 879-0011
Kathleen.Boergers@doj.ca.gov

December 4, 2023     *Attorneys for Amici Curiae State of California*

## TABLE OF CONTENTS

**Page**

Interest of Amici ................................................................................. 1

Argument ............................................................................................. 2

    I.    Amici States Have Longstanding Anti-Discrimination
            Laws Guaranteeing Access to Gender-Affirming Care
            Under their Medicaid Programs and Private Insurance ............ 3

    II.   Ensuring Access to Gender-Affirming Care Has
            Improved Health Outcomes for Transgender People.............. 13

Conclusion ......................................................................................... 18

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Dekker v. Weida*
No. 4:22-cv-325-RH-MAF, 2023 WL 4102243 (N.D. Fla.
June 21, 2023)..........................................................................2, 5

STATUTES AND REGULATIONS

Cal. Code Regs. tit. 10 § 2561.2, subd. (a) (2012) ...........................................8

Colo. Code Regs. § 702-4-2-62-5 ................................................................ 10

Conn. Gen. Stat. § 46a-71(a) .........................................................................6

Florida Statute § 286.311(2) (2023) ...............................................................1

Florida Statute § 456.001(9)(a) ......................................................................1

Florida Administrative Code rule 59G-1.050(7) ............................................1

Haw. Rev. Stat. § 431:10A-118.3(a) ..............................................................6

Haw. Rev. Stat. § 432:1-607.3 ........................................................................6

Haw. Rev. Stat. § 432D-26.3 ...........................................................................6

Ill. Comp. Stat. Ann. 35/3.5 (2023) ................................................................9

Ill. Admin. Code, tit. 50, § 2603.35 ................................................................6

Maryland Trans Equity Act (2023)..................................................................5

Minn. Stat. Ann. § 543.23 (2023)....................................................................9

N.J. Stat. Ann. § 17B:26-2.1ii (2022)..............................................................7

N.J. Stat. Ann. § 17B:27-46.1oo (2022)...........................................................7

N.J. Stat. Ann. § 26:2J-4.40 (2022).................................................................7

# TABLE OF AUTHORITIES
## (continued)

**Page**

N.J. Stat. Ann. § 30:4D-9.1 (2017)....................................................5

N.J. Stat. Ann. § 52:14-17.29x (2021)..............................................7

N.Y. Fam. Ct. Act § 659 ...................................................................9

N.Y. Crim. Proc. § 570.19. ...............................................................9

N.Y. Comp. Codes R. & Regs. Title 18 § 505.2(*l*)................................. 5, 17

Or. Rev. Stat. § 746.021................................................................ 17

Wash. Rev. Code § 48.43.0128(3)(a) ........................................... 11

Wash. Admin. Code § 182-531-1675 .............................................5

Wash. Admin. Code §§ 182-531-1675(b)(i)–(ii), (f)..................................... 17

OTHER AUTHORITIES

Ali Zaker-Shahrak et al., Cal. Dep't of Ins., Economic Impact
    Assessment: Gender Nondiscrimination in Health Insurance
    11–12 (2012), https://transgenderlawcenter.org/wp-
    content/uploads/2013/04/Economic-Impact-Assessment-
    Gender-Nondiscrimination-In-Health-Insurance.pdf ................. 13, 14, 17

Amy E. Green et al., *Association of Gender-Affirming Hormone
    Therapy With Depression, Thoughts of Suicide, and
    Attempted Suicide Among Transgender and Nonbinary
    Youth*, 70 J. of Adolescent Health 643 (2021),
    https://www.jahonline.org/article/S1054-139X(21)00568-
    1/fulltext................................................................................. 16

iii

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

Anna I. R. van der Miesen et al., *Psychological Functioning in Transgender Adolescents Before and After Gender-Affirmative Care Compared with Cisgender General Population Peers*, 66 J. Adolescent Health 699, 703 (2020) .................. 16

Annelou L.C. de Vries et al., *Young Adult Psychological Outcome After Puberty Suppression and Gender Reassignment*, 134 Pediatrics 696 (2014), https://doi.org/10.1542/peds.2013-2958 ................................................. 15

Cal. Dep't of Health Care Serv., All Plan Letter 13-011 ............................... 5

Christy Mallory & Will Tentindo, Medicaid Coverage for Gender-Affirming Care (December 2022), https://williamsinstitute.law.ucla.edu/publications/medicaid-trans-health-care/ ................................................................................. 4

Colo. Dep't of Reg. Agencies, Div. of Ins., *Gender-Affirming Care Coverage Guide* (2023) .................................................................. 8

Conn. Ins. Dep't, Bulletin IC-34, Gender Identity Nondiscrimination Requirements (Dec. 19, 2013), https://portal.ct.gov/-/media/CID/BulletinIC37GenderIdentityNondiscrimination Requirementspdf.pdf .................................................................... 6

Conn. Comm'n On Human Rights And Opportunities, Declaratory Ruling on Petition Regarding Health Insurers' Categorization of Certain Gender-Confirming Procedures as Cosmetic 9 (2020), https://www.chlpi.org/wp-content/uploads/2013/12/Dec-Rule_04152020.pdf .......................... 10, 11

# TABLE OF AUTHORITIES
## (continued)

**Page**

Chester A. McPherson, D.C. Dep't of Ins., Bulletin 13-IB-01-30/15, Prohibition of Discrimination in Health Insurance Based on Gender Identity and Expression 3–4 (2014), https://disb.dc.gov/sites/default/files/dc/sites/disb/publication/attachments/Bulletin-ProhibitionDiscriminationBasedonGenderIdentityorExpressionv022714.pdf ......................................................................... 11

Dana Ferguson et al., *Minnesota to Join at Least 4 Other States in Protecting Transgender Care This Year*, NPR, April 21, 2023 ............................................................................. 6

Daphna Stroumsa, *The State of Transgender Health Care: Policy, Law, and Medical Frameworks*, 104 Am. J. Pub. Health e31 (2014), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3953767/ ....................... 3

