No. 23-12155

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

*August Dekker et al.*,
Plaintiffs-Appellees,

v.

*Secretary, Florida Agency for Health Care Administration et al.*,
Defendants-Appellants.

U.S. District Court for the Northern District of Florida, No. 4:22-cv-325
(Hinkle, J.)

## DEFENDANTS-APPELLANTS' REPLY BRIEF

Mohammad O. Jazil
Gary Perko
Joshua E. Pratt
Michael Beato
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 270-5938
*Counsel for Defendants-Appellants*

*August Dekker et al. v. Secretary, Florida Agency for Health Care Administration*

No. 23-12155

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Per Rule 26.1 and Circuit Rule 26.1, and based on the briefs filed after Defendants-Appellants' initial brief, the following have an interest in this case:

1.  Academic Pediatric Association, *Amicus*

2.  Ahmed, Aziza, *Amicus*

3.  Alstott, Anne, *Amicus*

4.  Altman, Jennifer, *Counsel for Plaintiffs*

5.  American Academy of Child and Adolescent Psychiatry, *Amicus*

6.  American Academy of Family Physicians, *Amicus*

7.  American Academy of Nursing, *Amicus*

8.  American Academy of Pediatrics, *Amicus*

9.  American Association of Physicians for Human Rights, *Amicus*

10.  American College of Obstetricians and Gynecologists, *Amicus*

11.  American College of Osteopathic Pediatricians, *Amicus*

12.  American College of Pediatricians, *Amicus*

13.  American College of Physicians, *Amicus*

14.  American Medical Association, *Amicus*

15.  American Pediatric Association, *Amicus*

16.  American Pediatric Society, *Amicus*

17.  American Psychiatric Association, *Amicus*

*August Dekker et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

18.    Anderson, Barrett, *Counsel for Amicus*

19.    Antommaria, Armand, *Witness*

20.    Association of American Medical Colleges, *Amicus*

21.    Association of Medical School Pediatric Department Chairs, *Amicus*

22.    Bailey, Andrew, *Counsel for Amicus*

23.    Baldwin, Anna, *Counsel for Amicus*

24.    Baker, Kellan, *Witness*

25.    Barday, Shireen, *Counsel for Amicus*

26.    Bardos, Andy, *Counsel for Amicus*

27.    Barnes, Brian, *Counsel for Amicus*

28.    Beato, Michael, *Counsel for Defendants*

29.    Biggs, Michael, *Witness*

30.    Biomedical Ethics and Public Health Scholars, *Amicus*

31.    Bird, Brenna, *Counsel for Amicus*

32.    Blickenstaff, David C., *Counsel for Amicus*

33.    Blum, Rye, *Amicus*

34.    Boccuzzi, Charmine, Jr., *Counsel for Amicus*

35.    Boergers, Kathleen, *Counsel for Amicus*

36.    Boulware, Susan, *Amicus*

37.    Bowdre, Alexander Barrett, *Counsel for Amicus*

38.    Boylan, Jennifer Finney, *Amicus*

*August Dekker et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

39.    Brackett, John Matthew, *Witness*

40.    Bridges, Khiara M., *Amicus*

41.    Bronni, Nicholas J., *Counsel for Amicus*

42.    Brown, Louis, Jr., *Amicus*

43.    Brovold, Wen, *Amicus*

44.    Bucci-Mooney, Aryn, *Amicus*

45.    Burleigh, Clifton Francis, Jr., *Amicus*

46.    Cameron, Daniel, *Counsel for Amicus*

47.    Cantor, James, *Witness*

48.    Caraballo, Alejandra, *Amicus*

49.    Carr, Chris, *Counsel for Amicus*

50.    Charles, Carl, *Counsel for Plaintiffs*

51.    Chavez, Jennifer, *Amicus*

52.    Chipman, Lena, *Amicus*

53.    Chriss, Simone, *Counsel for Plaintiffs*

54.    Chuang, Ming, *Counsel for Amicus*

55.    Clark, Destiny, *Amicus*

56.    Clark, Kaila, *Counsel for Amicus*

57.    Clark, Naomi, *Amicus*

58.    Combs, Carla, *Amicus*

59.    Cohen, David S., I., *Amicus*

*August Dekker et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

60.    Cohen, Glenn*, Amicus*

61.    Commonwealth of Kentucky, *Amicus*

62.    Commonwealth of Massachusetts, *Amicus*

63.    Commonwealth of Virginia, *Amicus*

64.    Cory, Alyssa L., *Counsel for Amicus*

65.    Coursolle, Abigail, *Counsel for Plaintiffs*

66.    Cuevas, Gibran, *Amicus*

67.    Dalton, Ann, *Witness*

68.    Davies, Mark C., *Counsel for Amicus*

69.    Davis, Precious, *Amicus*

70.    DeBriere, Katherine, *Counsel for Plaintiffs*

71.    Dekker, August, *Plaintiff*

72.    Ding, Michael, *Counsel for Witness/Third-Party Miriam Grossman*

73.    District of Columbia, *Amicus*

74.    Do No Harm, *Amicus*

75.    Doe, Jane, *Plaintiff*

76.    Doe, John, *Plaintiff*

77.    Doe, Susan, *Plaintiff*

78.    Donovan, Kevin, *Witness*

79.    Drucker, Zachary, *Amicus*

80.    Dunn, Chelsea, *Counsel for Plaintiffs*

*August Dekker et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

81.     Edmiston, E. Kale, *Witness*

82.     Einstein, Jack, *Amicus*

83.     Endocrine Society, *Amicus*

84.     English, Jeffrey, *Witness*

85.     Ernst, Rhys, *Amicus*

86.     Ethics and Public Policy Center, *Amicus*

87.     Figlio, Erik, *Counsel for Amicus*

88.     Fitch, Lynn, *Counsel for Amicus*

89.     Florida Agency for Health Care Administration, *Defendant*

90.     Florida Chapter of the American Academy of Pediatrics, *Amicus*

91.     Florida Policy Institute, *Amicus*

92.     Florida Voices for Health, *Amicus*

93.     Galarneau, Charlene, *Amicus*

94.     Gates, Jackson, *Amicus*

95.     Gentili, Cecilia, *Amicus*

96.     Gibson, Benjamin J., *Counsel for Amicus*

97.     Gonzalez-Pagan, Omar, *Counsel for Plaintiffs*

98.     Gorton, Nick, *Amicus*

99.     Green, Jamison, *Amicus*

100.    Griffin, Steven J., *Counsel for Amicus*

101.    Griffin, Tim, *Counsel for Amicus*

*August Dekker et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

102.    Grossman, Miriam, *Witness and Third-Party*

103.    Hall, Oliver, *Amicus*

104.    Halley, Ted, *Amicus*

105.    Hartnett, Kathleen, *Counsel for Amicus*

106.    Hasson, Mary Rice, *Counsel for Amicus*

107.    Helstrom, Zoe, *Counsel for Amicus*

108.    Herzig, Gwendolyn, *Amicus*

109.    Heyer, Walt, *Amicus*

110.    Hilgers, Michael T., *Counsel for Amicus*

111.    Hinkle, Robert, *U.S. District Court Judge*

