No. 23-12155

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

*August Dekker et al.*,
Plaintiffs-Appellees,

v.

*Secretary, Florida Agency for Health Care Administration et al.*,
Defendants-Appellants.

U.S. District Court for the Northern District of Florida, No. 4:22-cv-325
(Hinkle, J.)

## DEFENDANTS-APPELLANTS' SUPPLEMENTAL BRIEF

Mohammad O. Jazil
Michael Beato
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 270-5938
*Counsel for Defendants-Appellants*

*August Dekker et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

# CERTIFICATE OF INTERESTED PERSONS AND
# CORPORATE DISCLOSURE STATEMENT

Under Rule 26.1 and Circuit Rule 26.1, Defendants-Appellants certify that the certificates in their initial and reply briefs are complete.

Dated: November 6, 2024

/s/ Mohammad O. Jazil
Counsel for Defendants-Appellants

## TABLE OF CONTENTS

Table of Contents ........................................................................................................i

Table of Authorities ..................................................................................................ii

Argument ...................................................................................................................1

Certificate of Compliance ........................................................................................6

Certificate of Service ................................................................................................6

# TABLE OF AUTHORITIES

**Cases**

*Adams v. School Board of St. Johns County*,
  57 F.4th 791 (11th Cir. 2022) (en banc) ...................................................................... 4

*Arlington Heights v. Metropolitan Housing Development Corp.*,
  429 U.S. 252 (1977) ........................................................................................... 2

*Dobbs v. Jackson Women's Health Org.*,
  597 U.S. 215 (2022) ........................................................................................ 3-4

*Eknes-Tucker v. Governor, of the State of Alabama*,
  80 F.4th 1205 (11th Cir. 2023) ............................................................................. 4

*Estrada v. Becker*,
  917 F.3d 1298 (11th Cir. 2019) ............................................................................ 2

*Geduldig v. Aiello*,
  417 U.S. 484 (1974) ........................................................................................ 3-4

*Massachusetts Board of Retirement v. Murgia*,
  427 U.S. 307 (1976) ........................................................................................... 2

*Ondo v. City of Cleveland*,
  795 F.3d 597 (6th Cir. 2015) ................................................................................ 4

*Personnel Administrator of Massachusetts v. Feeney*,
  442 U.S. 256 (1979) ................................................................................... *passim*

*Tigner v. Texas*,
  310 U.S. 141 (1940) ........................................................................................... 1

*Washington v. Davis*,
  426 U.S. 229 (1976) ................................................................................... *passim*

*Williamson v. Lee Optical of Oklahoma, Inc.*,
  348 U.S. 483 (1955) ........................................................................................... 2

**ARGUMENT**

**I.** This Court asked whether the invidious-discrimination analysis associated with *Washington v. Davis*, 426 U.S. 229 (1976), and *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256 (1979), applies *only* to suspect and quasi-suspect classes. It does. The "Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147 (1940). The government can make distinctions. Some distinctions are subject to greater judicial skepticism, namely those that separate people into classes based on some suspect characteristic (like race) or quasi-suspect characteristic (like sex). A law is invidious when it makes a suspect or quasi-suspect classification, and the government must satisfy heightened scrutiny to justify that law. Where a law is neutral on its face (like Test 21 in *Davis* or the veteran-preference statute in *Feeney*) the inquiry is more searching. Heightened scrutiny applies *only* where the facially neutral law has a discriminatory purpose that targets a suspect or quasi-suspect class *and* a discriminatory impact on that suspect or quasi-suspect class. *See Feeney*, 442 U.S. at 273-79; *Davis*, 426 U.S. at 239-52.

Put more simply, the *Davis-Feeney* analysis focuses on whether suspect or quasi-suspect classes are the true targets of an otherwise facially neutral law. *See Feeney*, 442 U.S. at 260 (describing the holding in *Davis*). If they are, then the government is presumed to have engaged in invidious discrimination and must satisfy some level of heightened scrutiny to justify its actions. Without an underlying suspect or a quasi-suspect classification, however, the *Davis-Feeney* analysis doesn't apply.

1

**II.** Limiting the *Davis-Feeney* analysis to suspect and quasi-suspect classifications makes sense. Only "[c]ertain classifications" "in themselves supply a reason to infer antipathy," such that, "regardless of purported motivation," the classification "is presumptively invalid and can be upheld only upon an extraordinary justification." *Feeney*, 442 U.S. at 272. Those certain classifications usually turn on an immutable characteristic, something that an individual can't change and something that the government shouldn't normally consider. "Race is the paradigm." *Id.*

Most other classifications withstand constitutional scrutiny so long as they are "rationally based," regardless of the "uneven effects upon particular groups within a class." *Id.* So, for example, a rational reason is all that's needed for laws that require elected judges to retire at a certain age, allow universities to offer lower tuition for in-state students, or prohibit opticians from providing certain services. Nothing more. *See Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312-14 (1976); *Estrada v. Becker*, 917 F.3d 1298, 1309-10 (11th Cir. 2019); *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955).

