No. 23-12155

# In the United States Court of Appeals
# for the Eleventh Circuit

AUGUST DEKKER, BRIT ROTHSTEIN, SUSAN DOE, by and through her parents and next friends, JANE DOE and JOHN DOE, and K.F., by and through his parent and next friend, JADE LADUE,

*Plaintiffs-Appellees*,

v.

SECRETARY, FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION, *et al.*,

*Defendants-Appellants*.

On Appeal from the U.S. District Court for the Northern District of Florida,
No. 4:22-cv-00325, Honorable Robert L. Hinkle, District Judge

## PLAINTIFFS-APPELLEES' SUPPLEMENTAL BRIEF

Jennifer Altman
Shani Rivaux
PILLSBURY WINTHROP
SHAW PITTMAN, LLP
600 Brickell Avenue,
  Suite 3100
Miami, FL 33131
(786) 913-4900

Catherine McKee
NATIONAL HEALTH LAW
PROGRAM
1512 E. Franklin Street,
  Suite 110
Chapel Hill, NC 27514
(919) 968-6308

Simone Chriss
Chelsea Dunn
SOUTHERN LEGAL
COUNSEL, INC.
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890

Abigail Coursolle
NATIONAL HEALTH LAW
PROGRAM
3701 Wilshire Boulevard
  Suite 315
Los Angeles, CA 90010
(310) 736-1652

Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585

Katy DeBriere
FLORIDA HEALTH JUSTICE
PROJECT
3900 Richmond Street
Jacksonville, FL 32205
(352) 278-6059

*Counsel for Plaintiffs-Appellees*
(Additional counsel listed on inside cover.)

William C. Miller
Gary J. Shaw
PILLSBURY WINTHROP
SHAW PITTMAN, LLP
1200 17th Street, NW
Washington, DC 20036
(202) 663-8000

Karen L. Loewy
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
111 K Street, NE, 7th Floor
Washington, DC 20002
(202) 804-6245

*Counsel for Plaintiffs-Appellees*

*August Dekker, et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Per Rule 26.1 and Circuit Rule 26.1, Plaintiffs-Appellees certify that the following have an interest in the outcome of this case:

1. Academic Pediatric Association, *Amicus*

2. Ahmed, Aziza, *Amicus*

3. Alstott, Anne, *Amicus*

4. Altman, Jennifer, *Counsel for Plaintiffs*

5. American Academy of Child and Adolescent Psychiatry, *Amicus*

6. American Academy of Family Physicians, *Amicus*

7. American Academy of Nursing, *Amicus*

8. American Academy of Pediatrics, *Amicus*

9. American Association of Physicians for Human Rights, Inc. d/b/a GLMA: Health Professionals Advancing LGBTQ+ Equality ("GLMA"), *Amicus*

