No. 23-12155

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

*August Dekker et al.*,
Plaintiffs-Appellees,

v.

*Secretary, Florida Agency for Health Care Administration et al.*,
Defendants-Appellants.

U.S. District Court for the Northern District of Florida, No. 4:22-cv-325
(Hinkle, J.)

## DEFENDANTS-APPELLANTS' SUPPLEMENTAL BRIEF

Mohammad O. Jazil
Michael Beato
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
(850) 270-5938
*Counsel for Defendants-Appellants*

*August Dekker et al. v. Secretary, Florida Agency for Health Care Administration*

No. 23-12155

# CERTIFICATE OF INTERESTED PERSONS AND
# CORPORATE DISCLOSURE STATEMENT

Under Rule 26.1 and Circuit Rule 26.1, Defendants-Appellants certify that the certificates in their initial and reply briefs are complete.

Dated: July 11, 2025

/s/ Mohammad O. Jazil
Counsel for Defendants-Appellants

## TABLE OF CONTENTS

Table of Authorities ................................................................................................ ii

Argument .................................................................................................................. 1

Certificate of Compliance ....................................................................................... 8

Certificate of Service ............................................................................................... 8

# TABLE OF AUTHORITIES

**Cases**

*Eknes-Tucker v. Governor, State of Alabama*,
 80 F.4th 1205 (11th Cir. 2023) ................................................................. 4

*Gonzales v. Carhart*,
 550 U.S. 124 (2007) ................................................................................. 4

*Health & Hospital Corporation v. Talevski*,
 599 U.S. 166 (2023) ................................................................................. 2

*Medina v. Planned Parenthood South Atlantic*,
 No. 23-1275, 2025 U.S. LEXIS 2492 (2025) ....................................... 1-3

*United States v. Skrmetti*,
 222 L. Ed. 2d 136 (2025) ..................................................................... 3-6

## ARGUMENT

This Court asked whether two recent U.S. Supreme Court cases, *Medina v. Planned Parenthood South Atlantic* and *United States v. Skrmetti*, impact this appeal. They do. *Medina* forecloses Plaintiffs' Medicaid Act challenges to Florida's gender-dysphoria laws, and *Skrmetti* forecloses their equal-protection challenge.

I.

Plaintiffs' Medicaid Act challenges concern (1) the Act's early and periodic screening, diagnostic, and treatment service requirements, and (2) the Act's comparability requirements. Doc.1 at 80-81. Plaintiffs used 42 U.S.C. § 1983 as the statutory basis to bring the claims. *See* Doc.1 ¶ 277 (the Florida laws "violate[] the Medicaid Act's EPSDT requirements, 42 U.S.C. §§ 1396a(a)(10)(A), 1396a(a)(43)(C), 1396d(a)(4)(B), and 1396d(r)(5), which are enforceable by Plaintiffs under 42 U.S.C. § 1983"); Doc.1 ¶ 280 (the Florida laws "violate the Medicaid Act's Comparability Requirements, 42 U.S.C. § 1396a(a)(10)(B)(i), which is enforceable by Plaintiffs under 42 U.S.C. § 1983"); Doc.233 at 78-79 (same).

The Supreme Court's decision in *Medina* now limits § 1983's use in Medicaid Act challenges. No. 23-1275, 2025 U.S. LEXIS 2492 (2025). When a State purportedly "violates" a Medicaid "condition," the Court said, the "typical remedy is not a private enforcement suit" under § 1983, "but rather action by the Federal Government to terminate funds to the State." *Id.* at *10-11 (cleaned up); *see also* Reply Br. at 19-20.

1

True, there's an exception to this rule—but it's "rare," "atypical," and analyzed under a "stringent and demanding" standard. *Id.* at *13-14 (cleaned up). For a purported Medicaid Act violation, a private plaintiff can bring a private enforcement suit under § 1983 *only* when the at-issue Medicaid provisions "clearly and unambiguously use[] rights creating terms." *Id.* (cleaned up).