E. Coleman et al., *Standards of Care for the Health of Transgender and Gender Diverse People, Version 8*, 23 Int'l J. Transgender Health S1 (2022), https://doi.org/10.1080/26895269.2022.2100644 .................................. 10

EqualityMaine, Maine Transgender Network, GLAD and Maine Women's Lobby Announce Health Coverage for Transgender Individuals Under MaineCare, LGBTQ Legal Advocates & Defs. (Oct. 3, 2019), https://www.glad.org/post/equalitymaine-maine-transgender-network-glad-and-maine-womens-lobby-announce-health-coverage-for-transgender-individuals-under-mainecare/ ................................................................... 11

v

## TABLE OF AUTHORITIES
### (continued)

**Page**

Gary D. Anderson, Mass. Comm'r of Ins., Bulletin 2021-11,
*Continuing Applicability of Guidance Regarding Prohibited
Discrimination on the Basis of Gender Identity or Gender
Dysphoria Including Medically Necessary Gender Affirming
Care and Related Services* (2021).............................................. 12

Ill. Dep't of Human Rights, Ill. Dep't of Healthcare and Family
Servs., and the Ill. Dep't of Ins., Guidance Relating to
Nondiscrimination in Healthcare Services in Illinois (June
26, 2020),
https://idoi.illinois.gov/content/dam/soi/en/web/insurance/co
nsumers/documents/english-web-idhr-joint-
nondiscrimination-guidance.pdf............................................ 6, 7

Ill. Dep't of Ins., *Company Bulletin 2020-16, Health Insurance
Coverage for Transgender, Nonbinary, and Gender
Nonconforming Individuals, and for Individuals of All
Sexual Orientations* (June 15, 2020)
https://insurance2.illinois.gov/cb/2020/CB2020-16.pdf .......................... 7

Ivette Gomez et al., *Update on Medicaid Coverage of Gender-
Affirming Health Services* (Oct. 11, 2022), Kaiser Family
Foundation, https://www.kff.org/womens-health-
policy/issue-brief/update-on-medicaid-coverage-of-gender-
affirming-health-services/.................................................. 4,5

Jack L. Turban et al, *Access To Gender-Affirming Hormones
During Adolescence and Mental Health Outcomes Among
Transgender Adults* 17(1) PLOS One 1, 8 (2022),
https://journals.plos.org/plosone/article?id=10.1371/journal.
pone.0261039.......................................................... 16

vi

# TABLE OF AUTHORITIES
## (continued)

Page

Jennifer Kates, et al., *Health and Access to Care and Coverage for Lesbian, Gay, Bisexual, and Transgender Individuals in the U.S.*, Kaiser Family Foundation (May 2018), https://files.kff.org/attachment/Issue-Brief-Health-and-Access-to-Care-and-Coverage-for-LGBT-Individuals-in-the-US ...........................................................................................................4

Julia C. Sorbara et al., *Mental Health and Timing of Gender-Affirming Care*, 146 Pediatrics no. 4 (2020), https://publications.aap.org/pediatrics/article/146/4/e201936 00/79683/Mental-Health-and-Timing-of-Gender-Affirming-Care .......................................................................................... 15

Letter from Lisa K. Maguire, Esq., State Appeals, to Blue Cross Blue Shield Member (Aug. 11, 2014), https://www.outfront.org/sites/default/files/Dept%20of%20 Commerce%20external%20review.pdf .................................................. 12

Letter from Mike Kreidler, Office of the Ins. Comm'r of Wash. State to Health Ins. Carriers in Wash. State (June 25, 2014), https://www.insurance.wa.gov/sites/default/files/documents/ gender-identity-discrimination-letter.pdf.Other ........................................8

Marijn Arnoldussen et al., *Self-Perception of Transgender Adolescents After Gender-Affirming Treatment: A Follow-Up Study Into Young Adulthood*, 9 LGBT Health 238 (2022), https://www.liebertpub.com/doi/epdf/10.1089/lgbt.2020.049 4 ........................................................................................................... 15

vii

# TABLE OF AUTHORITIES
## (continued)

Page

Mass. Div. of Ins., Office of Consumer Affairs & Bus.
   Regulation, Bulletin 2014-03, Guidance Regarding
   Prohibited Discrimination on the Basis of Gender Identity
   (June 20, 2014) https://www.mass.gov/doc/bulletin-2014-
   03-guidance-regarding-prohibited-discrimination-on-the-
   basis-of-gender-identity/download ............................................................. 7

Minn. Dep't of Commerce, Admin. Bulletin 2015-5, Gender
   Identity Nondiscrimination Requirements (2015) ................................... 10

Minn. Dep't of Commerce, Admin. Bulletin 2021-3,
   https://mn.gov/commerce-stat/pdfs/bulletin-2021-3.pdf ......................... 10

Nat'l Women's Law Ctr., *Health Care Refusals Harm Patients:*
   *The Threat to LGBT People and Individuals Living with*
   *HIV/AIDS* (May 2014), https://nwlc.org/wp-
   content/uploads/2015/08/lgbt_refusals_factsheet_05-09-
   14.pdf .......................................................................................................... 3

Nondiscrimination in Health Programs and Activities,
   81 Fed. Reg. 31,375 (May 18, 2016) ..................................................... 3, 4

N.Y. Dep't of Fin. Servs., Ins. Circular Letter No. 7 (2014),
   https://www.dfs.ny.gov/industry_guidance/circular_letters/cl
   2014_07 ....................................................................................................... 7

News Release, New Jersey Department of Banking and
   Insurance Issues Guidance to Insurance Carriers to Ensure
   Nondiscriminatory Health Coverage to Transgender
   Individuals (Jun. 28, 2023),
   https://www.nj.gov/dobi/pressreleases/pr230628.html; ........................... 7