112.    Holloman, Ray, *Amicus*

113.    Hruz, Paul William, *Witness*

114.    Hussein, Abdul-Latif, *Amicus*

115.    Hutton, Kim, *Witness*

116.    Ikemoto, Lisa C., *Amicus*

117.    Jacobs, Dylan L., *Counsel for Amicus*

118.    Jensen, Abigal, *Amicus*

119.    Janssen, Aron Christopher, *Witness*

120.    Jazil, Mohammad, *Counsel for Defendants*

121.    Katz, Harvey, *Amicus*

122.    K.F., *Plaintiff*

*August Dekker et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

123.  Kaliebe, Kristopher Edward, *Witness*

124.  Kamody, Rebecca, *Amicus*

125.  Kang, Katelyn, *Counsel for Amicus*

126.  Karasic, Dan, *Witness*

127.  Keenan, Harper, *Amicus*

128.  Kiefel, Camille, *Witness*

129.  Kline, Robert, *Counsel for Amicus*

130.  Kniffin, Eric Nieuwenhuis, *Counsel for Amicus*

131.  Knudsen, Austin, *Counsel for Amicus*

132.  Kobach, Kris W., *Counsel for Amicus*

133.  Krasovec, Joseph, *Counsel for Amicus*

134.  Kuper, Laura, *Amicus*

135.  Labrador, Raúl R., *Counsel for Amicus*

136.  LaCour, Edmund G. Jr., *Counsel for Amicus*

137.  Lange, Anna, *Amicus*

138.  Lannin, Cortlin, *Counsel for Amicus*

139.  Laidlaw, Michael, *Witness*

140.  Lappert, Patrick, *Witness*

141.  Ladue, Jade, *Plaintiff*

142.  Lawyer, Adrian, *Amicus*

143.  Levine, Stephen, *Witness*

*August Dekker et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

144.    Little, Joseph, *Counsel for Plaintiffs*

145.    Loewy, Karen L., *Counsel for Plaintiffs*

146.    Maines, Nicole, *Amicus*

147.    Major, Beck, *Amicus*

148.    Major, Miss, *Amicus*

149.    Mananzala, Rickke, *Amicus*

150.    Manian, Maya, *Amicus*

151.    Manley, Dion, *Amicus*

152.    Marino, Anya, *Amicus*

153.    Marshall, Steve, *Counsel for Amicus*

154.    Marstiller, Simone, *Former Defendant*

155.    Mauler, Daniel, *Counsel for Amicus*

156.    McBride, Sarah, *Amicus*

157.    McCotter, R. Trent, *Counsel for Amicus*

158.    McGrath, Jessie Lee, *Amicus*

159.    McKee, Catherine, *Counsel for Plaintiffs*

160.    McNamara, Meredithe, *Amicus*

161.    Meeker, El, *Amicus*

162.    Meszaros, Marie Connelly, *Amicus*

163.    Miller, William, *Counsel for Plaintiffs*

164.    Miyares, Jason, *Counsel for Amicus*

165.  Mondry, Emily, *Counsel for Amicus*

166.  Morrisey, Patrick, *Counsel for Amicus*

167.  Morrison, Rachel N., *Amicus*

168.  Mosier, Chris, *Amicus*

169.  Nangia, Geeta, *Witness*

170.  National Association of Pediatric Nurse Practitioners, *Amicus*

171.  Neumeier, Shain, *Amicus*

172.  Nordby, Daniel E., *Counsel for Witness/Third-Party Miriam Grossman* and

      *Counsel for Amicus*

173.  Norohna, Maya, *Amicus*

174.  North Central Florida Council of Child and Adolescent Psychiatry,

      *Amicus*

175.  Oberman, Michelle, *Amicus*

176.  Olezeski, Christy, *Amicus*

177.  Olson-Kennedy, Johanna, *Witness*

178.  Oppenheimer, Rebecca, *Amicus*

179.  Page, Elliot, *Amicus*

180.  Paxton, Ken, *Counsel for Amicus*

181.  Pediatric Endocrine Society, *Amicus*

182.  Perko, Gary, *Counsel for Defendants*

183.  Peters, Torrey, *Amicus*

*August Dekker et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

184.  Polston, Ricky L., *Counsel for Amicus*

185.  Pratt, Christine, *Amicus*

186.  Pratt, Joshua E., *Counsel for Defendants*

187.  Purvis, Dara, *Amicus*

188.  Ramer, John, *Counsel for Amicus*

189.  Rebouche, Rachel, *Amicus*

190.  Reilly, Jacob*, Amicus*

191.  Reinhardt, Elizabeth, *Counsel for Amicus*

192.  Reyes, Sean, *Counsel for Amicus*

193.  Richards, Jay W., *Amicus*

194.  Rivaux, Shani, *Counsel for Plaintiffs*

195.  Robin-Vergeer, Bonnie, *Counsel for Amicus*

196.  Rokita, Theodore E., *Counsel for Amicus*

197.  Rice-Cranford, Jeani, *Amicus*

198.  Richmond, Marisa, *Amicus*

199.  Romano, Nick, *Amicus*

200.  Rothstein, Brit, *Plaintiff*

201.  Runner, Cat, *Amicus*

202.  Samuels, Valerie, *Counsel for Amicus*

203.  Sarmiento, La, *Amicus*

204.  Schechter, Loren, *Witness*

*August Dekker et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

205.   Scott, Sophie, *Witness*

206.   Severino, Roger, *Amicus*

207.   Shanley, Devon, *Amicus*

208.   Shaw, Gary, *Counsel for Plaintiffs*

209.   Sheeran, Andrew, *General Counsel for Defendant AHCA*

210.   Shumer, Daniel, *Witness*

211.   Simmons, Ames, *Amicus*

212.   Sibley, Jessica, *Amicus*

213.   Skolnik, Avy, *Amicus*

214.   Skrmetti, Jonathan, *Counsel for Amicus*

215.   Societies for Pediatric Urology, *Amicus*

216.   Society for Adolescent Health and Medicine, *Amicus*

217.   Society for Pediatric Research, *Amicus*

218.   Society of Pediatric Nurses, *Amicus*

219.   Soltis, Daniel, *Amicus*

220.   State of Alabama, *Amicus*

221.   State of Arkansas, *Amicus*

222.   State of California, *Amicus*

223.   State of Colorado, *Amicus*

224.   State of Connecticut, *Amicus*

225.   State of Delaware, *Amicus*

*August Dekker et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

226.   State of Georgia, *Amicus*

227.   State of Hawaii, *Amicus*

228.   State of Idaho, *Amicus*

229.   State of Illinois, *Amicus*

230.   State of Indiana, *Amicus*

231.   State of Iowa, *Amicus*

232.   State of Kansas, *Amicus*

233.   State of Louisiana, *Amicus*

234.   State of Maine, *Amicus*

235.   State of Maryland, *Amicus*

236.   State of Michigan, *Amicus*

237.   State of Minnesota, *Amicus*

238.   State of Mississippi, *Amicus*

239.   State of Missouri, *Amicus*

240.   State of Montana, *Amicus*

241.   State of Nebraska, *Amicus*

242.   State of Nevada, *Amicus*

243.   State of New Jersey, *Amicus*

244.   State of New York, *Amicus*

245.   State of North Dakota, *Amicus*

246.   State of Oregon, *Amicus*

*August Dekker et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

247.  State of Pennsylvania, *Amicus*

248.  State of Rhode Island, *Amicus*

249.  State of South Carolina, *Amicus*

250.  State of Tennessee, *Amicus*

251.  State of Texas, *Amicus*

252.  State of Utah, *Amicus*