But say the retirement age for judges disproportionately affects black jurists or women jurists *and* the factors in *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), point to discriminatory intent against the suspect class or quasi-suspect class being the true purpose behind the laws. Then—and only then—would heightened scrutiny apply. That's because the *Davis-Feeney* framework allows us to determine whether the law was passed "because of," not "in spite of," its effects on black and women jurists, thereby triggering greater scrutiny. *Feeney*, 442 U.S. at 279.

2

Without an underlying suspect or quasi-suspect class, however, the framework falls apart. Say that a thorough review of the legislative record for the judge-related statute reveals only that the law was driven by a desire to force the retirement of judges from rural counties. Suppose further that the record shows that all of the affected judges lived in rural counties. Despite all this, rational basis would still apply. That's because classifications based on where someone lives aren't invidious in the same way as those based on race or sex; residence isn't a suspect or quasi-suspect classification. *Id.*

The *Davis-Feeney* line of cases drive this point home. In *Geduldig v. Aiello*, 417 U.S. 484 (1974), which dealt with a state insurance restriction concerning pregnancy, the Supreme Court raised the possibility of a *Davis-Feeney* challenge to the insurance program, based on sex. The Court said:

> Absent a showing that distinctions involving pregnancy are *mere pretexts* designed to effect an invidious discrimination *against the members of one sex or the other*, lawmakers are constitutionally free to include or exclude pregnancy from the coverage of legislation such as this on any reasonable basis, just as with respect to any other physical condition.

*Id.* at 497 n.20 (emphases added). The same was true in *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022), where the Supreme Court again raised the possibility of a *Davis-Feeney* challenge to an abortion regulation, if it was a pretext to harm a protected classification, namely sex:

> The regulation of a medical procedure that *only one sex* can undergo does not trigger heightened constitutional scrutiny unless the regulation is a "mere pretex[t] designed to effect an invidious discrimination *against members of one sex or the other*." *Geduldig v. Aiello*, 417 U. S. 484, 496, n. 20, 94 S. Ct. 2485, 41 L. Ed. 2d 256 (1974).

3

*Id.* at 236-37 (emphases added).

The language from *Geduldig* and *Dobbs*, therefore, can't be used as launching points for *any* group to raise *any Davis-Feeney* invidious-discrimination claim against *any* law. The analysis is limited to suspect and quasi-suspect classes.

**III.** To be sure, no suspect or quasi-suspect classifications are at issue in this appeal. Here, the underlying laws turn on a psychiatric diagnosis of gender dysphoria. Making distinctions based on medical diagnoses triggers rational-basis review, even where "only one sex" is affected, or, in this case, only transgender identity is affected. *Dobbs*, 597 U.S. at 236; *see also Geduldig*, 417 U.S. at 496 n. 20 (same).

Regardless, transgender individuals aren't a suspect class. "The Supreme Court has not recognized any new constitutionally protected classes in over four decades, and instead has repeatedly declined to do so." *Ondo v. City of Cleveland*, 795 F.3d 597, 609 (6th Cir. 2015) (collecting cases). This Court has twice expressed "grave doubt" that transgender individuals qualify as a suspect, or even a quasi-suspect, class. *Eknes-Tucker v. Governor, of the State of Ala.*, 80 F.4th 1205, 1230 (11th Cir. 2023) (quoting *Adams v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 803 n.5 (11th Cir. 2022) (en banc)). And the State of Florida has explained why this shouldn't be the case to recognize a new suspect class. *See* Initial Br. at 43-47.

All that's left is the application of the rational-basis standard of review. *See Eknes-Tucker*, 80 F.4th at 1227-31.

Dated: November 6, 2024               Respectfully Submitted,

/s/ Mohammad O. Jazil
Mohammad O. Jazil
Michael Beato
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
Phone: (850) 270-5938
Facsimile: (850) 741-1023
mjazil@holtzmanvogel.com
mbeato@holtzmanvogel.com
*Counsel for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

This brief is under ten pages and contains 1,081 words. It also complies with Rule 32(a)(5)-(6) because it's prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

Dated: November 6, 2024                /s/ Mohammad O. Jazil
                                       Mohammad O. Jazil

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed using this Court's CM/ECF, which will automatically serve a copy to all counsel of record.

Dated: November 6, 2024                /s/ Mohammad O. Jazil
                                       Mohammad O. Jazil