10. American College of Obstetricians and Gynecologists, *Amicus*

11. American College of Osteopathic Pediatricians, *Amicus*

12. American College of Pediatricians, *Amicus*

13. American College of Physicians, *Amicus*

14. American Medical Association, *Amicus*

15. American Pediatric Society, *Amicus*

16. American Psychiatric Association, *Amicus*

C-1

*August Dekker, et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

17.    Andersen, Alison L., *Counsel for Amicus*

18.    Anderson, Barrett, *Counsel for Amicus*

19.    Antommaria, Armand, *Witness*

20.    Association of Medical School Pediatric Department Chairs, Inc., *Amicus*

21.    Association of American Medical Colleges, *Amicus*

22.    Bagenstos, Samuel R., *Counsel for Amicus United States*

23.    Bailey, Andrew, *Counsel for Amicus*

24.    Baldwin, Anna M., *Counsel for Amicus United States*

25.    Baker, Kellan, *Witness*

26.    Barday, Shireen A., *Counsel for Amicus*

27.    Bardos, Andy, *Counsel for Amicus*

28.    Barnes, Brian, *Counsel for Amicus*

29.    Beato, Michael, *Counsel for Defendants*

30.    Biggs, Michael, *Witness*

31.    Biomedical Ethics and Public Health Scholars, *Amicus*

32.    Bird, Brenna, *Counsel for Amicus*

33.    Blickenstaff, David C., *Counsel for Amicus*

34.    Blum, Rye, *Amicus*

35.    Boccuzzi, Charmine, Jr., *Counsel for Amicus*

36.    Boergers, Kathleen, *Counsel for Amicus*

*August Dekker, et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

37.    Boulware, Susan, *Amicus*

38.    Bowdre, Alexander Barrett, *Counsel for Amicus*

39.    Boylan, Jennifer Finney, *Amicus*

40.    Brady-Davis, Precious, *Amicus*

41.    Brackett, John Matthew, *Witness*

42.    Bridges, Khiara M., *Amicus*

43.    Bronni, Nicholas J., *Counsel for Amicus*

44.    Brovold, Wen, *Amicus*

45.    Brown, Louis, Jr., *Amicus*

46.    Bucci-Mooney, Aryn, *Amicus*

47.    Burleigh, Clifton Francis, Jr., *Amicus*

48.    Cameron, Daniel, *Counsel for Amicus*

49.    Cantor, James, *Witness*

50.    Caraballo, Alejandra, *Amicus*

51.    Carr, Chris, *Counsel for Amicus*

52.    Charles, Carl, *Former counsel for Plaintiffs*

53.    Chavez, Jennifer, *Amicus*

54.    Chipman, Lena, *Amicus*

55.    Chriss, Simone, *Counsel for Plaintiffs*

56.    Chuang, Ming, *Counsel for Amicus*

57.    Clark, Destiny, *Amicus*

*August Dekker, et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

58. Clark, Kaila, *Counsel for Amicus*

59. Clark, Naomi, *Amicus*

60. Clarke, Kristen, *Counsel for Amicus United States*

61. Cohen, David S., *Amicus*

62. Cohen, I. Glenn, *Amicus*

63. Combs, Carla, *Amicus*

64. Combs, Ryan, *Amicus*

65. Commonwealth of Kentucky, *Amicus*

66. Commonwealth of Massachusetts, *Amicus*

67. Commonwealth of Pennsylvania, *Amicus*

68. Commonwealth of Virginia, *Amicus*

69. Cory, Alyssa L., *Counsel for Amicus*

70. Coursolle, Abigail, *Counsel for Plaintiffs*

71. Cuevas, Gibran, *Amicus*

72. Dalton, Ann, *Witness*

73. Dandeneau, Debra A., *Counsel for Amicus*

74. Davies, Mark C., *Counsel for Amicus*

75. DeBriere, Katherine, *Counsel for Plaintiffs*

76. Dekker, August, *Plaintiff*

77. Ding, Michael, *Counsel for Witness/Third-Party Miriam Grossman*

78. District of Columbia, *Amicus*

C-4

*August Dekker, et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

79.   Do No Harm, *Amicus*

80.   Doe, Jane, *Plaintiff*

81.   Doe, John, *Plaintiff*

82.   Doe, Susan, *Plaintiff*

83.   Donovan, Kevin, *Witness*

84.   Drucker, Zachary, *Amicus*

85.   Dunn, Chelsea, *Counsel for Plaintiffs*

86.   Edmiston, E. Kale, *Witness*

87.   Endocrine Society, *Amicus*

88.   English, Jeffrey, *Witness*

89.   Einstein, Jack, *Amicus*

90.   Ernst, Rhys, *Amicus*

91.   Ethics and Public Policy Center, *Amicus*

92.   Figlio, Erik, *Counsel for Amicus*

93.   Fitch, Lynn, *Counsel for Amicus*

94.   Florida Agency for Health Care Administration, *Defendant*

95.   Florida Chapter of the American Academy of Pediatrics, *Amicus*

96.   Florida Policy Institute, *Amicus*

97.   Florida Voices for Health, *Amicus*

98.   Galarneau, Charlene, *Amicus*

99.   Gates, Jackson, *Amicus*

*August Dekker, et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