"Clearly and unambiguously" means "clearly and unambiguously." It matters whether the at-issue provisions include words like "right" and "rights." That was the case in *Health & Hospital Corporation v. Talevski*, 599 U.S. 166, 186 (2023), where the at-issue provisions contained words, titles, and phrases like "requirements relating to residents' *rights*," "protect and promote" residents' "*right* to be free from" unnecessary "physical or chemical restraints," and "transfer and discharge *rights*." *Medina*, 2025 U.S. LEXIS 2492, at *24 (cleaned up, emphases added). In that rare and atypical case, the Supreme Court found that a plaintiff could bring a private enforcement suit under § 1983 (albeit for a Federal Nursing Home Reform Act violation).

But anything short of some clear and unambiguous rights-creating language prevents a private enforcement suit under § 1983. That was the case in *Medina*. The at-issue Medicaid provisions in *Medina* looked nothing like the at-issue provisions in *Talevski*. The *Medina* provisions contained no clear and unambiguous rights-creating language. *Id.* At most, the *Medina* provisions merely spoke "to what a State must do to participate in Medicaid" and acknowledged that "a State that fails to fulfill its duty might lose federal funding." *Id.* at *25. That wasn't good enough.

2

So too here. Neither the EPSDT nor comparability provisions meet the stringent and demanding standard. The words "right" and "rights" are absent from the provisions. 'Specified *rights*' aren't detailed in the text. There's no duty for the State to 'protect and promote the *rights* of each' Medicaid recipient. Nor is there a '*right* to choose' contemplated in the text of the EPSDT and comparability provisions. *Id.* at *25-26.

Instead, the EPSDT and comparability provisions "speak[] to what a State must do to participate in Medicaid"—provide certain services based on certain guidelines—"and a State that fails to fulfill its duty might lose federal funding. Doubtless, too, th[ese] provision[s] seek[] to benefit both providers and patients. But missing from" the provisions is "clear and unambiguous rights-creating language." *Id.* (cleaned up).

With no rights-creating language, Plaintiffs' Medicaid-related § 1983 challenges must fail. That said, Plaintiffs can still persuade the Health and Human Services "Secretary" to "withhold some or all of the State's federal funding until he is satisfied that there will no longer be any such failure to comply" (purportedly) with the Medicaid Act. *Id.* at *9 (cleaned up). That's what Congress envisioned when it struck the Medicaid "bargain" with States in 1965. *Id.* at *8 (cleaned up). Anything else goes beyond that bargain, the Medicaid Act's terms, and the scope of § 1983 relief.

## II.

*Skrmetti* forecloses Plaintiffs' equal-protection challenge. In that case, the Supreme Court confronted a State law that banned minors from receiving certain

3

procedures for gender dysphoria, such as puberty blockers and cross-sex hormones. 222 L. Ed. 2d 136, 148 (2025). The Supreme Court held that the law was subject to rational-basis review and easily survived rational-basis review.

That's because the law turned (in part) on a medical diagnosis—gender dysphoria—and not sex. *Id.* at 150-51. "Healthcare providers may administer puberty blockers or hormones to minors to treat certain conditions but not to treat gender dysphoria, gender identity disorder, or gender incongruence," the Court said, and "[c]lassifications that turn on" "medical use are subject to only rational basis review." *Id.* at 151.

There were good reasons for the State law in *Skrmetti*. The State legislature "concluded that there is an ongoing debate among medical experts regarding the risks and benefits associated with administering puberty blockers and hormones to treat gender dysphoria, gender identity disorder, and gender incongruence." *Id.* at 158-59. The law's "ban on such" procedures "responds directly to that uncertainty." *Id.* at 159. Indeed, federal courts "afford States 'wide discretion to pass legislation in areas where there is medical and scientific uncertainty.'" *Id.* (quoting *Gonzales v. Carhart*, 550 U.S. 124, 163 (2007)).