Or. Health Auth., *Prioritized List: Guideline for Gender*
   *Dysphoria* 1 (2019), https://www.oregon.gov/oha/HPA/DSI-
   HERC/FactSheets/Gender-dysphoria.pdf ........................................... 16, 17

TABLE OF AUTHORITIES
(continued)

Page

Pa. Ins. Dep't., *Notice Regarding Nondiscrimination, Notice 2016-05*, 46 Pa.B. 2251 (2016), https://www.pacodeandbulletin.gov/Display/pabull?file=/secure/pabulletin/data/vol46/46-18/762.html ...................................................7

Pa. Dep't. of Human Servs., CHIP Transmittal 2016-5 (2016), https://transequality.org/sites/default/files/PA-CHIP-Transmittal.pdf...........................................................................7

R.I. Health Ins. Comm'r, Health Ins. Bulletin 2015-3, Guidance Regarding Prohibited Discrimination on the Basis of Gender Identity or Expression 1 (2015), https://ohic.ri.gov/sites/g/files/xkgbur736/files/bulletins/Bulletin-2015-3-Guidance-Regarding-Prohibited-Discrimination.pdf ................................................................. 11

State of Maryland, Executive Order 01.01.2023.08, https://governor.maryland.gov/Lists/ExecutiveOrders/Attachments/11/EO_01.01.2023.08_accessible.pdf. ...........................................9

Vt. Dep't of Health Access, *Gender Affirmation Surgery for the Treatment of Gender Dysphoria* (2022) https://dvha.vermont.gov/sites/dvha/files/documents/providers/Forms/gender%20affirmation%20surgery%20for%20web.pdf ...................................................................................5

Vt. Dep't of Fin. Reg., Ins. Bulletin No. 174, *Guidance Regarding Prohibited Discrimination on the Basis of Gender Identity including Medically Necessary Gender Dysphoria Surgery and Related Health Care* (2013) https://dfr.vermont.gov/sites/finreg/files/regbul/dfr-bulletin-insurance-174-gender-dysphoria-surgery.pdf ........................................ 7, 8

# TABLE OF AUTHORITIES
## (continued)

**Page**

William V. Padula et al., *Societal Implications of Health Insurance Coverage for Medically Necessary Services in the U.S. Transgender Population: A Cost-Effectiveness Analysis*, 31(4) J. Gen. Intern. Med. 394, 394 (2016), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4803686 .............. 14, 17

Wylie C. Hembree et al., *Endocrine Treatment of Gender-Dysphoric/Gender Incongruent-Persons: An Endocrine Society Clinical Practice Guideline*, 102 J. Clinical Endocrinology & Metabolism 3869 (2017) https://doi.org/10.1210/jc.2017-01658 ................................................... 10

Ximena Lopez et al., *Statement on Gender-Affirmative Approach to Care from the Pediatric Endocrine Society Special Interest Group on Transgender Health*, 29 Current Op. Pediatrics no. 4 at 475 (2017) .................................................... 14, 15

x

## INTEREST OF AMICI

Amici Curiae States of California, Colorado, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, Washington and the District of Columbia strongly support transgender people's right to live with dignity, be free from discrimination, and have equal access to healthcare.[1] Amici States have significant experience in administering Medicaid programs—which provide payments for medical care to patients of limited economic means—for our transgender residents. These Medicaid policies cover gender-affirming care, reflect well-established medical standards of care, and result in better health outcomes for our transgender residents. Amici States submit this brief to underscore the importance of gender-affirming care, as well as highlight the significant evidence supporting the benefits of access to treatment for transgender patients.

The challenged law and policy in this case, Florida Statute § 286.311(2) (2023) and 456.001(9)(a) and Florida Administrative Code rule 59G-

---

[1] Amici States submit this amicus brief pursuant to Federal Rule of Appellate Procedure 29(a) in support of Plaintiffs-Appellees August Dekker, Brit Rothstein, Susan Doe, and K.F and affirmance of the judgment.

1

1.050(7), categorically banned Medicaid coverage for medically necessary treatment of gender dysphoria, including through prescription of puberty blockers and hormone therapy. Based on a robust factual record developed over the course of a seven day bench trial, the lower court properly concluded that "denial of this treatment will cause needless suffering for a substantial number of patients and will increase anxiety, depression, and the risk of suicide," *Dekker v. Weida*, No. 4:22-cv-325-RH-MAF, 2023 WL 4102243, at *8, *14 (N.D. Fla. June 21, 2023), and held that barring coverage of gender-affirming treatment is impermissible gender-based discrimination. Transgender people deserve, and are guaranteed, the equal protection of the law, as are all other persons under the Constitution. This Court should affirm the judgment.

## ARGUMENT

Pervasive discrimination against transgender people within the healthcare system nationwide is well-documented, as are the tangible economic, emotional, and physical consequences suffered by transgender individuals as a result. Discrimination, exclusion, and denial of care on the basis of transgender status can lead to increased risk of depression, anxiety, substance abuse, and suicide. To support the health and dignity of transgender people and prevent these injuries, amici States have adopted

2

laws and policies, including through their Medicaid programs, to ensure access to gender-affirming healthcare. Contrary to Defendants' claims that they are protecting their citizens by excluding gender-affirming care from Florida's Medicaid program, amici States' inclusive laws and policies demonstrate that protecting access to this care results in better health outcomes for our transgender residents.

## I.    AMICI STATES HAVE LONGSTANDING ANTI-DISCRIMINATION LAWS GUARANTEEING ACCESS TO GENDER-AFFIRMING CARE UNDER THEIR MEDICAID PROGRAMS AND PRIVATE INSURANCE

Many transgender patients "continue to experience discrimination in the health care context."[2] This discrimination "create[s] barriers to accessing timely, culturally competent, medically appropriate, and respectful care."[3] Indeed, the U.S. Health and Human Services Agency has recognized that

---

[2] Nondiscrimination in Health Programs and Activities, 81 Fed. Reg. 31,375, 31,444, 31,460–61 (May 18, 2016) (citing studies showing that 26.7% of transgender people reported having been refused needed health care and 25% reported having been subject to harassment in medical settings, which can lead those individuals to postpone or avoid needed healthcare).