253.  State of Vermont, *Amicus*

254.  State of Washington, *Amicus*

255.  State of West Virginia, *Amicus*

256.  Sutherlin, Trent, *Amicus*

257.  Szilagyi, Nathalie, *Amicus*

258.  The Trevor Project, *Amicus*

259.  Thompson, David, *Counsel for Amicus*

260.  TransSocial, *Amicus*

261.  Ulrich, Michael, *Amicus*

262.  United States of America, *Amicus*

263.  Veroff, Julie, *Counsel for Amicus*

264.  Veta, D. Jean, *Counsel for Amicus*

265.  Van Meter, Quentin, *Witness*

266.  Van Mol, Andre, *Witness*

267.  Wachowski, Lilly, *Amicus*

*August Dekker et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

268.    Weida, Jason, *Defendant*

269.    Weiss, Jillian, *Amicus*

270.    White, Fresh, *Amicus*

271.    Wilson, Alan, *Counsel for Amicus*

272.    Wood, Mallory, *Amicus*

273.    World Professional Association for Transgender Health, *Amicus*

274.    Zanga, Joseph, *Witness*

275.    Zinner, Gerda, *Amicus*

276.    Zhai, Jingzi, *Counsel for Amicus*

Per Circuit Rule 26.1-2, Defendants-Appellants certify that the CIP contained

herein is complete.

Dated: January 18, 2024                    */s/ Mohammad O. Jazil*
                                           Counsel for Defendants-Appellants

# TABLE OF CONTENTS

Table of Contents ................................................................................. i

Table of Authorities ........................................................................... ii

Argument ............................................................................................ 1

I. The State's actions comply with the Equal Protection Clause ............. 1

    A. Plaintiffs must prove that the executive *and* legislative branches acted with discriminatory intent ................................. 2

    B. Rational basis is the appropriate level of scrutiny ..................... 3

    C. Plaintiffs can't prove discriminatory intent ............................... 6

    D. Plaintiffs can't overcome rational-basis review ....................... 13

    E. Plaintiffs shouldn't get a mulligan on intent ........................... 15

II. The Affordable Care Act claim fails as well ......................................... 16

III. The Medicaid Act defers to the State's choices ................................. 17

IV. Plaintiffs' amicus briefs don't move the needle ................................ 20

Conclusion .......................................................................................... 22

Certificate of Compliance .................................................................. 24

Certificate of Service ......................................................................... 24

i

# TABLE OF AUTHORITIES

**Cases**

*Adams v. School Board of St. Johns County*,

    57 F.4th 791 (11th Cir. 2022) ............................................................. 4-5, 17

*Bostock v. Clayton County*,

    140 S. Ct. 1731 (2020) ..................................................................... 4

*Brnovich v. DNC*,

    141 S. Ct. 2321 (2021) ...............................................................3, 12

*Dobbs v. Jackson Women's Health Organization*,

    142 S. Ct. 2228 (2022) ..................................................................... 6

*Doe v. Ladapo*,

    4:23-cv-114 (N.D. Fla. 2023) ................................................... 11-12

*Eknes-Tucker v. Governor of State of Alabama*,

    80 F.4th 1205 (11th Cir. 2023) ...........................................*passim*

*Florida Family Policy Council v. Freeman*,

    561 F.3d 1246 (11th Cir. 2009) ..................................................... 3

*Gibson v. Collier*,

    920 F.3d 212 (5th Cir. 2019) .................................................. 17-18

*Glenn v. Brumby*,

    663 F.3d 1312 (11th Cir. 2011) ..................................................... 4

*Gonzaga University v. Doe*,

    536 U.S. 273 (2002) ...................................................................... 19

*Greater Birmingham Ministries v. Secretary of Alabama*,

    992 F.3d 1299 (11th Cir. 2021) ................................................... 12

*Health & Hospital Corp. v. Talevski*,

    143 S. Ct. 1444 (2023) ................................................................. 19

*In re Subpoenas Served on AAP*,

    23-mc-00004 (D.D.C. 2023); 23-7025 (D.C. Cir. 2023) ........................... 21

*Kosilek v. Spencer*,

    774 F.3d 63 (1st Cir. 2014) ......................................................... 18

*League of Women Voters of Florida v. Florida Secretary of State*,

    66 F.4th 905 (11th Cir. 2023) ........................................... 8, 12, 15

*L.W. v. Skrmetti*,

    73 F.4th 408 (6th Cir. 2023) ....................................................... 20

*Martin v. Singletary*,

    965 F.2d 944 (11th Cir. 1992) ..................................................... 4

*Rush v. Parham*,

    625 F.2d 1150 (5th Cir. 1980) ................................................... 17

*Steele v. National Firearms Act Branch*,

    755 F.2d 1410 (11th Cir. 1985) ................................................. 15

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,

    429 U.S. 252 (1977) ....................................................................... 8

*Washington v. Davis*,

    426 U.S. 229 (1976) ....................................................................... 2

## Statutes and Legislation

42 U.S.C. § 1396a ............................................................................ 19

42 U.S.C. § 1396c ............................................................................ 20

42 U.S.C. § 1396r-8 ..................................................................... 18-20

Florida House Bill 1421 (2023) ...................................................... 13

## Other Authorities

*Psychological Support, Puberty Suppression, and Psychosocial Functioning in Adolescents with Gender Dysphoria*,