100. Gentili, Cecilia, *Amicus*

101. Gibson, Benjamin J., *Counsel for Amicus*

102. Gonzalez-Pagan, Omar, *Counsel for Plaintiffs*

103. Gorton, Nick, *Amicus*

104. Green, Jamison, *Amicus*

105. Griffin, Steven J., *Counsel for Amicus*

106. Griffin, Tim, *Counsel for Amicus*

107. Grossman, Joanna, *Amicus*

108. Grossman, Miriam, *Witness/Third-Party Discovery Producer*

109. Hall, Oliver, *Amicus*

110. Halley, Ted, *Amicus*

111. Hartnett, Kathleen, *Counsel for Amicus*

112. Hasson, Mary Rice, *Counsel for Amicus*

113. Helstrom, Zoe, *Counsel for Amicus*

114. Herzig, Gwendolyn, *Amicus*

115. Heyer, Walt, *Amicus*

116. Hilgers, Michael T., *Counsel for Amicus*

117. Hinkle, Robert, *U.S. District Court Judge*

118. Holloman, Ray, *Amicus*

119. Hruz, Paul William, *Witness*

120. Hussein, Abdul-Latif, *Amicus*

*August Dekker, et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

121.  Hutton, Kim, *Witness*

122.  Ikemoto, Lisa S., *Amicus*

123.  Ittelson, Alesdair H., *Counsel for Amicus United States*

124.  Isasi, William, *Counsel for Amicus*

125.  Jacobs, Dylan L., *Counsel for Amicus*

126.  Janssen, Aron Christopher, *Witness*

127.  Jazil, Mohammad, *Counsel for Defendants*

128.  Jensen, Abigal, *Amicus*

129.  Katz, Harvey, *Amicus*

130.  K.F., *Plaintiff*

131.  Kaliebe, Kristopher Edward, *Witness*

132.  Kamody, Rebecca, *Amicus*

133.  Kang, Katelyn, *Counsel for Amicus*

134.  Karasic, Dan, *Witness*

135.  Keenan, Harper, *Amicus*

136.  Kiefel, Camille, *Witness*

137.  Kline, Robert, *Counsel for Amicus*

138.  Kniffin, Eric Nieuwenhuis, *Counsel for Amicus*

139.  Knudsen, Austin, *Counsel for Amicus*

140.  Kobach, Kris W., *Counsel For Amicus*

141.  Krasovec, Joseph, *Counsel for Amicus*

*August Dekker, et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

142.  Kuper, Laura, *Amicus*

143.  Labrador, Raúl R., *Counsel for Amicus*

144.  LaCheen, Cary, *Counsel for Amicus United States*

145.  LaCour, Edmund G. Jr., *Counsel for Amicus*

146.  Lange, Anna, *Amicus*

147.  Lannin, Cortlin, *Counsel for Amicus*

148.  Laidlaw, Michael, *Witness*

149.  Lappert, Patrick, *Witness*

150.  Ladue, Jade, *Plaintiff*

151.  Lawyer, Adrian, *Amicus*

152.  Levine, Stephen, *Witness*

153.  Little, Joseph, *Counsel for Plaintiffs*

154.  Loewy, Karen L., *Counsel for Plaintiffs*

155.  Maines, Nicole, *Amicus*

156.  Major, Beck Witt, *Amicus*

157.  Major, Miss, *Amicus*

158.  Mananzala, Rickke, *Amicus*

159.  Manian, Maya, *Amicus*

160.  Manley, Dion, *Amicus*

161.  Marino, Anya, *Amicus*

162.  Marshall, Steve, *Counsel for Amicus*

C-8

*August Dekker, et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

163. Marstiller, Simone, *Former Defendant*

164. Mauler, Daniel, *Counsel for Amicus*

165. McBride, Sarah, *Amicus*

166. McCotter, R. Trent, *Counsel for Amicus*

167. McGrath, Jessie Lee Ann, *Amicus*

168. McKee, Catherine, *Counsel for Plaintiffs*

169. McNamara, Meredithe, *Amicus*

170. Meeker, Ei, *Amicus*

171. Meszaros, Marie Connelly, *Amicus*

172. Miller, William, *Counsel for Plaintiffs*

173. Miyares, Jason, *Counsel for Amicus*

174. Mondry, Emily, *Counsel for Amicus*

175. Morrisey, Patrick, *Counsel for Amicus*

176. Morrison, Rachel N., *Amicus*

177. Mosier, Chris, *Amicus*

178. Nangia, Geeta, *Witness*

179. National Association of Pediatric Nurse Practitioners, *Amicus*

180. Neumeier, Shain, *Amicus*

181. Nordby, Daniel E., *Counsel for Witness/Third-Party Miriam Grossman* and *Counsel for Amicus*

182. Norohna, Maya, *Amicus*

C-9

*August Dekker, et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

183.  North Central Florida Council of Child and Adolescent Psychiatry, *Amicus*

184.  Oberman, Michelle, *Amicus*

185.  Olezeski, Christy, *Amicus*

186.  Olson-Kennedy, Johanna, *Witness*

187.  Oppenheimer, Rebecca, *Amicus*

188.  Page, Elliot, *Amicus*

189.  Paxton, Ken, *Counsel for Amicus*

190.  Pediatric Endocrine Society, *Amicus*

191.  Perko, Gary, *Counsel for Defendants*

192.  Peters, Torrey, *Amicus*

193.  Polston, Ricky L., *Counsel for Amicus*

194.  Pratt, Christine, *Amicus*

195.  Pratt, Joshua E., *Counsel for Defendants*