*Skrmetti* (like *Eknes-Tucker* from this Court, 80 F.4th 1205 (11th Cir. 2023)) makes clear that Plaintiffs' equal-protection challenge is subject to rational-basis review and that Florida's regulation easily passes muster. Like the *Skrmetti* law, Florida's regulation and legislation turn on a medical diagnosis. So, as in *Skrmetti*, rational-basis review

4

applies. And just as in *Skrmetti*, the same rationales that undergirded the *Skrmetti* law undergird the State regulation and legislation here. There's no medical consensus on gender-dysphoria procedures. Those procedures can cause permanent, negative consequences for patients. The State gets wide berth to take the steps it deems necessary to protect its citizens.

Plaintiffs may argue that *Skrmetti* is only a case about minors. This appeal, by comparison, concerns minors and adults. That difference doesn't matter, though. As the State made plain in its appellate briefing, there's no medical consensus when it comes to adult gender-dysphoria procedures, either. Even Plaintiffs' preferred organizations recognize this. The World Professional Association for Transgender Health, for example, acknowledged that the "empirical evidence base for the assessment of" transgender and gender diverse adults "is limited," and that the "intervention-specific risks associated with the presence of specific physical conditions have not been well researched." Int. Br. at 6 (quoting WPATH). These experimental procedures raise concerns for minors and adults alike, and the State gets to protect its minor and adult citizens from such procedures.

Plaintiffs may also argue that *Skrmetti* left any animus issues unresolved. 222 L. Ed. 2d at 154 ("No such argument has been raised here."). But that doesn't assist Plaintiffs. As explained in the State's briefs, the district court didn't perform an appropriate *Arlington Heights* intentional discrimination analysis. *See* Reply Br. at 6-7. And Plaintiffs' slap-dash animus analysis in their answer brief—cobbling together extra-

5

record, hearsay articles and materials, along with a reimagining of the record—doesn't get the job done for the first time on appeal. *See* Reply Br. at 6-13 (detailing the faults in the answer brief). Even the amicus brief from the Biden Administration seemingly recognized that Plaintiffs (and the district court) fall far short of their intentional discrimination claim. U.S. Amicus Br. at 28-29. (That amicus brief is now withdrawn, 23-12155, Doc.143 (11th Cir. Feb. 28, 2025).) Put simply, even if Plaintiffs vigorously press an animus issue on appeal, though they decided to give it short shrift below, the attempt on appeal must fail. As explained in the State's reply brief, a mulligan isn't warranted here. Reply Br. at 15-16.

One final point. At oral argument, this Court asked whether transgender status is a quasi-protected classification. The *Skrmetti* Court found that this question wasn't at issue in that case. Again, the *Skrmetti* law turned (in part) on a medical diagnosis, not transgender status. 222 L. Ed. 2d at 155. That applies to Florida's regulation and legislation. They, too, turn on a medical diagnosis, not transgender status. The status quo of quasi-suspect classifications thus remains: no new quasi-suspect classification has been recognized in over forty years. *Id.* at 175 (Barrett, J., concurring).

\*     \*     \*

Because of the two recent Supreme Court cases, and for the reasons detailed in the State's initial, reply, supplemental briefs, and oral argument, this Court should reverse the district court's final order and judgment.

Dated: July 11, 2025                                  Respectfully Submitted,

/s/ Mohammad O. Jazil
Mohammad O. Jazil
Michael Beato
HOLTZMAN VOGEL BARAN
TORCHINSKY & JOSEFIAK PLLC
119 South Monroe Street, Suite 500
Tallahassee, FL 32301
Phone: (850) 270-5938
Facsimile: (850) 741-1023
mjazil@holtzmanvogel.com
mbeato@holtzmanvogel.com
zbennington@holtzmanvogel.com
*Counsel for Defendants-Appellants*

7

## CERTIFICATE OF COMPLIANCE

This brief is shorter than ten, single-spaced pages. It also complies with Rule 32(a)(5)-(6) because it's prepared in a proportionally spaced face using Microsoft Word 2016 in 14-point Garamond font.

| | |
|---|---|
| Dated: July 11, 2025 | /s/ Mohammad O. Jazil<br>Mohammad O. Jazil |

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed using this Court's CM/ECF, which will automatically serve a copy to all counsel of record.

| | |
|---|---|
| Dated: July 11, 2025 | /s/ Mohammad O. Jazil<br>Mohammad O. Jazil |