[3] Daphna Stroumsa, *The State of Transgender Health Care: Policy, Law, and Medical Frameworks*, 104 Am. J. Pub. Health e31 (2014), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3953767/; *see also* Nat'l Women's Law Ctr., *Health Care Refusals Harm Patients: The Threat to LGBT People and Individuals Living with HIV/AIDS* (May 2014), https://nwlc.org/wp-content/uploads/2015/08/lgbt_refusals_factsheet_05-09-14.pdf.

difficulties in "the process of obtaining health insurance coverage" often

lead transgender patients to postpone or avoid obtaining medical care, thus

"exacerbat[ing] health disparities experienced by the LGBT population."[4]

Comprehensive and equitable Medicaid coverage is crucial for

transgender people, who are more likely to live in poverty due to well-

documented systematic and widespread discrimination.[5] Many transgender

people rely on Medicaid for health coverage.[6] A 2022 report estimated that a

little over 20% of transgender adults in the United States are on Medicaid.[7]

Accordingly, amici States ensure Medicaid coverage for their transgender

residents.[8] As of July 1, 2021, twenty-nine states and D.C. expressly include

---

[4] 81 Fed. Reg. 31,375 at 31,460.

[5] Ivette Gomez et al., *Update on Medicaid Coverage of Gender-Affirming Health Services*, Kaiser Family Foundation (Oct. 11, 2022) https://www.kff.org/womens-health-policy/issue-brief/update-on-medicaid-coverage-of-gender-affirming-health-services/; *see also* Jennifer Kates, et al., *Health and Access to Care and Coverage for Lesbian, Gay, Bisexual, and Transgender Individuals in the U.S.*, Kaiser Family Foundation (May 2018), https://files.kff.org/attachment/Issue-Brief-Health-and-Access-to-Care-and-Coverage-for-LGBT-Individuals-in-the-US.

[6] Gomez, *supra* n. 5.

[7] Christy Mallory & Will Tentindo, Medicaid Coverage for Gender-Affirming Care (December 2022), at 1 https://williamsinstitute.law.ucla.edu/publications/medicaid-trans-health-care/.

[8] *Id*. at 20–23 (describing state-level Medicaid policies providing affirmative coverage for gender-affirming care in Alaska, California, Colorado, Connecticut, Delaware, D.C., Georgia, Illinois, Iowa, Maine,

at least some coverage for gender-affirming care under their Medicaid

programs, either by statute or administrative policy, or are in the process of

extending coverage.[9] And amici States continue to broaden coverage under

their Medicaid programs. For example, beginning on January 1, 2024, the

Maryland Trans Equity Act will expand the number of gender-affirming

---

Maryland, Massachusetts, Michigan, Minnesota, Montana, Nevada, New Hampshire, New Jersey, New York, North Dakota, Oregon, Pennsylvania, Rhode Island, Vermont, Washington, and Wisconsin). Notably, Defendant Florida approved Medicaid coverage for gender-affirming healthcare in 2016, finding that "the risks of not treating" a transgender adolescent with puberty blockers "may be worse than" treatment risks. *Dekker v. Weida*, 2023 WL 4102243, at *3.

   [9] Gomez, *supra* note 5 (listing state Medicaid programs covering gender-affirming health services at Table 1); *see also, e.g.*, Cal. Dep't of Health Care Serv., All Plan Letter 13-011 (Sept. 25, 2013) at 1 https://www.dhcs.ca.gov/formsandpubs/Documents/MMCDAPLsandPolicy Letters/APL2013/APL13-011.pdf (stating transgender services have been available to Medi-Cal beneficiaries since 2001); N.J. Stat. Ann. § 30:4D-9.1 (2017) (requiring Medicaid contract providers to cover gender affirming care); N.Y. Comp. Codes R. & Regs. tit. 18 § 505.2(*l*)(1)–(4) (covering medically necessary hormone therapy and gender affirming surgery under Medicaid); Vt. Dep't of Health Access, *Gender Affirmation Surgery for the Treatment of Gender Dysphoria* (2022) at 2 https://dvha.vermont.gov/sites/dvha/files/documents/providers/Forms/gender %20affirmation%20surgery%20for%20web.pdf (covering gender affirming surgery if certain criteria are met under Medicaid); Wash. Admin. Code § 182-531-1675 (2015) https://apps.leg.wa.gov/wac/default.aspx?cite=182-531-1675#:~:text=(a)%20Prior%20authorization%20requirements%20for,(3)%2 0of%20this%20section (listing surgical and hormone therapy, puberty suppression therapy, behavioral therapy, and surgical and ancillary services as available under Apple Health's "gender dysphoria treatment" program).

treatments covered under the State's Medicaid plan to include the ability for individuals to alter their hair, face, neck, and voice to better align their physical body with their gender identity.[10]

Outside of the Medicaid context, many of amici States' laws, regulations, and healthcare bulletins likewise prohibit insurers from discrimination against transgender people in the provision of healthcare.[11] In

---

[10] Dana Ferguson et al., *Minnesota to Join at Least 4 Other States in Protecting Transgender Care This Year*, NPR, April 21, 2023, https://www.npr.org/2023/04/21/1171069066/states-protect-transgender-affirming-care-minnesota-colorado-maryland-illinois.