    2015 J. Sex. Med. 2206 (Nov. 9, 2015) ........................................ 21

11th Circuit Rule 36, Internal Operating Procedure 2 .......................... 4

## ARGUMENT

Plaintiffs insist that *Eknes-Tucker* isn't binding. Neither is *Dobbs*. Nor is *Adams*. They maintain that the State conceded all disputed facts in its initial brief, though it's Plaintiffs who make an evidence-free argument for transgender individuals being accorded quasi-suspect status. And it's Plaintiffs who attempt to make an *Arlington Heights*-based intent argument for the first time on appeal. Plaintiffs' Affordable Care Act and Medicaid Act arguments fall flat as well. The Affordable Care Act argument is simply an extension of the fallacy underlying Plaintiffs' equal-protection claim, that the State is making distinctions based on sex (or transgender status) and not based on a diagnosis for one psychiatric condition (gender dysphoria) that affects some (but not all) transgender individuals. The Medicaid Act argument runs into a standard that defers to the State's judgment and not that of WPATH or the Endocrine Society. Under that deferential Medicaid standard, the State acted reasonably in concluding that certain treatments for gender dysphoria, supported by low-quality and very-low-quality evidence, shouldn't be reimbursed because, as Plaintiffs' expert stated, their "true effect may be" or "is likely to be substantially different" from what the treatments' proponents expect. Tr.397:1-10 (Dr. Antommaria). This Court should thus reverse.

## I.    The State's actions comply with the Equal Protection Clause.

Plaintiffs' equal protection claim depends on them establishing discriminatory intent on the part of Florida's legislative branch *and* Florida's executive branch, and then overcoming the rational-basis standard of review. The intent inquiry, in turn,

requires that Plaintiffs run the *Arlington Heights* gauntlet, though they neither mentioned *Arlington Heights* below nor put on evidence concerning its various factors. Overcoming rational-basis review requires Plaintiffs to negate the rational bases already approved in *Eknes-Tucker*. Finally, the United States's request for Plaintiffs to have a mulligan—a remand to make their intent claim anew—is inappropriate because Plaintiffs forfeited the opportunity at trial and the trial court already addressed the issue. Rewarding Plaintiffs for their poor choices below would obviously be unfair to the State.

### A.    Plaintiffs must prove that the executive *and* legislative branches acted with discriminatory intent.

It's axiomatic that equal-protection challenges require the challenger to plead and prove both discriminatory intent and discriminatory effect. *See Washington v. Davis*, 426 U.S. 229, 240 (1976). Here, Plaintiffs challenge *two* distinct laws from *two* distinct branches of government: Rule 59G-1.050(7) and Senate Bill 254.

The Florida Agency for Health Care Administration promulgated Rule 59G-1.050(7) to bar Medicaid reimbursement for puberty blockers, cross-sex hormones, and surgeries as treatments for gender dysphoria. AHCA is an executive-branch agency headed by the Governor's appointee.

The Florida Senate and Florida House passed SB254. Section 3 of the bill prohibits Medicaid reimbursement for the use of puberty blockers, cross-sex hormones, and surgeries as treatments for gender dysphoria. The Florida Legislature enacted SB254 after AHCA promulgated its rule. Indeed, SB254 became law in the middle of

the trial in this case with Plaintiffs amending their pleading during trial to challenge section 3 of SB 254. *E.g.*, Tr.*132:6-15.[1]

Because the rule and the bill are "separate routes to the same destination," Plaintiffs must succeed in *both* of their challenges to obtain the redress they seek. *Fla. Family Policy Council v. Freeman*, 561 F.3d 1246, 1256-58 (11th Cir. 2009). Stated differently, defeating only the rule would allow the bill to remain in place and vice versa, thereby denying Plaintiffs the Medicaid reimbursements they seek.

Crucially, to succeed, Plaintiffs must separately prove intentional discrimination on the part of Florida's executive branch (the Governor and AHCA) *and* Florida's legislative branch. Proving discriminatory intent for one doesn't prove discriminatory intent for the other. *Brnovich v. DNC*, 141 S. Ct. 2321, 2349-50 (2021).

## B.     Rational basis is the appropriate level of scrutiny.

Plaintiffs' protestations aside, the level of scrutiny that applies is clear as well. This Court's decision in *Eknes-Tucker v. Governor of State of Alabama*, 80 F.4th 1205 (11th Cir. 2023), held that rational basis applies. That case concerned an Alabama bill that regulated the same treatment (puberty blockers and cross-sex hormones) for the same condition (gender dysphoria) as the Florida rule and bill. In *Eknes-Tucker*, this Court held that gender-dysphoria regulations do *not* discriminate based on sex. *Id.* at 1227-28. Such regulations also do *not* discriminate against transgender individuals. *Id.* at 1230.

---

[1] "Tr.*" citations refer to transcript day 4.

They do *not* reinforce sex stereotypes. *Id.* at 1229. Nor is transgender status a quasi-suspect classification that triggers heightened scrutiny. *Id.* at 1230. And so, rational basis must apply. *Id.* at 1227-30.

Yet Plaintiffs resist the conclusions reached in *Eknes-Tucker*. They argue, confusingly, that the Florida laws at issue have direct "gendered terms," whatever that means, unlike the Alabama law at issue in *Eknes-Tucker*. Ans. Br. at 20-21. They say that the State and *Eknes-Tucker* "misse[d] the mark" and got things "backwards." Ans. Br. at 22 & 29 n.17. They urge this Court *not* to limit *Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011), or *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020), to the employment context, though *Eknes-Tucker* already did just that. *Compare* Ans. Br. at 27 n.16, *with Eknes-Tucker*, 80 F.4th at 1229.

Ultimately, Plaintiffs think that a mandate must issue in *Eknes-Tucker*, or an en banc petition must be resolved, before *Eknes-Tucker* becomes binding. *See* Ans. Br. at 20. Not so. Published decisions control and *Eknes-Tucker* is a published decision. *See Martin v. Singletary*, 965 F.2d 944, 945 n.1 (11th Cir. 1992); *see also* 11th Cir. R. 36, Internal Operating Procedure 2 ("Under the law of this circuit, published opinions are binding precedent. The issuance or non-issuance of the mandate does not affect this result.").

Plaintiffs also attempt to side-step both *Eknes-Tucker* and *Adams v. School Board of St. Johns County*, 57 F.4th 791 (11th Cir. 2022) (en banc), by saying that this Court never "assessed the indicia of suspectness inherent in transgender status classifications," Ans.

4

Br. at 30, and so any discussion of transgender status is dicta. There are two problems with this argument.

First, the statements about transgender status *not* triggering heightened scrutiny are important aspects of *Eknes-Tucker*'s and *Adams*'s analyses. If this Court had concluded that transgender status *is* a quasi-suspect classification, then the two cases' analyses would look much different. For *Eknes-Tucker* in particular, intermediary scrutiny—and not rational-basis review—would have been applied by the panel. The discussion of transgender status is thus more than mere dicta.