196.  Purvis, Dara, *Amicus*

197.  Ramer, John, *Counsel for Amicus*

198.  Rebouché, Rachel, *Amicus*

199.  Reilly, Jacob, *Amicus*

200.  Reinhardt, Elizabeth, *Counsel for Amicus*

201.  Reyes, Sean, *Counsel for Amicus*

202.  Rice-Cranford, Jeani, *Amicus*

*August Dekker, et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

203.   Richards, Jay W., *Amicus*

204.   Richmond, Marisa, *Amicus*

205.   Richmond, Stephen M., *Counsel for Amicus United States*

206.   Rivaux, Shani, *Counsel for Plaintiffs*

207.   Robin-Vergeer, Bonnie I., *Counsel for Amicus United States*

208.   Rokita, Theodore E., *Counsel for Amicus*

209.   Romano, Nick, *Amicus*

210.   Rothstein, Brit, *Plaintiff*

211.   Runner, Cat, *Amicus*

212.   Samuels, Valerie, *Counsel for Amicus*

213.   Sarmiento, La, *Amicus*

214.   Schechter, Loren, *Witness*

215.   Scott, Sophie, *Witness*

216.   Shanley, Devon, *Amicus*

217.   Silbey, Jessica, *Amicus*

218.   Simmons, Ames, *Amicus*

219.   Severino, Roger, *Amicus*

220.   Shaw, Gary, *Counsel for Plaintiffs*

221.   Schuham, Aaron D., *Counsel for Amicus United States*

222.   Sheeran, Andrew, *General Counsel for Defendant AHCA*

223.   Shumer, Daniel, *Witness*

*August Dekker, et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

224.  Skolnik, Avy, *Amicus*

225.  Skrmetti, Jonathan, *Counsel for Amicus*

226.  Societies for Pediatric Urology, *Amicus*

227.  Society for Adolescent Health and Medicine, *Amicus*

228.  Society for Pediatric Research, *Amicus*

229.  Society of Pediatric Nurses, *Amicus*

230.  Society of Pediatric Urology, *Amicus*

231.  Soltis, Daniel, *Amicus*

232.  SPEKTRUM Health, Inc., *Amicus*

233.  State of Alabama, *Amicus*

234.  State of Arkansas, *Amicus*

235.  State of California, *Amicus*

236.  State of Colorado, *Amicus*

237.  State of Connecticut, *Amicus*

238.  State of Delaware, *Amicus*

239.  State of Georgia, *Amicus*

240.  State of Hawaii, *Amicus*

241.  State of Idaho, *Amicus*

242.  State of Illinois, *Amicus*

243.  State of Indiana, *Amicus*

244.  State of Iowa, *Amicus*

*August Dekker, et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

245.   State of Kansas, *Amicus*

246.   State of Louisiana, *Amicus*

247.   State of Maine, *Amicus*

248.   State of Maryland, *Amicus*

249.   State of Michigan, *Amicus*

250.   State of Minnesota, *Amicus*

251.   State of Mississippi, *Amicus*

252.   State of Missouri, *Amicus*

253.   State of Montana, *Amicus*

254.   State of Nebraska, *Amicus*

255.   State of Nevada, *Amicus*

256.   State of New Jersey, *Amicus*

257.   State of New York, *Amicus*

258.   State of North Dakota, *Amicus*

259.   State of Oregon, *Amicus*

260.   State of Rhode Island, *Amicus*

261.   State of South Carolina, *Amicus*

262.   State of Tennessee, *Amicus*

263.   State of Texas, *Amicus*

264.   State of Utah, *Amicus*

265.   State of Vermont, *Amicus*

*August Dekker, et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

266.  State of Washington, *Amicus*

267.  State of West Virginia, *Amicus*

268.  SunServe, *Amicus*

269.  Sutherlin, Trent, *Amicus*

270.  Szilagyi, Nathalie, *Amicus*

271.  The Trevor Project, Inc., *Amicus*

272.  Thompson, David, *Counsel for Amicus*

273.  Transgender Health Education Network, *Amicus*

274.  Transinclusive Group, *Amicus*

275.  Transsocial, *Amicus*

276.  Ulrich, Michael R., *Amicus*

277.  United States, *Amicus*

278.  Veroff, Julie, *Counsel for Amicus*

279.  Veta, D. Jean, *Counsel for Amicus*

280.  Van Meter, Quentin, *Witness*

281.  Van Mol, Andre, *Witness*

282.  Vigil, Angela C., *Counsel for Amicus*

283.  Wachowski, Lilly, *Amicus*

284.  Weida, Jason, *Defendant*

285.  Weiss, Jillian, *Amicus*

286.  White, Fresh Lev, *Amicus*

*August Dekker, et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

287.  Wilson, Alan, *Counsel for Amicus*

288.  Wood, Mallory Anna, *Amicus*

289.  World Professional Association for Transgender Health, *Amicus*

290.  Zanga, Joseph, *Witness*

291.  Zhai, Jingxi, *Counsel for Amicus*

292.  Zinner, Gerda, *Amicus*

Per Circuit Rule 26.1-2, Plaintiffs-Appellees certify that the CIP contained

herein is complete.