[11] *See, e.g.*, **Connecticut**: Conn. Gen. Stat. § 46a-71(a) (state agency services) https://www.cga.ct.gov/current/pub/chap_814c.htm#sec_46a-71; Conn. Ins. Dep't, Bulletin IC-34, Gender Identity Nondiscrimination Requirements (Dec. 19, 2013), https://portal.ct.gov/-/media/CID/BulletinIC37GenderIdentityNondiscriminationRequirementspdf.pdf (private insurers); **Hawai'i**: Haw. Rev. Stat. § 431:10A-118.3(a) (2016) https://www.capitol.hawaii.gov/hrscurrent/vol09_ch0431-0435h/hrs0431/HRS_0431-0010A-0118_0003.htm (accident and health or sickness insurance); Haw. Rev. Stat. § 432:1-607.3 (2022) https://www.capitol.hawaii.gov/sessions/session2022/bills/HB2405_HD1_.HTM (hospital and medical service policies); Haw. Rev. Stat. § 432D-26.3 (2016) https://www.capitol.hawaii.gov/hrscurrent/Vol09_Ch0431-0435H/HRS0432D/HRS_0432D-0026_0003.htm (health maintenance organization policies); **Illinois**: Ill. Admin. Code, tit. 50, § 2603.35 (2015) https://casetext.com/regulation/illinois-administrative-code/title-50-insurance/part-2603-unfair-discrimination-based-on-sex-sexual-orientation-gender-identity-or-marital-status/section-260335-prohibited-gender-identity-discrimination#:~:text=Section%202603.35%20%2D%20Prohibited%20Gender%20Identity%20Discrimination%20a)%20A%20company%20that,prospective%20insured's%20actual%20or%20perceived (health insurance plans); Ill. Dep't of Human Rights, Ill. Dep't of Healthcare and Family

6

Servs., and the Ill. Dep't of Ins., *Guidance Relating to Nondiscrimination in Healthcare Services in Illinois* (June 26, 2020) https://idoi.illinois.gov/content/dam/soi/en/web/insurance/consumers/documents/english-web-idhr-joint-nondiscrimination-guidance.pdf; Ill. Dep't of Ins., *Company Bulletin 2020-16, Health Insurance Coverage for Transgender, Nonbinary, and Gender Nonconforming Individuals, and for Individuals of All Sexual Orientations* (June 15, 2020) https://insurance2.illinois.gov/cb/2020/CB2020-16.pdf; **Massachusetts**: Mass. Div. of Ins., Office of Consumer Affairs & Bus. Regulation, Bulletin 2014-03, Guidance Regarding Prohibited Discrimination on the Basis of Gender Identity (June 20, 2014), at 1 https://www.mass.gov/doc/bulletin-2014-03-guidance-regarding-prohibited-discrimination-on-the-basis-of-gender-identity/download (prohibiting private insurers from denying coverage); **New Jersey**: N.J. Stat. Ann. § 26:2J-4.40 (2022) https://law.justia.com/codes/new-jersey/2022/title-26/section-26-2j-4-40/ (health maintenance organizations); N.J. Stat. Ann. § 17B:26-2.1ii (2022) https://law.justia.com/codes/new-jersey/2022/title-17b/section-17b-26-2-1ii/ (individual health insurance policies); N.J. Stat. Ann. § 17B:27-46.1oo (2022) https://law.justia.com/codes/new-jersey/2022/title-17b/section-17b-27-46-1oo/ (group health insurance policies); N.J. Stat. Ann. § 52:14-17.29x (2021) https://law.justia.com/codes/new-jersey/2021/title-52/section-52-14-17-29x/ (State Health Benefits Commission contracts); News Release, *New Jersey Department of Banking and Insurance Issues Guidance to Insurance Carriers to Ensure Nondiscriminatory Health Coverage to Transgender Individuals* (Jun. 28, 2023), https://www.nj.gov/dobi/pressreleases/pr230628.html; **New York**: N.Y. Dep't of Fin. Servs., *Ins. Circular Letter No. 7* (2014) (eliminating exclusions), https://www.dfs.ny.gov/industry_guidance/circular_letters/cl2014_07; **Pennsylvania**: Pa. Ins. Dep't., *Notice Regarding Nondiscrimination, Notice 2016-05*, 46 Pa.B. 2251 (2016), https://www.pacodeandbulletin.gov/Display/pabull?file=/secure/pabulletin/data/vol46/46-18/762.html (prohibiting discrimination and requiring coverage); Pa. Dep't. of Human Servs., CHIP Transmittal 2016-5 (2016), https://transequality.org/sites/default/files/PA-CHIP-Transmittal.pdf (eliminating exclusions and requiring coverage); **Vermont**: Vt. Dep't of Fin. Reg., Ins. Bulletin No. 174, *Guidance Regarding Prohibited Discrimination*

California, for instance, longstanding laws and regulations ensure that transgender patients are not denied coverage for care that is ordinarily available to cisgender patients.[12] Last year, California passed Senate Bill 107, defining itself as a "refuge" state for transgender youth and their families.[13] This year, Colorado, Illinois, Maryland, and New York have passed bills designed to protect transgender healthcare. In January, Colorado became the first state to explicitly designate gender-affirming care as an essential health benefit in its benchmark health insurance plan.[14] The Illinois legislature passed a law that protects providers and patients from litigation or

---

*on the Basis of Gender Identity including Medically Necessary Gender Dysphoria Surgery and Related Health Care* (2013) at 1, https://dfr.vermont.gov/sites/finreg/files/regbul/dfr-bulletin-insurance-174-gender-dysphoria-surgery.pdf (eliminating exclusions); **Washington**: Letter from Mike Kreidler, Office of the Ins. Comm'r of Wash. State to Health Ins. Carriers in Wash. State (June 25, 2014), https://www.insurance.wa.gov/sites/default/files/documents/gender-identity-discrimination-letter.pdf.Other states around the nation have similar protections. *See, e.g.*,

[12] Cal. Code Regs. tit. 10 § 2561.2, subd. (a) (2012).

[13] *See* Ferguson, *supra* note 10.