Second, for Plaintiffs to make a showing that transgender individuals are a suspect class, they must do more than recite mere platitudes and reference internet publications. *E.g.,* Ans. Br. at 29-32. The record on appeal is what matters. That record fails to establish that transgender individuals are a quasi-suspect class. Plaintiffs offered no evidence of a history of discrimination or prejudice. The record shows only that transgender status is mutable; gender identity is fluid, after all, according to Plaintiffs' expert. Tr.165:18-23 (Dr. Karasic). And there's no evidence that transgender individuals can't protect themselves through the political process—no evidence that they are a discrete and insular minority in need of greater constitutional protections.

Plaintiffs' core argument then boils down to this: heightened scrutiny applies "[i]f one must know the sex of a person to know whether or how a provision applies." Doc.246 at 30. But it's not the sex of the person (or even that person's transgender status) that matters for purposes of the Florida rule or bill. It's the diagnosis and only

5

the diagnosis. A person needs a diagnosis before obtaining any prescription. If a person has a diagnosis of gender dysphoria, then Medicaid reimbursement is unavailable for puberty blockers or cross-sex hormone prescriptions to treat the person's gender dysphoria. The appropriateness of such a line is subject to rational basis review because, as *Dobbs v. Jackson Women's Health Organization* held, "[t]he regulation of a medical procedure" "does not trigger heightened constitutional scrutiny," 142 S. Ct. 2228, 2245-46 (2022), and "must be sustained if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests," *id.* at 2284.

### C.    Plaintiffs can't prove discriminatory intent.

With questions settled about *whose* discriminatory intent matters and *what* level of scrutiny applies, the relevant question then is whether Plaintiffs have established the necessary intent through the *Arlington Heights* framework. They have not.

It bears emphasis that the district court didn't perform an *Arlington Heights* analysis either. The district court limited its intentional discrimination analysis to the following three paragraphs:

> Dissuading a person from conforming to the person's gender identity rather than to the person's natal sex is not a legitimate state interest. The defendants apparently acknowledge this. But the State's disapproval of transgender status—of a person's gender identity when it does not match the person's natal sex—was a substantial motivating factor in enactment of the challenged rule and statute.

> Discouraging individuals from pursuing their gender identities, when different from their natal sex, was also a substantial motivating factor. In a "fact sheet," the Florida Department of Health asserted social

6

transitioning, which involves no medical intervention at all, should not be a treatment option for children or adolescents. Nothing could have motivated this remarkable intrusion into parental prerogatives other than opposition to transgender status itself.

State action motivated by purposeful discrimination, even if otherwise lawful, violates the Equal Protection Clause. The rule and statute at issue were motivated in substantial part by the plainly illegitimate purposes of disapproving transgender status and discouraging individuals from pursuing their honest gender identities. This was purposeful discrimination against transgenders.

Doc.246 at 37-38 (citations and footnotes omitted). That's it. No discussion of procedural and substantive departures. No discussion of regulatory or legislative history. Not even a discussion of the presumption of good faith. Just a document from one State agency—not even a defendant or actor in this case—being used to impute bad intent on a different agency, members of the lower legislative chamber, members of the upper legislative chamber, and the chief executive.

Naturally, Plaintiffs try to supplement the analysis. It doesn't work.

***Presumption of Good Faith***. Plaintiffs never address the presumption of good faith in their answer brief. The point is therefore conceded: the presumption applies, and it has not been overcome. *See* Int. Br. at 26-27.

***Impact***. Rule 59G-1.050(7) and SB254 concern gender-dysphoria treatments. While those who suffer from gender dysphoria are transgender, not every transgender individual has gender dysphoria. Int. Br. at 4. There is also no evidence concerning the number of people who suffer from gender dysphoria. The impact of the regulation is

thus unclear. And even if the impact factor favors Plaintiffs, "impact alone is not determinative" of intentional discrimination. *Village of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

*Historical Background.* Plaintiffs get their facts wrong about the GAPMS and the rulemaking process at AHCA, and Plaintiffs failed to submit any evidence about SB254's legislative process. In their answer brief, Plaintiffs reference a "blizzard of anti-LGBTQ laws," Ans. Br. at 12-14, 34, as historical context, but none of the laws identified have ever been found to have been passed with discriminatory intent. This situation is no different from *League of Women Voters of Florida v. Florida Secretary of State*, where this Court faulted a lower court for relying on court cases that didn't involve intentional discrimination as a basis to conclude that the State has a history of acting with intentional discrimination. 66 F.4th 905, 923-24 (11th Cir. 2023) ("*League*"). That argument didn't work in *League*, and it should not work here.

More specifically, as to the GAPMS-related facts:

- Plaintiffs say that the GAPMS process had a predetermined outcome. Doc.246 at 9; Ans. Br. at 9-10. Yet they never say why it made sense for Mr. Brackett to go along with the so-called "predetermined outcome," given that he is a protected state civil servant and insulated from political pressures. Tr.1259:6-16 (Brackett). Nor do they explain why a predetermined outcome shows discriminatory intent versus a preference for one side in an ongoing psychiatric debate, or the State's belief in the correctness of the result reached.

- Plaintiffs fault Mr. Brackett for not having a scientific or medical background, Ans. Br. at 9, yet Plaintiffs fail to demonstrate that their

preferred "GAPMS guy," Jeffrey English, has such a scientific and medical background (he doesn't). Tr.410:16 – 460:18 (English).

- Plaintiffs fault Mr. Brackett for not reviewing "at least eight well-known studies" about gender-dysphoria treatments. Ans. Br. at 9. Plaintiffs omit that, as noted in the State's initial brief, Mr. Brackett extensively reviewed the relevant medical literature during his GAPMS-report-drafting process, Int. Br. at 13-14, including articles from Plaintiffs' own experts, Tr.1201:6 – 1202:12 (Brackett).

- Plaintiffs state that before "this case, AHCA had never used the GAPMS process to exclude coverage of a previously covered service." Ans. Br. at 8. This is an odd claim. Plaintiffs seem to suggest that AHCA can never change its mind about a GAPMS-reached decision, even though the medical field is constantly changing. Int. Br. at 8-9. If the State, as a hypothetical, approved of lobotomies in a 1920s GAPMS process, Plaintiffs would require the State to continue paying for those treatments. That can't be right.

- Plaintiffs argue that GAPMS reports only "cover[] a single treatment," relying on neither a policy, regulation, nor statute, but instead on their preferred "GAPMS guy," Mr. English, the spurned ex-employee with plagiarism issues. Ans. Br. at 8; Tr.1217:12 – 1218:4 (Mr. Brackett: "I had found that" Mr. English "plagiarized parts" of a non-gender-dysphoria report.).