Dated: November 6, 2024

/s/ Omar Gonzalez-Pagan
Omar Gonzalez-Pagan

*Counsel for Plaintiffs-Appellees*

## **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT .....................................................................1

TABLE OF CONTENTS..............................................................................i

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ........................................................................................1

ARGUMENT ................................................................................................2

    I.    The invidious discrimination analysis is not limited to suspect
    or quasi suspect classifications...........................................................2

    II.    Equal protection jurisprudence confirms the application of a
    heightened form of scrutiny to claims of invidious
    discrimination involving classifications not recognized as
    suspect or quasi-suspect. ....................................................................5

CONCLUSION............................................................................................10

CERTIFICATE OF COMPLIANCE.......................................................12

CERTIFICATE OF SERVICE ................................................................13

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bishop v. Smith*,
    760 F.3d 1070 (10th Cir. 2014) ................................................... 6, 7, 10

*Bray v. Alexandria Women's Health Clinic*,
    506 U.S. 263 (1993) .................................................................2, 7

*City of Cleburne, Tex. v. Cleburne Living Ctr.*,
    473 U.S. 432 (1985) ................................................................ 3, 5, 8

*Craig v. Boren*,
    429 U.S. 190 (1976) .................................................................7

*Doe v. Surgeon Gen.*,
    No. 24-11996, 2024 WL 4132455 (11th Cir. Aug. 26, 2024) ................................5

*Eknes-Tucker v. Governor of Alabama*,
    80 F.4th 1205 (11th Cir. 2023) ....................................................4, 5

*Elston v. Talladega County Bd. of Educ.*,
    997 F.2d 1394 (11th Cir.1993) ...................................................2

*Griffin v. Breckenridge*,
    403 U.S. 88 (1971) ...............................................................3, 4

*Hunt v. Cromartie*,
    526 U.S. 541 (1999) ..............................................................2

*Lawrence v. Texas*,
    539 U.S. 558 (2003) ..............................................................3

*Massachusetts v. U.S. Dep't of Health & Hum. Servs.*,
    682 F.3d 1 (1st Cir. 2012) ...................................................... 5, 6, 8, 10

*Massachusetts Bd. of Ret. v. Murgia*,
    427 U.S. 307 (1976) ..............................................................7

*M.L.B. v. S.L.J.*,
    519 U.S. 102 (1996) ..............................................................4

*Obergefell v. Hodges*,
576 U.S. 644 (2015) .......................................................................9, 10

*Pers. Adm'r of Massachusetts v. Feeney*,
442 U.S. 256 (1979) ...................................................................... 1, 2, 3

*Plyler v. Doe*,
457 U.S. 202 (1982) .........................................................................8, 9

*Reed v. Reed*,
404 U.S. 71 (1971) ..............................................................................7

*Romer v. Evans*,
517 U.S. 620 (1996) ..........................................................................5, 9

*Schultz v. Alabama*,
42 F.4th 1298 (11th Cir. 2022),
*cert. denied sub nom. Hester v. Gentry*, 143 S. Ct. 2610 (2023) ...........................4

*United States v. Then*,
56 F.3d 464 (2d Cir.1995) ....................................................................6

*United States v. Windsor*,
570 U.S. 744 (2013) .........................................................................9, 10

*U.S. Dep't of Agric. v. Moreno*,
413 U.S. 528 (1973) ..................................................................... 5, 7, 8, 9

*Village of Arlington Heights v. Metropolitan Housing Development Corp.*,
429 U.S. 252 (1977) .........................................................................1, 2

*Washington v. Davis*,
426 U.S. 229 (1976) ...................................................................... 1, 2, 3

*Windsor v. United States*,
699 F.3d 169 (2d Cir. 2012), *aff'd*, 570 U.S. 744 (2013)......................................6

*Young Apartments, Inc. v. Town of Jupiter*,
529 F.3d 1027 (11th Cir. 2008) .............................................................4

**RULES**

11th Cir. R. 27-1(g).............................................................................5

iii

## INTRODUCTION

The Court directed the parties to file supplemental briefs addressing whether "the invidious-discrimination analysis associated with *Washington v. Davis*, 426 U.S. 229 (1976), and *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256 (1979), apply only to 'suspect' or 'quasi-suspect' classes like race and sex, or does it apply more broadly?" The answer to the Court's question is that the invidious-discrimination analysis discussed in *Davis* and *Feeney* applies to laws involving classes beyond those recognized as "suspect" or "quasi-suspect."

In their response brief, Plaintiffs explained that the Exclusions at issue are independently subject to heightened scrutiny on the basis that they "were adopted 'because of,' not 'in spite of,' their adverse effects on transgender people's ability to live in accordance with their gender identity." Resp. Br. at 31-32 (quoting *Feeney*, 442 U.S. at 279). In doing so, Plaintiffs also examined the Exclusions utilizing the factors set forth in *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252 (1977), and later related caselaw. Resp. Br. at 33-37. Plaintiffs reiterate and incorporate those arguments. While Plaintiffs maintain that the Exclusions involve two suspect or quasi-suspect classifications, namely sex and transgender status, Resp. Br. at 19-32, the Court need not conclude that he Exclusions do so in order to apply the invidious-discrimination analysis set forth in *Davis* and *Feeney*.