[14] *See* Colo. Dep't of Reg. Agencies, Div. of Ins., *Gender-Affirming Care Coverage Guide* (2023), https://doi.colorado.gov/for-consumers/consumer-resources/special-insurance-topics/lgbtq-health-care-rights/gender-affirming#:~:text=In%202023%2C%20Colorado%20became%20the,essential%20health%20benefits%20.

disciplinary action if they provide or obtain gender-affirming care that is lawful in Illinois, even if that care is not legal in another state.[15] The Maryland Governor signed a similar executive order that protects transgender residents of other states who seek gender-affirming treatment in Maryland.[16] New York also enacted the Trans Safe Haven bill in June 2023, which, among other things, protects parents and guardians who come to New York to receive gender-affirming care for a child, as well as healthcare practitioners who provide gender-affirming care in New York.[17] Additionally, in April 2023, the Minnesota legislature passed a law that prevents state courts or officials from complying with child removal requests, extraditions, arrests, or subpoenas relating to gender-affirming care that an individual receives or provides in Minnesota.[18] This law furthers the protections provided by the Minnesota Department of Commerce's 2015

---

[15] Ill. Comp. Stat. Ann. 35/3.5 (2023).

[16] State of Maryland, Executive Order 01.01.2023.08, https://governor.maryland.gov/Lists/ExecutiveOrders/Attachments/11/EO_01.01.2023.08_accessible.pdf.

[17] N.Y. Fam. Ct. Act § 659; N.Y. Crim. Proc. § 570.19.

[18] Minn. Stat. Ann. § 543.23 (2023).

bulletin, which established that health care plans may not exclude medically necessary coverage for treatment of gender dysphoria.[19]

The World Professional Association for Transgender Health (WPATH), the Endocrine Society, and other recognized and reputable professional associations have endorsed evidence-based standards of care for transgender people.[20] Many of amici States' laws and policies protecting insurance coverage for gender-affirming care are based upon these prevailing professional standards of medical care.[21] For example, the

---

[19] Minn. Dep't of Commerce, Admin. Bulletin 2015-5, Gender Identity Nondiscrimination Requirements (2015) http://transgenderlawcenter.org/wp-content/uploads/2016/05/2015-11-24-Minnesota-bulletin-insurance-2015-5.pdf (superseded by Minn. Dep't of Commerce, Admin. Bulletin 2021-3, https://mn.gov/commerce-stat/pdfs/bulletin-2021-3.pdf.)

[20] *See* E. Coleman et al., *Standards of Care for the Health of Transgender and Gender Diverse People, Version 8*, 23 Int'l J. Transgender Health S1 (2022), https://doi.org/10.1080/26895269.2022.2100644; *see also* Wylie C. Hembree et al., *Endocrine Treatment of Gender-Dysphoric/Gender Incongruent-Persons: An Endocrine Society Clinical Practice Guideline*, 102 J. Clinical Endocrinology & Metabolism 3869 (2017), https://doi.org/10.1210/jc.2017-01658.

[21] *See, e.g.*, **Colorado**: Colo. Code Regs. § 702-4-2-62-5 (prohibiting "[d]en[ial], exclu[sion], or otherwise limit[ing] coverage for medically necessary services, in accordance with generally accepted professional standards of care, based upon a person's . . . gender identity"); **Connecticut**: Conn. Comm'n On Human Rights And Opportunities, Declaratory Ruling on Petition Regarding Health Insurers' Categorization of Certain Gender-Confirming Procedures as Cosmetic 9 (2020), https://www.chlpi.org/wp-

content/uploads/2013/12/Dec-Rule_04152020.pdf (insurers shall " pay 'covered expenses' for treatment provided to individuals with gender dysphoria where the treatment is deemed necessary under generally accepted medical standards"); **District of Columbia**: Chester A. McPherson, D.C. Dep't of Ins., Bulletin 13-IB-01-30/15, Prohibition of Discrimination in Health Insurance Based on Gender Identity and Expression 3–4 (2014), https://disb.dc.gov/sites/default/files/dc/sites/disb/publication/attachments/Bulletin-ProhibitionDiscriminationBasedonGenderIdentityorExpressionv022714.pdf (medical necessity determination requires referring to "recognized professional standard of medical care for transgender individuals" and citing WPATH standards); **Maine**: Press Release, EqualityMaine, Maine Transgender Network, GLAD and Maine Women's Lobby Announce Health Coverage for Transgender Individuals Under MaineCare, LGBTQ Legal Advocates & Defs. (Oct. 3, 2019), https://www.glad.org/post/equalitymaine-maine-transgender-network-glad-and-maine-womens-lobby-announce-health-coverage-for-transgender-individuals-under-mainecare/ (criteria for determining medical necessity "will be based on consensus professional medical standards" and citing to WPATH standards); **Pennsylvania**: Pa. Dep't. of Human Servs., CHIP Transmittal 2016-5 2 (2016) ("In determining medical necessity for gender transition services, the Department and CHIP Contractors will utilize [WPATH] Standard of Care as guidelines."); **Rhode Island**: R.I. Health Ins. Comm'r, Health Ins. Bulletin 2015-3, Guidance Regarding Prohibited Discrimination on the Basis of Gender Identity or Expression 1 (2015), https://ohic.ri.gov/sites/g/files/xkgbur736/files/bulletins/Bulletin-2015-3-Guidance-Regarding-Prohibited-Discrimination.pdf ("[A] growing body of scientific and clinical evidence regarding the potential harm to consumers arising from the denial or exclusion of services on the basis of gender identity" prompted reexamination of exclusions); **Washington**: Wash. Rev. Code § 48.43.0128(3)(a) (for health plans issued on or after January 1, 2022, Washington forbids insurers from "deny[ing] or limit[ing] coverage for gender-affirming treatment" when it is medically necessary and "prescribed in accordance with accepted standards of care").