- Plaintiffs claim that AHCA never hired experts to assist with a GAPMS report. Ans. Br. 9. But they fail to acknowledge that AHCA hires experts for other agency activities, as the State noted in its initial brief. Int. Br. at 13-14. Moreover, Plaintiffs can't simultaneously fault Mr. Brackett for not having a scientific or medical background while faulting AHCA for hiring experts to assist with the GAPMS report he wrote.

- Plaintiffs contend that GAPMS experts oppose gender-dysphoria treatments. Ans. Br. at 10. Yet Plaintiffs introduced below no evidence suggesting that the most important GAPMS expert, Dr. Brignardello-Petersen, who conducted a systematic review of gender-dysphoria-treatment research, personally opposes such treatments. Int. Br. at 14. Nor do they explain why the other GAPMS expert authors' opposition shows

9

discriminatory intent as opposed to a belief that gender-dysphoria treatments do more harm than good.

Plaintiffs' factual characterizations of the legislative process for SB254 are weaker still. As an initial matter, these so-called facts were never presented to the district court. They are new. They are also extra-record. So they should be rejected for these reasons alone. But the new facts on appeal still don't support Plaintiffs. Consider:

- Plaintiffs state that "[t]hroughout the hearings on SB254, legislators relied heavily on the GAPMS Report." Ans. Br. at 12. This is an incomplete and inaccurate statement. Again, Plaintiffs submitted no legislative transcripts of the SB254 hearings to the district court, so Plaintiffs have no evidentiary basis to make this statement. The only evidence they marshal (in their appellate brief) are four (extra-record) legislative documents. Ans. Br. at 12. But the GAPMS report isn't even heavily relied upon in those documents: each document contains over eighty footnotes, and the GAPMS report occupies only a single footnote in each document and a handful of sentences in the above-the-line text. More to the point, Plaintiffs fail to demonstrate that any legislator read any one of these documents, read (or even was aware of) the GAPMS report, and voted for SB254 *because of* the GAPMS report. And even if legislators relied on the GAPMS report, there's no evidence that they believed the report was motivated by discriminatory intent.

- Plaintiffs state that "[w]hen the House heard testimony, only doctors opposed to medical care were permitted to testify." Ans. Br. at 12. This is false. Plaintiffs provide only one piece of (extra-record) evidence to support this conclusion, a weblink of a single Florida House hearing. Ans. Br. at 12. Never mind this hearing wasn't even for SB254, and that the Florida House committee chairman, Representative Fine, introduced *a different* gender-dysphoria bill, HB1421, with notably different provisions. Putting this aside, Plaintiffs own link shows that their claim is wrong. At marker 44:13, Representative Fine explains that he invited a Florida doctor who performs gender-dysphoria surgeries; the doctor was "permitted to testify" but declined to do so.

- Plaintiffs assert that the "legislature refused to hear testimony from any transgender people, parents of transgender adolescents, or providers of gender-affirming care." Ans. Br. at 12. Again, the sole piece of (extra-record) evidence is the non-SB254 Florida House hearing. Plaintiffs don't even identify a single SB254 hearing (there were several), where members of the public—individuals both for and against SB254—provided public comment.

To be clear, various provisions of SB254 are the subject of a separate challenge before the district court. *See Doe v. Ladapo*, 4:23-cv-114 (N.D. Fla. 2023). Trial in that case ended in December 2023. And, in that case, the court has before it a complete set of legislative transcripts, among other things, to purportedly support the *Doe* Plaintiffs' claim for intentional discrimination. No such evidence was provided in *Dekker*.

***Sequence of Events, Departures***. Again, as the State explains above, Plaintiffs get their facts wrong as to the GAPMS process, the rulemaking process, and the legislative process. These factors don't favor Plaintiffs. They shouldn't, given that this Court, to properly engage with these factors, should have the *whole* legislative record before it, not just (purported) snippets of the legislative record that Plaintiffs present for the first time on appeal in an attempt to make arguments they didn't make below. Significantly, at no point in their narrative do Plaintiffs point to an instance of a Florida agency or elected official taking an action that they did not have the power to take. This begs the question of how one could depart from substantive or procedural requirements when every action complied with applicable substantive and procedural requirements.

11

*Policymaker Statements*. For this factor, Plaintiffs rely on, at most, statements from four Florida House members and a non-record quotation (Plaintiffs cite their trial brief, not an exhibit) from the Governor. Ans. Br. at 36-37. Three legislators don't make a quorum in either chamber, and the motives of one or a handful of legislators can't be imputed on the members of one legislative body or separate State entities. *Brnovich*, 141 S. Ct. at 2349-50; *Greater Birmingham Ministries v. Sec'y of Ala.*, 992 F.3d 1299, 1324 (11th Cir. 2021) ("*GBM*"); *League*, 66 F.4th at 932. The State can point to statements of its own and has done so before the trial court in *Doe v. Ladapo*. Doc.190 at 22, 4:23-cv-114 (N.D. Fla. Nov. 6, 2023) (collecting statements from the SB254 legislative record). Suffice to say, this factor doesn't favor Plaintiffs.

*Foreseeability, Knowledge*. Plaintiffs can't prevail on this factor as to SB254, simply because Plaintiffs don't have a record to base this conclusion on. Plaintiffs can't argue that legislators knew of potential impacts without submitting *all* the documents and statements and evidence the legislators could have used to base that knowledge on. Again, this remains an issue in a separate case before the district court where trial recently concluded and where the court had a more fulsome record.

*Alternatives*. As alternatives to Florida's laws, Plaintiffs suggest that the State should have adopted their preferred policies, like requiring compliance with WPATH's standards of care. Ans. Br. at 38. But the State does not need to adopt Plaintiffs' preferred policies, especially when low-quality evidence supports those policies. *GBM*, 992 F.3d at 1327; *League*, 66 F.4th at 940-41. Plaintiffs also omit any mention of

Representative Fine's HB1421, which was also circulating around the Florida Legislature. In relevant part, while HB1421 barred public *and private* insurance from covering gender-dysphoria treatments, SB254 only addresses public insurance. *See* § 6, Fla. House Bill 1421 (2023). This shows that SB254 was, for Plaintiffs, the better option.

*The Laws Would Have Been Passed Regardless*. Even if there was a discriminatory motive behind the challenged rule and bill (which there wasn't), they would have been passed regardless. Puberty blockers and cross-sex hormones, as gender-dysphoria treatments, carry risks for permanent, negative health consequences. Int. Br. at 3-9. The studies that support these treatments are backed by limited, low-quality evidence. Int. Br. at 3-9. Other countries are turning away from these treatment options and are urging caution. Int. Br. at 3-9. All of this is beyond dispute. And under these circumstances, the State may and should act to protect its citizens. The challenged laws would thus have been passed regardless of any discriminatory motive.