The purpose of these cases and the *Arlington Heights* inquiry is to assess the motivations of a government entity to determine whether more exacting scrutiny is called for. *See Hunt v. Cromartie*, 526 U.S. 541, 546 (1999); *Elston v. Talladega County Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir.1993) ("To establish an equal protection clause violation, a plaintiff must demonstrate that a challenged action was motivated by an intent to discriminate."). Those factors apply to determine whether government action is motivated by the desire to harm a politically unpopular group, just as they apply to determine whether the actions are motivated by the desire to harm a group meriting treatment as a suspect or quasi-suspect classification. Either way, the government actions warrant less deference and more searching review.

**ARGUMENT**

## I. The invidious discrimination analysis is not limited to suspect or quasi-suspect classifications.

*Davis* stands for the simple proposition that a facially neutral law that disproportionately impacts a particular group offends the Fourteenth Amendment's Equal Protection Clause only if there is proof of discriminatory intent, i.e. invidious discrimination. *See Davis*, 426 U.S. at 241; *see also Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 330 (1993) ("We have recognized that even in constitutional cases disproportionate impact may provide powerful evidence of discrimination." (citing *Feeney*, 442 U.S. at 279, n. 25; *Arlington Heights*, 429 U.S. at 265–266; and *Davis*, 426 U.S. at 242)). The same is true of *Feeney*. 442 U.S. at

272-74.  Nothing in either case limits that principle to the presence of a suspect or quasi-suspect classification.

In addressing this question, Justice Marshall's words bear notice: "The formal label under which an equal protection claim is reviewed is less important than careful identification of the interest at stake and the extent to which society recognizes the classification as an invidious one." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 478 (1985) (Marshall, J., concurring in part and dissenting in part). Justice O'Connor expressed a similar notion two decades later: "When a law exhibits such a desire to harm a politically unpopular group, we have applied a more searching form of rational basis review to strike down such laws under the Equal Protection Clause." *Lawrence v. Texas*, 539 U.S. 558, 580 (2003) (O'Connor, J., concurring).  That is because the refusal to recognize a class as "suspect" or "quasi-suspect" "does not leave them entirely unprotected from invidious discrimination." *Cleburne*, 473 U.S. at 446.  Indeed, as the Court noted, "a bare desire to harm a politically unpopular group [is] not [a] legitimate state interest[]." *Id.* at 446–47.

*Griffin v. Breckenridge*, 403 U.S. 88 (1971)—decided prior to *Davis* and *Feeney*—is particularly instructive.  There, the Court stated that "[t]he language requiring intent to deprive of equal protection … means that there must be some racial, *or perhaps otherwise class-based*, invidiously discriminatory animus behind the conspirators' action." *Griffin*, 403 U.S. at 102 (emphasis added).  And neither

3

sex nor illegitimacy nor alienage were considered suspect or quasi-suspect classifications at the time *Griffin* was decided. A quarter century later, the Court applied these equal protection principles in *M.L.B. v. S.L.J.*, 519 U.S. 102, 125–27 (1996), to strike down a law that discriminated based on indigency, which is not a suspect or quasi-suspect class. In other words, it is the invidious character of a classification itself that has caused the Supreme Court to pause and scrutinize with more than traditional care the rationality of state discrimination, even if the classification is not suspect or quasi-suspect. Section II, *infra*.

Cases by this Court have so similarly intimated. For example, in *Schultz v. Alabama*, 42 F.4th 1298 (11th Cir. 2022), *cert. denied sub nom. Hester v. Gentry*, 143 S. Ct. 2610 (2023), this Court recognized "that heightened scrutiny for claims of wealth discrimination may be appropriate in certain contexts," notwithstanding that such classification is neither suspect nor quasi-suspect. *Id.* at 1323. And in *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1045 (11th Cir. 2008), this Court observed that "a plaintiff must satisfy the 'similarly situated' prong of [the 'class of one'] test, whether or not its discrimination claim is based on a suspect classification." *Id.* at 1045. Finally, and presciently, in *Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205 (11th Cir. 2023), after rejecting that the regulation at issue involved a suspect or quasi-suspect classification (*but see* Resp. Br. at 20, 29, 30), this Court confirmed that the regulation may still trigger heightened scrutiny if

"the regulation were a pretext for invidious discrimination." *See Eknes-Tucker*, 80 F.4th at 1229–1230.  The unifying theme is that standard Equal Protection tests apply wherever invidious discrimination is present regardless of whether the targeting of the group involves a suspect or quasi-suspect classification.[1]

## II. Equal protection jurisprudence confirms the application of a heightened form of scrutiny to claims of invidious discrimination involving classifications not recognized as suspect or quasi-suspect.