Minnesota Department of Commerce, which governs health insurers, has recommended that insurers use WPATH medical standards, and may not substitute their own, more restrictive standards for providing coverage for gender-affirming healthcare.[22] Massachusetts also recommends insurance carriers "consult the most up-to-date medical standards set forth by nationally recognized medical experts in the transgender health field, including but not limited to those issued by the [WPATH]."[23]

Taken together, these protections reflect our core commitment to protecting the equality of all people, regardless of their gender identity, and

---

[22] Minn. Dep't of Commerce, Admin. Bulletin 2021-3, https://mn.gov/commerce-stat/pdfs/bulletin-2021-3.pdf (superseding Admin. Bulletin 2015-5); *see also* Letter from Lisa K. Maguire, Esq., State Appeals, to Blue Cross Blue Shield Member (Aug. 11, 2014), https://www.outfront.org/sites/default/files/Dept%20of%20Commerce%20external%20review.pdf (determining that denial of coverage for gender-affirming surgery should be overturned as inconsistent with WPATH standards).

[23] Gary D. Anderson, Mass. Comm'r of Ins., Bulletin 2021-11, *Continuing Applicability of Guidance Regarding Prohibited Discrimination on the Basis of Gender Identity or Gender Dysphoria Including Medically Necessary Gender Affirming Care and Related Se*rvices at 2 (2021), https://www.mass.gov/doc/bulletin-2021-11-prohibited-discrimination-on-the-basis-of-gender-identity-or-gender-dysphoria-including-medically-necessary-gender-affirming-care-and-related-services-issued-september-9-2021/download.

ensuring people with gender dysphoria are not denied access to necessary—

and often lifesaving—care.

## II.   ENSURING ACCESS TO GENDER-AFFIRMING CARE HAS IMPROVED HEALTH OUTCOMES FOR TRANSGENDER PEOPLE

Amici States' policies not only provide transgender residents with

access to the prevailing professional standard of healthcare, they have

directly improved health outcomes for our residents—at minimal cost to the

public fisc. An economic impact analysis of AB 1586, a California law that

prohibits plans and insurers from denying an individual coverage based on

transgender status, found that the law benefitted transgender people by

improving healthcare outcomes and reducing suicide risk, lowering rates of

substance misuse, and increasing adherence to HIV treatment.[24] The same

analysis also found that "the strongest predictor associated with the risk of

suicide was gender based discrimination," which included "problems getting

health or medical services due to their gender identity or presentation."[25]

Indeed, the analysis concluded that "[t]hese studies provide overwhelming

---

[24] Ali Zaker-Shahrak et al., Cal. Dep't of Ins., Economic Impact Assessment: Gender Nondiscrimination in Health Insurance 10–12 (2012), https://transgenderlawcenter.org/wp-content/uploads/2013/04/Economic-Impact-Assessment-Gender-Nondiscrimination-In-Health-Insurance.pdf.

[25] *Id*. at 10 (citing Clements-Nolle, et al. study).

evidence that removing discriminatory barriers to treatment results in significantly lower suicide rates" and that requiring coverage "will not only save insurers from the costs associated with suicide, but prevent significant numbers of transgender insureds from losing their lives."[26] Similarly, in 2013, the Commonwealth of Massachusetts Group Insurance Commission found that the benefits of gender-affirming medical treatment outweighed the costs, noting that "these additional expenses hold good value for reducing the risk of negative endpoints—HIV, depression, suicidality, and drug abuse."[27]

Providing access to medical care is crucial for all ages, but it is especially important for youth. Undergoing puberty that does not align with one's gender identity and developing permanent undesired secondary sex characteristics is "often a source of significant distress" for transgender adolescents.[28] A 2020 study found that adolescents who begin gender-

---

[26] *Id*. at 10-11

[27] William V. Padula et al., *Societal Implications of Health Insurance Coverage for Medically Necessary Services in the U.S. Transgender Population: A Cost-Effectiveness Analysis*, 31(4) J. Gen. Intern. Med. 394, 394 (2016), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4803686.

[28] Ximena Lopez et al., *Statement on Gender-Affirmative Approach to Care from the Pediatric Endocrine Society Special Interest Group on*

affirming treatment at later stages of puberty were over five times more likely to report depression and over four times more likely to have anxiety disorders than adolescents who seek treatment in early puberty.[29] Conversely, studies have overwhelmingly shown that transgender minors' mental health drastically improves when they have access to gender-affirming healthcare. A longitudinal study that followed transgender adolescents from their intake at a gender clinic into young adulthood found that gender-affirming treatment resulted in significant improvement in global functioning and psychological wellbeing and the participants' life satisfaction, quality of life, and subjective happiness were comparable to their cisgender peers.[30] A 2021 analysis found that, for teens under the age

_____

*Transgender Health*, 29 Current Op. Pediatrics no.4 at 475, 480 (2017), https://pubmed.ncbi.nlm.nih.gov/28562420.

[29] Julia C. Sorbara et al., *Mental Health and Timing of Gender-Affirming Care*, 146 Pediatrics no. 4 1, 5-6 (2020), https://publications.aap.org/pediatrics/article/146/4/e20193600/79683/Mental-Health-and-Timing-of-Gender-Affirming-Care.

[30] Annelou L.C. de Vries et al., *Young Adult Psychological Outcome After Puberty Suppression and Gender Reassignment*, 134 Pediatrics 696 (2014), https://doi.org/10.1542/peds.2013-2958; *accord* Marijn Arnoldussen et al., *Self-Perception of Transgender Adolescents After Gender-Affirming Treatment: A Follow-Up Study Into Young Adulthood*, 9 LGBT Health 238 (2022), https://www.liebertpub.com/doi/epdf/10.1089/lgbt.2020.0494 (finding significant improvement in teens' self-worth after starting hormone replacement therapy).

of eighteen, the use of gender-affirming hormone therapy was associated with lower odds of recent depression and lower rates of suicide attempts compared to those who wanted, but did not receive, such therapy.[31] Another 2020 study reflected that transgender adolescents who receive gender-affirming care have fewer emotional and behavioral problems than transgender adolescents who have not received treatment.[32]