In sum, Plaintiffs don't have the facts or law to support their intentional-discrimination arguments for either Florida's executive or its legislative branch.

### D.    Plaintiffs can't overcome rational-basis review.

Nor can Plaintiffs overcome the rational bases offered by the State and already accepted by this Court. It was error for the district court to conclude otherwise.

In *Eknes-Tucker*, this Court held that a State could reasonably decide to regulate gender-dysphoria treatments given the risks involved. 80 F.4th at 1225. But, in this case, the district court rejected the same justification, saying "[t]hat there are risks of the kind

13

presented here is not a rational basis for denying patients the option to choose this treatment." Doc.246 at 43.

In *Eknes-Tucker*, this Court explained that a State could rationally decide to align itself with European countries that are scaling back their gender-dysphoria positions. 80 F.4th at 1225. After all, it's uncontroverted that "several European countries have restricted treating minors with transitioning medications due to growing concern about the medications' risks." *Id*. But, in this case, the district court held that to be an unreasonable rationale. Doc.246 at 45-46 (rejecting Florida's argument that it's joining the international consensus: the "assertion is false. And no matter how many times the defendants say it, it will still be false").

In *Eknes-Tucker*, this Court said that a State could rationally decide to put guardrails on gender-dysphoria treatments because patients might not be informed about the risks and consequences involved. 80 F.4th at 1225. More specifically, this Court said that "there is at least rational speculation that some families will not fully appreciate those risks and that some minors experiencing gender dysphoria ultimately will desist and identify with their biological sex." *Id*. But, in this case, the district court disagreed, Doc.246 at 41-43, even though, in this case, a *medical intern*—with ten hours of gender-dysphoria training—approved a plaintiff's request for a mastectomy. Tr.675:25 – 678:18 (Dekker).

14

The district court therefore erred. It should have concluded that the State's justifications for the challenged laws are rational, reasonable, and therefore constitutional. Int. Br. at 35-36.

### E.    Plaintiffs shouldn't get a mulligan on intent.

The United States seemingly recognizes that Plaintiffs fall short of making their intentional discrimination claims when it asks for a remand to the district court for further factfinding. U.S. Amicus Br. at 28-29. Remand is inappropriate, however. This case isn't like *Steele v. National Firearms Act Branch*, where this Court remanded a standing issue to the district court for further factfinding after vacating an order granting a motion to dismiss. 755 F.2d 1410, 1415 (11th Cir. 1985). Nor is this case like *League of Women Voters of Florida v. Florida Secretary of State*, where this Court remanded an issue to the district court after the district court "declined to reach" the issue at the conclusion of trial. 66 F.4th at 921-22. Here, there was a trial on the intentional-discrimination issue and the district court specifically ruled on the issue. Doc.246 at 37-38.

A remand now would simply reward Plaintiffs for their failed trial strategy. Plaintiffs pursued this case under the assumption that heightened scrutiny applies. They spent their time in discovery pursuing avenues that ultimately did not bear fruit. They chose to go forward with trial after SB254 became law rather than seeking a continuance, seeking limited but expedited discovery, or even taking a few days to submit the legislative transcripts to the district court. And they chose to argue that AHCA's intentions and actions could be imputed onto the Florida Legislature. A remand for

15

further factfinding would serve only as a bailout for Plaintiffs' poor choices and provide them with two bites at the apple. That's inappropriate.

The district court's final judgment should rise or fall on the facts introduced at trial and the legal arguments available to the parties. The facts and the legal arguments make this much clear: *Eknes-Tucker* defeats Plaintiffs' sex-based and transgender-based equal-protection claims. Although they assert an intentional-discrimination claim against Rule 59G-1.050(7) and SB254, Plaintiffs submitted no *Arlington Heights* evidence before the district court against SB254. Plaintiffs' sex-based and transgender-based equal-protection claims, as well as their intentional-discrimination claim, therefore fail. They can't present new *Arlington Heights* evidence post-trial and post-final judgment and engage in an *Arlington Heights* analysis dependent on that new evidence on appeal.

## II.    The Affordable Care Act claim fails as well.

Plaintiffs' argument under Section 1557 of the Affordable Care Act fares no better. The argument depends on "sex" playing "an unmistakable and impermissible role in the decision to deny Medicaid coverage." Ans. Br. at 52; *see also* U.S. Amicus Br. at 26. As the State explains above and in its initial brief, that just isn't the case. Florida's laws apply equally to biological males and biological females, and therefore the laws cannot and do not discriminate based on sex. Int. Br. at 36; *Eknes-Tucker*, 80 F.4th at 1227-28. Both males and females are barred from receiving puberty blockers, and both sexes are barred from receiving cross-sex hormones.

In addition, this Court held in *Adams* that an assessment of sex-based discrimination depends on biological sex, not gender identity. 57 F.4th at 807-11. Sex discrimination under Title IX also does not sweep in transgender status. *Id.*

Again, in this instance, the critical distinction turns not on sex or transgender status. It's the medical diagnosis that matters. The rule and statute are triggered *only* when someone's been diagnosed with gender dysphoria.

## III.   The Medicaid Act defers to the State's choices.

For the Medicaid Act claim, the United States gets it right when it says that *Rush v. Parham*, 625 F.2d 1150 (5th Cir. 1980), "provides the correct framework for both Medicaid claims here"—the EPSDT and comparability claims—"because the core issue is whether Florida reasonably determined that the care at issue is experimental for transgender people of all ages." U.S. Amicus Br. at 16 n.6. The State's determination—that puberty blockers and cross-sex hormones are experimental and aren't medically necessary to treat gender dysphoria—is reasonable. Such treatments are supported by unreliable, low-quality evidence from biased organizations, and other jurisdictions are moving away from these treatments. Plaintiffs may disagree with the extent of the medical debate over these treatments, but they must concede that there is a debate. The State therefore can reasonably pick a side in that debate and take the steps it believes are appropriate. *See Gibson v. Collier*, 920 F.3d 212, 221 (5th Cir. 2019) ("[T]he WPATH Standards of Care reflect not consensus, but merely one side in a sharply contested

17

medical debate over sex reassignment surgery."); *Kosilek v. Spencer*, 774 F.3d 63, 90 (1st Cir. 2014) (en banc).