This theme comports with how the Supreme Court has examined equal protection claims not involving recognized "suspect" or "quasi-suspect" classifications.  As former First Circuit Chief Judge Boudin observed, "the Supreme Court has now several times struck down state or local enactments without invoking any suspect classification." *Massachusetts v. U.S. Dep't of Health & Hum. Servs.*, 682 F.3d 1, 10 (1st Cir. 2012) (citing *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528 (1973); *Cleburne*, 473 U.S. 432; *Romer v. Evans*, 517 U.S. 620 (1996)).  In each of these cases, as with transgender people in this case, "the protesting group was historically disadvantaged or unpopular, and the statutory justification seemed thin, unsupported or impermissible." *Id.*

---

[1]    Plaintiffs acknowledge that a panel of this Court stated recently in a non-binding, non-merits decision (*see* 11th Cir. R. 27-1(g)) that "heightened scrutiny under the Equal Protection Clause does not apply to invidious discrimination based on a non-suspect class." *Doe v. Surgeon Gen.*, No. 24-11996, 2024 WL 4132455, at *3 (11th Cir. Aug. 26, 2024).  For the reasons set forth herein, Plaintiffs respectfully disagree.

In these cases, sometimes referred to as "animus cases," "the Supreme Court took up equal-protection challenges to government action that distinguished between people on the basis of characteristics that the Court had not deemed suspect or quasi-suspect." *Bishop v. Smith*, 760 F.3d 1070, 1097–98 (10th Cir. 2014) (Holmes, J., concurring). "[S]everal courts have read the Supreme Court's recent cases in this area to suggest that rational basis review should be more demanding when there are historic patterns of disadvantage suffered by the group adversely affected by the statute." *Windsor v. United States*, 699 F.3d 169, 180 (2d Cir. 2012) (cleaned up), *aff'd*, 570 U.S. 744 (2013); *see also Massachusetts*, 682 F.3d at 10 ("Without relying on suspect classifications, Supreme Court equal protection decisions have both intensified scrutiny of purported justifications where minorities are subject to discrepant treatment and have limited the permissible justifications."); *United States v. Then*, 56 F.3d 464, 468 (2d Cir.1995) (Calabresi, J., concurring) ("Judges and commentators have noted that the usually deferential 'rational basis' test has been applied with greater rigor in some contexts, particularly those in which courts have had reason to be concerned about possible discrimination."). "[I]t it is of no moment what label is affixed to the distinctive equal-protection mode of analysis that is performed in the animus cases," what is important is that "the hallmark of animus jurisprudence is its focus on actual legislative *motive*." *Bishop*, 760 F.3d at 1099 (Holmes, J., concurring) (emphasis in original). This is akin to the invidious

6

discrimination that the Court in *Griffin* had in mind.  *Compare Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 274 (1993), *with Bishop*, 760 F.3d at 1099-1100.  In other words, the analysis applied in animus cases is a form of heightened scrutiny.  Unlike a true rational basis test, the test used in the animus cases does not permit the state to identify theoretical justifications for a discriminatory law in the face of evidence of actual animus.

Examples of when the Supreme Court has invalidated laws involving classifications other than those it recognized as suspect or quasi-suspect at the time abound.  First is *Reed v. Reed*, 404 U.S. 71 (1971), in which the Court invalidated a statute that favored men over equally qualified women to administer intestate estates, holding that "[b]y providing dissimilar treatment for men and women who are thus similarly situated, the challenged section violates the Equal Protection Clause."  *Id.* at 77.[2]  Notably, the Supreme Court did not consider sex-based classifications quasi-suspect until five years later in *Craig v. Boren*, 429 U.S. 190 (1976).

Another is *Moreno*, 413 U.S. 528, which invalidated Congress's exclusion from the food stamp program of households containing unrelated individuals while permitting participation by related households. The Court noted that the law was

---

[2]      *See Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 325 (1976) (Marshall, J., dissenting) (noting that the inquiry in *Reed* was not markedly different from one where the government "must show a reasonably substantial interest and a scheme reasonably closely tailored to achieving that interest").

7

"intended to prevent so-called 'hippies' and 'hippie communes' from participating in the food stamp program." *Id.* at 534. Notwithstanding that no suspect or quasi-suspect classification was involved, the Court "disregard[ed] purported justifications that such households were more likely to under-report income and to evade detection," and "closely scrutinized the legislation's fit—finding both that the rule disqualified many otherwise-eligible and particularly needy households, and a 'bare congressional desire to harm a politically unpopular group.'" *Massachusetts*, 682 F.3d at 10 (quoting *Moreno*, 413 U.S. at 534).

Next is *Cleburne*, 473 U.S. 432, in which the Supreme Court overturned a local ordinance as applied to the denial of a special permit for operating a group home for individuals with intellectual disabilities. The Court described the challenged ordinance as classifying based on intellectual disability and, after closely examining its purported justifications, found that all that remained were "mere negative attitudes, or fear, unsubstantiated by factors which are properly cognizable in a zoning proceeding." *Cleburne*, 473 U.S. at 448. The Court thus held the ordinance to be invalid as applied to the group home because it rested on "irrational prejudice" against people with an intellectual disability. *Id.* at 450.