In light of the proven benefits minors experience when they have access to medically necessary healthcare, some amici States have issued explicit guidance prohibiting insurers from denying minors treatment for gender dysphoria solely based on age. For instance, Oregon has codified its prohibition on insurance plans denying benefits on the basis of gender identity and, in 2015, Oregon approved puberty suppression coverage under

---

[31] Amy E. Green et al., *Association of Gender-Affirming Hormone Therapy With Depression, Thoughts of Suicide, and Attempted Suicide Among Transgender and Nonbinary Youth*, 70 J. of Adolescent Health 643 (2021), https://www.jahonline.org/article/S1054-139X(21)00568-1/fulltext; *see also* Jack L. Turban et al, *Access To Gender-Affirming Hormones During Adolescence and Mental Health Outcomes Among Transgender Adults* 17(1) PLOS One 1, 8 (2022), https://journals.plos.org/plosone/article?id=10.1371/journal.pone.0261039.

[32] Anna I. R. van der Miesen et al., *Psychological Functioning in Transgender Adolescents Before and After Gender-Affirmative Care Compared with Cisgender General Population Peers*, 66 J. Adolescent Health 699, 703 (2020).

its Medicaid program for beneficiaries who are 15 or older.[33] Washington's

Medicaid program explicitly covers puberty suppression therapy and

hormone therapy for those under age twenty. Wash. Admin. Code §§ 182-

531-1675(b)(i)–(ii), (f). Similarly, New York's Medicaid regulations require

coverage for medically necessary puberty suppression for patients who meet

eligibility criteria and medically necessary hormone therapy for individuals

who are sixteen years of age and older. N.Y. Comp. Codes R. & Regs. tit. 18

§ 505.2(*l*)(2)(i). Several studies conducted by amici States have confirmed

that such policies could result in significant benefits to the health of our

teenage residents.[34]

    In sum, amici States' overwhelming experience shows that removing

discriminatory barriers to care improves healthcare outcomes for transgender

people and promotes public health.

---

[33] *See* Or. Rev. Stat. § 746.021; Or. Health Auth., *Prioritized List: Guideline for Gender Dysphoria* 1 (2019), https://www.oregon.gov/oha/HPA/DSI-HERC/FactSheets/Gender-dysphoria.pdf.

[34] Zaker-Shahrak, *supra* note 24, at 10–11 (citing Haas study to show that suicide risk is especially high among transgender minors and concluding that there is "overwhelming evidence that removing discriminatory barriers to treatment results in significantly lower suicide rates"); Padula, *supra* note 27 at 400 (acknowledging findings that "young adults experience alleviation of gender dysphoria and improvement in psychological functioning following gender reassignment").

## CONCLUSION

The court should affirm the judgment.

December 4, 2023                    Respectfully submitted,

                                   ROB BONTA
                                   Attorney General of California
                                   RENU R. GEORGE
                                   Senior Assistant Attorney General


                                   KATHLEEN BOERGERS
                                   Supervising Deputy Attorney General
                                   LILY WEAVER
                                   STEPHANIE YU
                                   NIMROD PITSKER ELIAS
                                   Deputy Attorneys General
                                   *Attorneys for Amicus Curiae State of
                                   California*

        [*additional counsel listed on subsequent page*]

Additional Counsel

PHILIP J. WEISER
Attorney General
State of Colorado
1300 Broadway
Denver, CO 80203

WILLIAM TONG
Attorney General
State of Connecticut
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
Attorney General
State of Delaware
820 North French Street
Wilmington, DE 19801

BRIAN L. SCHWALB
Attorney General
District of Columbia
400 6th Street, NW, Suite 8100
Washington, D.C. 20001

ANNE E. LOPEZ
Attorney General
State of Hawai'i
425 Queen Street
Honolulu, HI 96813

KWAME RAOUL
Attorney General
State of Illinois
100 West Randolph Street
Chicago, IL 60601

AARON M. FREY
Attorney General
State of Maine
6 State House Station
Augusta, ME 04333

ANTHONY G. BROWN
Attorney General
State of Maryland
200 Saint Paul Place, 20th Floor
Baltimore, MD 21202

ANDREA JOY CAMPBELL
Attorney General
Commonwealth of Massachusetts
One Ashburton Place
Boston, MA 02108

DANA NESSEL
Attorney General
State of Michigan
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
Attorney General
State of Minnesota
102 State Capitol 75 Rev. Dr.
Martin Luther King Jr. Blvd.
St. Paul, MN 55155

AARON D. FORD
Attorney General
State of Nevada
100 North Carson Street
Carson City, NV 89701

MATTHEW J. PLATKIN
Attorney General
State of New Jersey
25 Market Street
Trenton, NJ 08625

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, NY 10005

PETER F. NERONHA
Attorney General
State of Rhode Island
150 South Main Street
Providence, RI 02903

CHARITY R. CLARK
Attorney General
State of Vermont
109 State Street
Montpelier, VT 05609

ELLEN F. ROSENBLUM
Attorney General
State of Oregon
1162 Court Street N.E.
Salem, OR 97301

MICHELLE A. HENRY
Attorney General
Commonwealth of Pennsylvania
Strawberry Square, 16th Floor
Harrisburg, PA 17120

ROBERT W. FERGUSON
Attorney General
State of Washington
P.O. Box 40100
Olympia, WA 98504

## CERTIFICATE OF WORD COUNT

According to the word processing system used to prepare this brief, Microsoft Word, there are 3,396 total words contained within the brief.

                                                        /s/
                                                        Kathleen Boergers


## CORPORATE DISCLOSURE STATEMENT

As governmental parties, amici are not required to file a certificate of interested persons. Fed. R. App. P. 26.1(a).


## CERTIFICATE OF SERVICE

I hereby certify that, on December 4, 2023, this brief was filed through the Court's CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                                        /s/
                                                        Kathleen Boergers