To get around this position, Plaintiffs take several leaps of logic. Although this Court has already held that gender-dysphoria regulations are reasonable under rational-basis review, Plaintiffs argue that such regulations are somehow unreasonable under *Rush*. Ans. Br. at 43 n.26. This makes no sense. Especially so when Plaintiffs' yardstick for reasonableness is WPATH's standards of care and the Endocrine Society's guidelines. Neither the Fourteenth Amendment, nor *Rush* and the Medicaid Act outsources medical policymaking away from the State and to private organizations. *Cf.* U.S. Amicus Br. at 15 (arguing that "while Congress 'could have conferred the "final arbiter" role to the state, it did not'").

Plaintiffs then argue that, for comparability purposes, States must cover drugs when they are prescribed for a "medically accepted indication," and medically accepted indications are supported by at least one compendium referenced in the Medicaid Act. Ans. Br. 57-59. A listed compendium is DRUGDEX, say Plaintiffs, and DRUGDEX lists cross-sex hormones as treatment options for gender dysphoria. Ans. Br. at 57-59.

This argument ignores other provisions of the Medicaid Act and the opportunity that the State has to exclude treatments. More specifically, § 1396r-8 of the Act allows the State to "exclude[]" or "otherwise restrict[]" drugs that the State determines are "used for cosmetic purposes." 42 U.S.C. § 1396r-8(d)(1)(B)(ii) & (d)(2)(C). The State has determined that puberty blockers and cross-sex hormones, when used to treat gender

18

dysphoria, are for cosmetic purposes—they don't work to resolve the psychiatric diagnosis at issue. DX6 at 39.

The testimony of Dr. Antommaria, Plaintiffs' expert, supports the reasonableness of the State's § 1396r-8 determination. He testified that for treatments backed by low-quality or very-low-quality evidence, there's limited or little confidence that the treatments will produce an intended result. Tr.346:4-14, 396:21 – 397:10. Because such evidence undergirds puberty blockers and cross-sex hormones as gender-dysphoria treatments, there's limited or little confidence that these treatments will alleviate individuals' gender dysphoria. What's left are merely cosmetic changes in patients— more muscles, hair growth, feminized appearance, as examples. Plaintiffs may disagree with the State's determination under § 1396r-8, but it is reasonable. DX6 at 39.

In addition, Plaintiffs can't use 42 U.S.C. § 1983 to challenge the determination. That's because § 1396r-8 doesn't contain "rights-creating" language. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002). The relevant statutory text doesn't even include the words "right" or "rights" at all. *See Health & Hosp. Corp. v. Talevski*, 143 S. Ct. 1444, 1457 (2023). Instead, § 1396r-8 takes more of an aggregate focus on drug regulations. *Gonzaga*, 536 U.S. at 288.

Ultimately, it's the Secretary of Health and Human Services who acts to ensure Medicaid Act compliance: if State plans fall short of Medicaid's requirements after accepting funds, 42 U.S.C. § 1396a, then the HHS Secretary "in his discretion" can "limit payments" to unaffected categories of a Medicaid plan until he is "satisfied" that the

19

State has come back into compliance, 42 U.S.C. § 1396c. Notably, HHS has taken no action to defund the State's Medicaid program based on the conduct at issue here. And § 1396r-8 doesn't suggest that Plaintiffs can step into this void. In fact, the exhibit that Plaintiffs reference in this discussion, PX63, comes from the federal government and reminds States to comply with the Medicaid Act.

## IV.    Plaintiffs' amicus briefs don't move the needle.

Finally, the amicus briefs in support of Plaintiffs change nothing. The brief from States like California, which supports Plaintiffs, considered together with the brief submitted from States like Alabama, which supports Florida, shows that the underlying dispute in this case is a medical-policy dispute. There are two sides to it. As Chief Judge Sutton recognized, "elected representatives" should make the "precise cost-benefit decisions" on this issue, and both sides' decisions shouldn't "trigger any reasons for skeptical review." *L.W. v. Skrmetti*, 73 F.4th 408, 421-22 (6th Cir. 2023). Plaintiffs here, however, seek to shut down one side of that dispute through litigation. That's not right: this issue should be resolved in State legislatures and within State medical agencies, not federal courtrooms.

The TransSocial amicus brief provides this Court with unauthenticated, extra-record, hearsay evidence about purported actions by policymakers. The evidence is unpersuasive, given its cherrypicked nature and its failure to identify any case declaring any legislative bills to have been motivated by intentional discrimination. Like Plaintiffs,

TransSocial can't point to (purported) parts of the record without submitting the full record for review.

The briefs from Hussein Abdul-Latif, the Trevor Project, Elliot Page, the Florida Policy Institute, and Biomedical Ethics try to supplement the record with (hearsay) medical studies and reports. The Hussein Abdul-Latif amicus brief, in particular, goes so far as to provide this Court with effectively a supplemental appendix, listing "twenty studies finding benefits of transitioning medications in transgender patients." Abdul-Latif Amicus Br. at e-page 52-54. Little good it does them. Take any study in the list—*Psychological Support, Puberty Suppression, and Psychosocial Functioning in Adolescents with Gender Dysphoria*, for example. That study admitted that "there are limited longitudinal studies on puberty suppression outcome in GD [gender dysphoria]. Also, studies on the effects of psychological support on its own on GD adolescents' well-being have not been reported." 2015 J. Sex. Med. 2206 (Nov. 9, 2015). The State agrees.

Finally, the amicus brief from the American Academy of Pediatrics, WPATH, the Endocrine Society, and others is particularly ironic, because the State served them with discovery in this case, and the organizations fought that discovery all the way to the D.C. Circuit Court of Appeals. *In re Subpoenas Served on AAP*, 23-mc-00004 (D.D.C. 2023); 23-7025 (D.C. Cir. 2023). These organizations provide but one perspective—one that's increasingly at odds with the conclusions reached overseas and in the various States now grappling with the issue.

In short, none of the briefs assist Plaintiffs.

## CONCLUSION

For these reasons, this Court should reverse the district court's final judgment. Plaintiffs can't prove discriminatory intent. They can't overcome the rational-basis standard. Their Affordable Care Act claim fails. Their Medicaid Act claims fail, too, because the State's choices are reasonable.

Dated: January 18, 2024

Respectfully Submitted,

*/s/ Mohammad O. Jazil*
Mohammad O. Jazil
Gary Perko
Joshua E. Pratt
Michael Beato
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, Florida 32301
Phone: (850) 270-5938
Facsimile: (850) 741-1023
mjazil@holtzmanvogel.com
gperko@holtzmanvogel.com
jpratt@holtzmanvogel.com
mbeato@holtzmanvogel.com
*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief contains 5,529 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it's prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

Dated: January 18, 2024                    */s/ Mohammad O. Jazil*
                                            Mohammad O. Jazil

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed using this Court's CM/ECF, which will automatically serve a copy to all counsel of record.

Dated: January 18, 2024                    */s/ Mohammad O. Jazil*
                                            Mohammad O. Jazil