Similarly, in *Plyler v. Doe*, 457 U.S. 202 (1982), which involved a challenge to a state statute that withheld funding for the education of children who were not legally admitted into the United States, the Court rejected arguments that

8

undocumented immigrants were a suspect class, which would have triggered heightened scrutiny, and instead, applied a heightened form of review that demanded that the statute "further[ ] some substantial goal of the State." *Id.* at 223–24.

In *Romer*, 517 U.S. 620, the Court struck down a provision in Colorado's constitution prohibiting regulation to protect gay people from discrimination. The Court described the challenged law as classifying based on sexual orientation, which it had yet to recognize as a suspect or quasi-suspect class. Nonetheless, the Court, which deemed the "disqualification of a class of persons from the right to seek specific protection from the law" to be "unprecedented," found that the provision was a "status-based enactment divorced from any factual context from which we could discern a relationship to legitimate state interests." *Id.* at 632–33, 635.

Sexual orientation classifications were also at issue in *United States v. Windsor*, 570 U.S. 744 (2013), striking down the federal Defense of Marriage Act's denial of federal recognition to the marriages of same-sex couples, and *Obergefell v. Hodges*, 576 U.S. 644 (2015), striking down bans on marriage for same-sex couples writ large. In each case, the Court recognized that "[t]he Constitution's guarantee of equality 'must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot' justify disparate treatment of that group." *Windsor*, 570 U.S. at 770 (quoting *Moreno*, 413 U.S. at 534–535), and noted the "long history of disapproval" of same-sex relationships and how "[t]he imposition

of this disability on gays and lesbians serves to disrespect and subordinate them,"
*Obergefell*, 576 U.S. at 675. In so holding, notwithstanding the lack of a recognized
suspect or quasi-suspect class, the Court struck down laws that "single[] out a class
of persons" and "impose[] a disability on the class." *Windsor*, 570 U.S. at 775.

"These [] decisions did not adopt some new category of suspect classification
or employ rational basis review in its minimalist form; instead, the Court rested on
the case-specific nature of the discrepant treatment, the burden imposed, and the
infirmities of the justifications offered," rather than being "dependent entirely on
abstract categorizations." *Massachusetts*, 682 F.3d at 11. And "[r]ather than relying
upon the various post-hoc rationalizations that could conceivably have justified the
laws, the Court focused on the motivations that actually lay behind the laws."
*Bishop*, 760 F.3d at 1099 (Holmes, J., concurring).

## CONCLUSION

The Exclusions are subject to heightened scrutiny because they classify based
on sex and transgender status. Resp. Br. at 18-32. But even if the Court considered
the Exclusions not to involve a suspect or quasi-suspect classification, *Davis* and
*Feeney* nonetheless require more exacting scrutiny of the Exclusions because they
purposely target transgender people.

Dated this 6th day of November 2024.

Respectfully submitted,

Simone Chriss
Chelsea Dunn
SOUTHERN LEGAL COUNSEL, INC.
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890
simone.chriss@southernlegal.org
chelsea.dunn@southernlegal.org

Katy DeBriere
FLORIDA HEALTH JUSTICE PROJECT
3900 Richmond Street
Jacksonville, FL 32205
(352) 278-6059
debriere@floridahealthjustice.org

Abigail Coursolle
NATIONAL HEALTH LAW PROGRAM
3701 Wilshire Boulevard, Suite 315
Los Angeles, CA 90010
(310) 736-1652
coursolle@healthlaw.org

Catherine McKee
NATIONAL HEALTH LAW PROGRAM
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27514
(919) 968-6308
mckee@healthlaw.org

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

Karen L. Loewy
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
111 K Street, NE, 7th Floor
Washington, DC 20002
(202) 804-6245
kloewy@lambdalegal.org

Jennifer Altman
Shani Rivaux
PILLSBURY WINTHROP
SHAW PITTMAN, LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131
(786) 913-4900
jennifer.altman@pillsburylaw.com
shani.rivaux@pillsburylaw.com

William C. Miller
Gary J. Shaw
PILLSBURY WINTHROP
SHAW PITTMAN, LLP
1200 17th Street, NW
Washington, DC 20036
(202) 663-8000
william.c.miller@pillsburylaw.com
gary.shaw@pillsburylaw.com

*Counsel for Plaintiffs-Appellees*

11

## CERTIFICATE OF COMPLIANCE

This brief complies with the page limitation set forth in the Court's October 23, 2024 Order, as this brief does not exceed ten (10) pages, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5)-(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font size 14.

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2024, I filed a true and correct copy of the foregoing with the Clerk of the United States Court of Appeals for the Eleventh Circuit by using the appellate case filing CM/ECF system.  Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan