No. 23-12155

# In the United States Court of Appeals for the Eleventh Circuit

AUGUST DEKKER, BRIT ROTHSTEIN, SUSAN DOE, by and through her parents and next friends, JANE DOE and JOHN DOE, and K.F., by and through his parent and next friend, JADE LADUE,

*Plaintiffs-Appellees*,

v.

SECRETARY, FLORIDA AGENCY FOR HEALTH CARE ADMINISTRATION, *et al.*,

*Defendants-Appellants*.

On Appeal from the U.S. District Court for the Northern District of Florida, No. 4:22-cv-00325, Honorable Robert L. Hinkle, District Judge

## PLAINTIFFS-APPELLEES' SECOND SUPPLEMENTAL BRIEF

Simone Chriss
SOUTHERN LEGAL
COUNSEL, INC.
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890

Jennifer Altman
Shani Rivaux
PILLSBURY WINTHROP
SHAW PITTMAN, LLP
600 Brickell Ave., Ste.
    3100
Miami, FL 33131
(786) 913-4900

Abigail Coursolle
NATIONAL HEALTH LAW
PROGRAM
3701 Wilshire Boulevard
    Suite 315
Los Angeles, CA 90010
(310) 736-1652

Catherine McKee
Katy DeBriere
NATIONAL HEALTH LAW
PROGRAM
1512 E. Franklin Street,
    Suite 110
Chapel Hill, NC 27514
(919) 968-6308

Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585

Karen L. Loewy
LAMBDA LEGAL DEFENSE
AND EDUCATION FUND, INC.
815 16th Street NW,
    Suite 4140
Washington, DC 20006
    (202) 804-6245

*Counsel for Plaintiffs-Appellees*
(Additional counsel listed on inside cover.)

William C. Miller
Gary J. Shaw
PILLSBURY WINTHROP
SHAW PITTMAN, LLP
1200 17th Street, NW
Washington, DC 20036
(202) 663-8000

*Counsel for Plaintiffs-Appellees*

*August Dekker, et al. v. Secretary, Florida Agency for Health Care Administration*
No. 23-12155

**Certificate of Interested Persons and Corporate Disclosure Statement**

Per Rule 26.1 and Circuit Rule 26.1, Plaintiffs-Appellees certify that the certificates in their response brief and first supplemental brief are complete.

Dated: July 11, 2025

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan

*Counsel for Plaintiffs-Appellees*

C-1

# Table of Contents

Certificate of Interested Persons and Corporate Disclosure Statement ................C-1

Table of Contents .................................................................................................. i

Table of Authorities ............................................................................................. ii

1.  What impact, if any, does *United States v. Skrmetti*, 145 S. Ct. 1816 (2025), have on the Equal Protection Clause analysis in this case?...............1

   A.  The Exclusions expressly and purposely discriminate based on transgender status and therefore sex.......................................................2

   B.  Even if the Court finds the Exclusions do not facially discriminate based on transgender status or sex, the Exclusions' "medical use" classification is a pretext for discrimination against transgender people. ...................................................................4

   C.  The Exclusions invidiously discriminate against transgender people. .....................................................................................................4

   D.  *Skrmetti*'s reasoning does not apply to Plaintiffs' Section 1557 claim. ....................................................................................................5

2.  What impact, if any, does *Medina v. Planned Parenthood South Atlantic*, No. 23-1275, 2025 WL 1758505 (Jun. 26, 2025), have on whether the provisions of the Medicaid Act at issue in this case confer individual rights enforceable under 42 U.S.C. § 1983? ................................6

   A.  Defendants abandoned any argument regarding the enforceability of the Medicaid Act provisions at issue in this case, and none of the exceptions that would permit consideration of the argument apply. ...................................................6

Conclusion ..........................................................................................................10

Certificate of Compliance ..................................................................................12

Certificate of Service .........................................................................................13

# Table of Authorities

**Page(s)**

CASES

*Access Now, Inc. v. Sw. Airlines Co.*,
  385 F.3d 1324 (11th Cir. 2004) ..........................................................7, 8, 9, 10

*Angela R. v. Clinton*,
  999 F.2d 320 (8th Cir. 1993) ...............................................................7

*Arlington Heights v. Metropolitan Housing Development Corp.*,
  429 U.S. 252 (1977).............................................................................2

*In re Biscayne Park, Lmtd. Liab. Corp.*,
  540 Fed. Appx. 952 (11th Cir. 2013)...................................................10

*Bostock v. Clayton Cnty.*,
  590 U.S. 644 (2020).........................................................................1, 3

*Burch v. P.J. Cheese, Inc.*,
  861 F.3d 1338 (11th Cir. 2017) ........................................................8, 9

*United States v. Campbell*,
  26 F.4th 860 (11th Cir. 2022) ..................................................7, 8, 10

*Craig v. Boren*,
  429 U.S. 190 (1976)...........................................................................4

*In re Daikin Miami Overseas, Inc.*,
  868 F.2d 1201 (11th Cir. 1989) ..........................................................9

*Davis v. Shah*,
  821 F.3d 231 (2d Cir. 2016) ...............................................................9

*Washington v. Davis*,
  426 U.S. 229 (1976)............................................................................4

*Dean Witter Reynolds, Inc. v. Fernandez*,
  741 F.2d 355 (11th Cir. 1984) ...........................................................10

*S.D. ex rel. Dickson v. Hood*,
  391 F.3d 581 (5th Cir. 2004) ..............................................................9

*Doe v. Horne*,
115 F.4th 1083 (9th Cir. 2024) .............................................................4

*United States v. Durham*,
795 F.3d 1329 (11th Cir. 2015) ...........................................................7

*Eknes-Tucker v. Governor of Alabama*,
80 F.4th 1205 (11th Cir. 2023) ...........................................................4

*Emeldi v. Univ. of Oregon*,
698 F.3d 715 (9th Cir. 2012) ...............................................................6

*Equal Emp. Opportunity Comm'n v. R.G. &. G.R. Harris Funeral Homes, Inc.*,
884 F.3d 560 (6th Cir. 2018), *aff'd sub nom. Bostock v. Clayton Cnty.*, 590
U.S. 644 (2020) ....................................................................................3

*United States v. Garcia-Velazquez*,
No. 22-10456, 2022 WL 2784601 (11th Cir. July 15, 2022) ..........................7, 8

*Geduldig. Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*,
462 U.S. 669 (1983)..............................................................................5

*Geduldig v. Aiello*,
417 U.S. 484 (1974)...........................................................................1, 5

*General Elec. Co. v. Gilbert*,
429 U.S. 125 (1976)...............................................................................5

*Glenn v. Brumby*,
663 F.3d 1312 (11th Cir. 2011) ...........................................................3

*Gonzaga v. Doe*,
536 U.S. 273 (2002)...............................................................................9

*Hamilton v. Southland Christian School, Inc.*,
680 F.3d 1316, *overruled on other grounds*, 795 F.3d. 1329 (11th Cir. 2015)..10

*Health and Hospital Corp. of Marion County v. Talevski*,
599 U.S. 166 (2023)...........................................................................8, 9

*Karnoski v. Trump*,
926 F.3d 1180 (9th Cir. 2019) ...........................................................2, 3

*Kellner v. NCL (Bahamas), Ltd.*,
   753 Fed. Appx. 662 (11th Cir. 2018)....................................................................10

*United States v. Levy*,
   379 F.3d 1241 (11th Cir. 2004) .............................................................7

*Lipsett v. Univ. of P.R.*,
   864 F.2d 881 (1st Cir. 1988)..................................................................6

*Mayweathers v. Newland*,
   314 F.3d 1062 (9th Cir. 2002) .............................................................5

*Medina v. Planned Parenthood South Atlantic*,
   No. 23-1275, 2025 WL 1758505 (Jun. 26, 2025)................................9

*Miller v. Whitburn*,
   10 F.3d 1315 (7th Cir. 1993) ...............................................................9

*Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.*,
   293 F.3d 472 (8th Cir. 2002) ...............................................................9

*Pers. Adm'r of Massachusetts v. Feeney*,
   442 U.S. 256 (1979)...............................................................................2

*Rodriguez v. DeBuono*,
   174 F.3d 227 (2d Cir. 1999) ................................................................7

*Schmitt v. Kaiser Found. Health Plan of Wash.*,
   965 F.3d 945 (9th Cir. 2020) ............................................................5, 6

*United States v. Skrmetti*,
   145 S. Ct. 1816 (2025).............................................1, 2, 3, 4, 5, 6, 10

*Van Wyhe v. Reisch*,
   581 F.3d 639 (8th Cir. 2009) ...............................................................5

*Waskul v. Washtenaw Co. Cmty. Mental Health*,
   979 F.3d 426 (6th Cir. 2020) ...............................................................9

*Wood v. Milyard*,
   566 U.S. 463 (2012)............................................................................7, 8

## CONSTITUTIONAL PROVISIONS

United States Constitution
    Fourteenth Amendment ..................................................................2, 5, 10

## STATUTES AND CODES

United States Code
    Title 42, section 300gg-3(b)(1) ...............................................................6
    Title 42, section 300gg-4 ........................................................................6
    Title 42, section 1396a(a)(10)(A) ...........................................................9
    Title 42, section 1396a(a)(10)(B) ...........................................................9
    Title 42, section 1396a(a)(23) .................................................................9
    Title 42, section 1396a(a)(43)(C) ...........................................................9
    Title 42, section 1396d(a)(4)(B) .............................................................9
    Title 42, section 1396d(r)(5) ...................................................................9
    Title 42, section 1396r-8 .........................................................................8
    Title 42, section 2000e(k) .......................................................................5
    Title 42, section 18022(4) .......................................................................6
    Title 42, section 18116(a) .......................................................................6

Affordable Care Act
    Section 1557..................................................................1, 2, 5, 6, 10

Florida Administrative Code
    Section 59G-1.050(7)(a) ..........................................................................4
    Section 59G-1.050(7)(a)(3) ......................................................................3

Medicaid Act
    Section 1983.....................................................................6, 7, 8, 9

Tennessee Annotated Code
    Section 68-33-101(n)(2) ..........................................................................3

## RULES AND REGULATIONS

Federal Register
    Vol. 83, page 30,903 ................................................................................5
    Vol. 83, page 35,959 ................................................................................5
    Vol. 83, pages 35,962-63 .........................................................................5

Federal Rules of Civil Procedure
    Rule 12(b)(6)............................................................................................6

v

**OTHER AUTHORITIES**

Florida Senate Bill 254
  Section 3................................................................................................3

H.R. Rep. 95-948, 1978 U.S.C.C.A.N. 4749 ............................................5

H.R. Rep. No. 92–554 (1972) ...................................................................6

On June 30, 2025, the Court directed the parties to file supplemental briefs on two questions. Accordingly, Plaintiffs-Appellees submit this supplemental brief and answer the questions as follows:

**1. What impact, if any, does *United States v. Skrmetti*, 145 S. Ct. 1816 (2025), have on the Equal Protection Clause analysis in this case?**

In *Skrmetti*, the Supreme Court upheld a decision to reverse a preliminary injunction against Tennessee's ban on gender-affirming medical care for minors. In doing so, the Court relied on *Geduldig v. Aiello*, 417 U.S. 484 (1974), to hold that Tennessee's ban "does not exclude any individual from medical treatments on the basis of transgender status but rather removes one set of diagnoses—gender dysphoria, gender identity disorder, and gender incongruence—from the range of treatable conditions." *Skrmetti*, 145 S. Ct. at 1833. The Court found that Tennessee's law, "[o]n its face," classified based on age and medical condition. *Id.* at 1829.

*Skrmetti*, however, is fairly limited in its scope and breadth. It turned on the arguments, facts, and context of that case. It is therefore important to note what *Skrmetti* did not do:

1.     In *Skrmetti*, the Supreme Court did not back away from the holding in *Bostock* that "discrimination based on … transgender status necessarily entails discrimination based on sex." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 669 (2020). To the contrary, it reaffirmed it. *See Skrmetti*, 145 S. Ct. at 1834. It is therefore consistent with Plaintiffs' arguments in this case both under the equal protection clause *and* Section 1557 of the Affordable Care Act. Plaintiffs' Br. 25–26.

2.     *Skrmetti* did not reject Plaintiffs' arguments here that *Bostock*'s reasoning applies in the equal protection context. *See Skrmetti*, 145 S. Ct. at 1834 ("We have not yet considered whether *Bostock*'s reasoning reaches beyond the Title VII context, and we need not do so here."); Plaintiffs' Br. 23–26.

3.     *Skrmetti* did not reject Plaintiffs' arguments that classifications based on transgender status are subject to heightened scrutiny, as Plaintiffs have argued here. *See* 145 S. Ct. at 1832 ("This Court has not previously held that transgender individuals are a suspect or quasi-suspect class. And this case, in any event, does not raise that question[.]"); Plaintiffs' Br. 29–32.

4.     While *Skrmetti*, relying on *Geduldig v. Aiello*, 417 U.S. 484 (1974), held that policies that classify based on gender dysphoria do not *necessarily* classify based on sex or transgender status, it expressly acknowledged that "only transgender individuals seek treatment for gender dysphoria" and reaffirmed that a regulation is subject to heightened scrutiny if it is a "mere pretext for invidious sex [and transgender status] discrimination." 145 S. Ct. at 1833. What is more, *Skrmetti* noted

1

that the plaintiffs there "ha[d] not argued that [the law]'s prohibitions are mere pretexts designed to effect an invidious discrimination against transgender individuals." *Id.*

Indeed, *Skrmetti* did not reject the notion that laws that target people who experience *gender dysphoria* classify based on transgender status and therefore should receive heightened scrutiny. *See* 145 S. Ct. at 1834 n.3 (distinguishing Tennessee's law from one that "regulates a class of *persons* identified on the basis of a specified characteristic").

5.      Finally, *Skrmetti* reaffirmed that "where a law's classifications are neither covertly nor overtly based on sex," it is still subject to "heightened review" if "it was motivated by an invidious discriminatory purpose." 145 S. Ct. at 1832 (citing *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 271–274 (1979), and *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264–266 (1977)). The Court noted that "[n]o such argument ha[d] been raised [t]here." *Id.* By contrast, as noted in Plaintiffs' briefs and explained herein, such argument has been presented in this case. Plaintiffs' Br. 31–37; Plaintiffs' Supplemental Br.

Considering the above, Plaintiffs explain how the Exclusions[1] discriminate based on transgender status and therefore sex in violation of the Fourteenth Amendment. In addition, Plaintiffs explain how *Skrmetti* does not control—and does not undercut—Plaintiffs' sex discrimination claim under Section 1557.

### A. The Exclusions expressly and purposely discriminate based on transgender status and therefore sex.

Here, the Exclusions explicitly discriminate based on transgender status. For example, the Rule was adopted through what was deemed the "***Transgender*** Health Care Non-Legislative Pathway," Doc. 182-35, and SB254 was adopted through the "***Transgender*** Health Care Policy Pathway," Doc. 182-36 (emphases added). These are not incidental references to sex because "medical treatments and procedures are uniquely bound up in sex." *Skrmetti*, 145 S. Ct. at 1829. Rather, these are explicit references to ***transgender*** people showing that the Exclusions seek to "regulate[] a class of *persons* identified on the basis of a specified characteristic." *Id.* at 1834 n.3.

The reasoning in *Karnoski v. Trump*, 926 F.3d 1180, 1201 (9th Cir. 2019), is most instructive here. There, the Court found "unpersuasive" the government's argument that its exclusionary military policy was based on "gender dysphoria" and not transgender status because "*[o]n its face*, the 2018 Policy regulates *on the basis*

---

[1]      Plaintiffs adopt the terminology and defined terms from their response brief and incorporate the arguments set forth in the response and first supplemental briefs as if fully set forth herein.

of transgender status" and therefore "*on its face treats transgender persons differently than other persons*." *Id.* at 1201 (emphasis added) (noting references to "transgender persons" in the policy). The same is true here.[2]

What's more, SB254 does not reference any medical condition, rather it prohibits Medicaid coverage for "***sex-reassignment*** prescriptions or procedures." SB254 §3. The Rule similarly refers to "***sex reassignment***." FAC 59G-1.050(7)(a)(3). Again, these references are not incidental, nor are they necessary to describe a medical condition or service. Rather they evince the express classification at play: transgender people. By targeting "sex reassignment," the Exclusions necessarily classify based on transgender status as only transgender people undergo "sex reassignment." *See* Plaintiffs' Br. 24; *see also Equal Emp. Opportunity Comm'n v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 577 (6th Cir. 2018) ("Title VII protects transgender persons because of their transgender or *transitioning status*, because transgender or *transitioning status* constitutes an inherently gender non-conforming trait."), *aff'd sub nom. Bostock v. Clayton Cnty.*, 590 U.S. 644 (2020); *cf. Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011) ("A person is defined as transgender precisely because of the perception that his or her behavior transgresses gender stereotypes."). We do not "distinguish between status and conduct" in this context. Plaintiffs' Br. 40 (citation omitted).

*Skrmetti* reaffirmed *Bostock*'s holding that "discrimination based on … transgender status necessarily entails discrimination based on sex." *Bostock*, 590 U.S. at 669; *see also Skrmetti*, 145 S. Ct. at 1834; Plaintiffs' Br. 25–26.[3] The Exclusions unconstitutionally discriminate based on transgender status and therefore sex.

Critically, *Skrmetti*'s analysis hinges on the Court's finding that Tennessee's law classified based on age and medical condition. 145 S.Ct. at 1829. That is not the case here, where the Exclusions irrationally target transgender people of *all* ages; it prohibits coverage of gender-affirming medical care for Medicaid beneficiaries *regardless of age*. Additionally, Tennessee's law discriminated based on medical condition by prohibiting the medications and procedures at issue only when provided "for the purpose of … *[t]reating* purported *discomfort* or *distress* from a discordance between the minor's sex and asserted identity." Tenn. Code Ann. § 68-33-101(n)(2) (emphasis added). Here, the Exclusions target gender transition and therefore transgender people. Simply put, the Exclusions operate differently than the law in

---

[2]    The GAPMS Report similarly makes repeated references to transgender people, including multiple references to "transgender lifestyles." Doc. 182-38.

[3]    The but-for analysis in *Skrmetti*, 145 S. Ct. at 1834, thus does not apply here where the Exclusions facially turn "sex reassignment" and "transgender" status.

*Skrmetti*, such that *Skrmetti* does not control this case's equal protection analysis.

Finally, while it is true the Rule—not SB254—references "gender dysphoria" FAC 59G-1.050(7)(a), that does not take away the fact that the Rule was purposely and expressly adopted because of its impact on *transgender* people and to target *sex reassignment*. Doc. 246, at 37–38. In any event, classifications can be simultaneously based on multiple grounds; that does not insulate them from liability when one of the bases is prohibited. *See, e.g.*, *Craig v. Boren*, 429 U.S. 190, 197 (1976) (applying heightened scrutiny to sex classification even though it only affected men between the ages of 18 and 20).

As a result, Heightened scrutiny applies for the reasons explained here and in Plaintiffs' Response Brief, even under *Skrmetti*.

**B. Even if the Court finds the Exclusions do not facially discriminate based on transgender status or sex, the Exclusions' "medical use" classification is a pretext for discrimination against transgender people.**

Even if this Court concludes the Exclusions do not facially classify based on transgender status and sex, there can be little doubt the Exclusions are "mere pretext for invidious sex discrimination." *Skrmetti*, 145 S. Ct. at 1833; *see also Eknes-Tucker v. Governor of Alabama*, 80 F.4th 1205, 1229–30 (11th Cir. 2023). The plaintiffs in *Skrmetti* did not argue pretext. 145 S. Ct. at 1833. Here, Plaintiffs have (*see* Plaintiffs' Br. 41–51), and the evidence at trial demonstrated the Exclusions are pretext for invidious discrimination against transgender people. Indeed, both the Rule and SB254 were adopted with the goal of having "***transgender*** health care" "effectively banned." Docs. 182-35, 182-36.

As noted in Plaintiffs' Response Brief (at 41–42), that the Exclusions prohibit coverage for adults and minors alike even though the State's justifications solely concern minors bolsters a finding of pretext. *See Washington v. Davis*, 426 U.S. 229, 242 (1976) (intentional discrimination may be adduced from the "totality of the relevant facts"). That the Exclusions exclusively impact transgender Medicaid beneficiaries, *regardless of medical necessity or age*, and no one else similarly supports pretext. *See Doe v. Horne*, 115 F.4th 1083, 1103 (9th Cir. 2024) ("[T]he Supreme Court has long recognized that a policy's discriminatory impact may support a finding of discriminatory purpose.").

**C. The Exclusions invidiously discriminate against transgender people.**

As previously noted, *Skrmetti* reaffirmed that "where a law's classifications are neither covertly nor overtly based on sex," it is still subject to "heightened review" if "it was motivated by an invidious discriminatory purpose." 145 S. Ct. at 1832. Plaintiffs have provided ample evidence that the Exclusions are motivated by

animus. *See* Plaintiffs' Br. 12–14, 32–38. This alone is sufficient to subject the Exclusions to heightened scrutiny, which, as Plaintiffs have argued, the Exclusions cannot survive. *See* Plaintiffs' Br. 42–49.

**D. *Skrmetti*'s reasoning does not apply to Plaintiffs' Section 1557 claim.**

Finally, context matters. Plaintiffs' Section 1557 claim is a statutory discrimination claim, not a constitutional equal protection claim. Foundational to *Skrmetti* was the legal fiction in *Geduldig* that a medical condition (pregnancy) cannot be a proxy for sex (women) under constitutional equal protection. Congress expressly rejected this fiction in the statutory context. Thus, neither the reasoning of *Skrmetti* nor the Fourteenth Amendment's limitations apply here.

It is important to keep in mind that the Constitution sets a floor, not a ceiling, for the protection of individuals' rights. *Cf. Van Wyhe v. Reisch*, 581 F.3d 639, 651 (8th Cir. 2009) ("RLUIPA appropriately views the constitutional standard as a floor, not a ceiling, and provides additional statutory protection[.]"); *Mayweathers v. Newland*, 314 F.3d 1062, 1070 (9th Cir. 2002) (same). Importing *Skrmetti*'s reasoning to the statutory context would undermine the ACA's purpose and protections, which prohibits benefit design discrimination—discrimination that occurs when an insurer designs a health plan to exclude medical diagnoses or procedures required by or associated with a protected class. *See, e.g., Schmitt v. Kaiser Found. Health Plan of Wash.*, 965 F.3d 945, 949, 958 (9th Cir. 2020).

*Skrmetti* was focused on "reconcil[ing] the principle of equal protection with the reality of legislative classification," noting that courts afford "wide latitude" to a legislative classification, subject to only "rational basis" review unless the classification was afforded a "heightened" level of scrutiny. 145 S.Ct. at 1828. In *Skrmetti*, based on *Geduldig*, the Supreme Court concluded that Tennessee's law classified only based on age and medical use, not sex or transgender status.

But *Geduldig*'s reasoning (and therefore *Skrmetti*'s) does not apply in the statutory context. To the contrary, Congress passed legislation that reflects that classifications based on medical use can constitute sex discrimination. Following the Supreme Court's decision in *General Elec. Co. v. Gilbert*, 429 U.S. 125 (1976), relying on *Geduldig*'s reasoning into Title VII, Congress swiftly amended Title VII to "unambiguously" reject "the holding and the reasoning" of *Gilbert* and *Geduldig*. *Newport News Shipbuilding & Dry Dock Co. v. E.E.O.C.*, 462 U.S. 669, 678 (1983); *see* 42 U.S.C. §2000e(k); H.R. Rep. 95-948, 1978 U.S.C.C.A.N. 4749. And since their first formulation, Title IX's regulations relating to sex discrimination have likewise expressly rejected *Geduldig* and *Gilbert*. *See* 45 Fed. Reg. 30,903, 35,959,

35,962-63 (May 9, 1980).[4] Congress intended for nondiscrimination statutes to prohibit the use of medical classifications as a proxy for sex discrimination.

When Congress enacted Section 1557, it intended to protect enrollees from discrimination based on their health status and the medical services used. *See*, *e.g.,* 42 U.S.C. §§ 300gg-3(b)(1), 300gg-4, 18022(4), 18116(a). The ACA thus abolished the ability of insurers to discriminate based on health conditions. *Schmitt*, 965 F.3d at 948 "Prior to the ACA's enactment, an insurer could generally design plans to offer or exclude benefits as it saw fit without violating federal antidiscrimination law…" *Schmitt*, 965 F.3d at 948, post ACA, health insurers have "an ***affirmative obligation not to discriminate*** in the provision of health care" and must "not design plan benefits in ways that discriminate." *Id.* at 955 (emphasis added). Section 1557 codifies a statutory commitment to eliminate facial and functional discrimination in health coverage—exactly the sort at issue here: benefit design discrimination that targets people based on a protected characteristic. *Skrmetti* does not undo this statutory command.

## 2. What impact, if any, does *Medina v. Planned Parenthood South Atlantic*, No. 23-1275, 2025 WL 1758505 (Jun. 26, 2025), have on whether the provisions of the Medicaid Act at issue in this case confer individual rights enforceable under 42 U.S.C. § 1983?

Whether the specific Medicaid Act provisions at issue in this case are enforceable under § 1983 is a question arising from whether a plaintiff has stated a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6). The absence of a valid claim for relief does not implicate subject matter jurisdiction. Therefore, Defendants needed to raise the enforceability argument in their initial brief. They did not. Nor did they raise it in their reply brief or at oral argument. Defendants have therefore abandoned the argument. Even if the Court finds the abandonment was unwitting (it was not), there are no extraordinary circumstances here to overcome that error.

## A. Defendants abandoned any argument regarding the enforceability of the Medicaid Act provisions at issue in this case, and none of the exceptions that would permit consideration of the argument apply.

---

[4]    "[T]he legislative history of Title IX 'strongly suggests that Congress meant for similar substantive standards to apply under Title IX as had been developed under Title VII.'" *Emeldi v. Univ. of Oregon*, 698 F.3d 715, 724 (9th Cir. 2012) (quoting *Lipsett v. Univ. of P.R.*, 864 F.2d 881, 897 (1st Cir. 1988), and citing H.R. Rep. No. 92–554, at 46 (1972)).

Generally, an argument not briefed before the appellate court "is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004); *see U.S. v. Levy*, 379 F.3d 1241, 1242-43 (11th Cir. 2004) (collecting cases). Abandonment applies even where an intervening Supreme Court decision affects the parties' arguments, so long as that decision does not overrule precedent and thereby generate new theories or claims a party could not have previously raised. *See U.S. v. Durham*, 795 F.3d 1329, 1330-31 (11th Cir. 2015). While there are exceptions to this rule, none apply here.

To be sure, courts can address a jurisdictional defect, *sua sponte*, even if the party has abandoned it. *U.S. v. Campbell*, 26 F.4th 860, 872, n.6 (11th Cir. 2022). However, whether a provision is enforceable under § 1983 "go[es] to the merits … not the district court's jurisdiction." *Angela R. v. Clinton*, 999 F.2d 320, 324 (8th Cir. 1993) (declining to address whether certain statutory provisions were enforceable, despite an intervening Supreme Court decision finding a similar provision was unenforceable, because the matter was not jurisdictional); *see Rodriguez v. DeBuono*, 174 F.3d 227, 233 (2d Cir. 1999) (determining whether a Medicaid Act provision gives rise to an "enforceable private right of action … does not implicate jurisdiction").

Because the enforcement question does not implicate jurisdiction, it can be waived. Indeed, courts do not generally hear arguments that have been intentionally waived. *Campbell*, 26 F.4th at 872-73. Waiver occurs when a party makes a purposeful choice to omit an argument from an initial brief. *U.S. v. Garcia-Velazquez*, No. 22-10456, 2022 WL 2784601 at *5 (11th Cir. July 15, 2022) (if waived, the issue cannot be raised *sua sponte* even under extraordinary circumstances); *Wood v. Milyard*, 566 U.S. 463, 474 (2012) (a party who intentionally relinquishes or omits a known right in argument waives the opportunity for the court to address it); *Campbell*, 26 F.4th at 872 ("[I]f a party affirmatively and intentionally relinquishes an issue, then courts must respect that decision.").

Plaintiffs recognize that, under "extraordinary circumstances," courts can consider arguments that have been unintentionally abandoned but such extraordinary circumstances do not exist here. *See Campbell*, 26 F.4th at 875 (circumstances must be "extraordinary enough" for the courts to exercise their discretion and excuse a party's unwitting abandonment).

Specifically, unintentional abandonment of an argument is treated as forfeiture, and the court may consider the argument only if the abandoning party can show one of the following: (1) if the issue is purely a legal question and not considering it would result in a "miscarriage of justice," (2) there was no opportunity to raise the argument in the district court, (3) "substantial justice" is involved, (4)

proper resolution is "beyond any doubt," or (5) the issue presents a question of "general impact" or "great public concern." *Campbell*, 26 F.4th at 872-73 (citing *Access Now*, 385 F.3d at 1332). Importantly, even where one of these circumstances is met, the issue must still be one of an "extraordinary" nature. *Campbell*, 26 F.4th at 875. ("In *most* cases, an issue abandoned on appeal should be dismissed without reaching the merits.") (emphasis added).

Here, Defendants waived any argument on appeal that the Medicaid Act provisions at issue in this case are unenforceable, as the record demonstrates that they consciously omitted the argument on appeal.[5] Defendants were well aware of the enforceability argument – they raised it on summary judgment, Doc. 120, at 28-30, in their trial brief, Doc. 195, at 1, and again during their trial closing argument. Tr. 1389:15-1390:8. Notably, during closing, counsel for Defendants stated that their appellate legal strategy would depend on a forthcoming Supreme Court decision addressing whether Spending Clause statutes can be enforced under § 1983. Tr. 1390:2-8. That decision, *Health and Hospital Corp. of Marion County v. Talevski*, 599 U.S. 166 (2023), reaffirmed the Court's test for private enforcement under § 1983 and found the particular provisions at issue enforceable.[6] Despite their knowledge, Defendants omitted any mention of enforceability on appeal.

Further, on reply, Defendants *did* raise enforceability as to 42 U.S.C. § 1396r-8, a provision Plaintiffs never sought to enforce. Doc. 102, at 38-39. That Defendants raised enforceability of *a* Medicaid Act provision (but not one Plaintiffs sought to enforce) is further evidence Defendants knew of the argument and chose to abandon it. Based on this evidence, Defendants' waiver was intentional, and the Court should not address the enforcement argument further. *See Garcia-Velazquez*, 2022 WL 2784601 at *5; *Campbell*, 26 F.4th at 871; *Wood*, 566 U.S. 463, 474.

Assuming *arguendo* Defendants' abandonment was unwitting, none of the exceptions articulated in *Access Now* are present here. *See* 385 F.3d at 1332. As to the first exception, while enforceability of a specific provision of the Medicaid Act is an issue of law, failure to consider it would not result in a "miscarriage of justice." *Id*. Defendants had ample opportunity to raise and brief the matter. *See Burch v. P.J.*

---

[5]    The record here is not like that in *Campbell*. Here, the record clearly establishes that Defendants considered but then rejected raising an argument about enforceability on appeal. Tr. 1390:2-8. The Court can therefore find Defendants waived the enforceability argument without participating in the kind of evidentiary hearing the Court cautioned against in *Campbell*. *See* 26 F.4th at 875-877.

[6]    As Defendants' counsel noted during his closing, *Talevski* was argued on November 8, 2022 and remained pending at the time of trial. The case was decided on June 8, 2023, almost four months before Defendants' initial brief was due.

*Cheese, Inc.*, 861 F.3d 1338, 1352 (11th Cir. 2017) (because the abandoning party had "ample opportunity" to raise the argument, refusal to entertain it would not result in a miscarriage of justice). Months before Defendants' brief was due, the Supreme Court reaffirmed the 20-year-old test for determining enforceability of Medicaid Act provisions under § 1983. *See Talevski*, 559 U.S. at 183 (reaffirming *Gonzaga v. Doe*, 536 U.S. 273 (2002) which sets forth that enforcement test); *see also Medina*, 2025 WL 1758505 at *10 (reaffirming that *Gonzaga* sets forth the enforcement test). Because Defendants were well aware and had ample opportunity to raise the applicability of the *Gonzaga* test on appeal, their failure to do so cannot be characterized as a miscarriage of justice, particularly one of an extraordinary nature. *Burch*, 861 F.3d at 1352.

Because Defendants raised the enforceability argument with the district court, the second exception is also not applicable.

The third exception "is generally equated with the vindication of fundamental constitutional rights." *In re Daikin Miami Overseas, Inc.*, 868 F.2d 1201, 1207 (11th Cir. 1989). Defendants' circumstances do not meet this exception because the ability to pursue a failure to state a claim defense on appeal does not implicate any fundamental constitutional rights of the State.

As to the fourth exception, proper resolution in Defendants' favor is not "beyond any doubt." The *Medina* decision did not concern the provisions at issue in this case.[7] Applying the *Gonzaga* test (reaffirmed in *Talevski* and *Medina*), other circuits have consistently found these provisions are enforceable.[8] *See Access Now*, 385 F.3d at 1334 (because the question was not easy, its resolution was not beyond any doubt).

---

[7]    Plaintiffs asserted claims under the EPSDT provisions (42 U.S.C. §§ 1396a(a)(10)(A), 1396d(a)(4)(B), 1396d(r)(5), and 1396a(a)(43)(C)) and the comparability provision (42 U.S.C. § 1396a(a)(10)(B) of the Medicaid Act. *See* Doc. 231-1, at ¶¶ 286-91. The plaintiffs in *Medina* sought to enforce the free choice of provider provision, 42 U.S.C. § 1396a(a)(23).

[8]    Both the Sixth and Second Circuits have held the comparability provision confers a private right of action enforceable under § 1983. *See Waskul v. Washtenaw Co. Cmty. Mental Health*, 979 F.3d 426 (6th Cir. 2020*); see also Davis v. Shah*, 821 F.3d 231 (2d Cir. 2016). Every federal appellate court to have considered whether the EPSDT provisions are enforceable through § 1983 has concluded they are. *See S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 602-07 (5th Cir. 2004); *Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.*, 293 F.3d 472, 477-79 (8th Cir. 2002); *Miller v. Whitburn*, 10 F.3d 1315, 1319-20 (7th Cir. 1993).

The fifth exception is inapplicable because it is generally reserved for cases regarding a policy with national application, as opposed to the state policy at issue here. *See In re Biscayne Park, Lmtd. Liab. Corp.*, 540 Fed. Appx. 952, 958 (11th Cir. 2013) (citing *Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 360-61 (11th Cir. 1984)). Accordingly, Defendants have abandoned the argument of enforceability as to the Medicaid Act provisions present in this case, and no extraordinary grounds exist to resurrect the argument.

Finally, the judicial precedents discussed here protect the principle of party presentation which "serves vital interests." *Kellner v. NCL (Bahamas), Ltd.*, 753 Fed. Appx. 662, 666 (11th Cir. 2018) (cleaned up). They promote the adversarial system by situating the right to frame the issues on appeal with the parties. *Id.* (citing *Access Now*, 385 F.3d at 1330); *see also Campbell*, 26 F.4th at 872 ("Under the party presentation principle … 'we rely on the parties to frame the issues … and assign to courts the role of neutral arbiter of matters the parties present.'") (citation omitted). The principle also protects the right of the opposing party "to analyze and respond to her adversary's contentions." *Kellner*, 753 Fed. Appx. at 666 (citing *Hamilton v. Southland Christian School, Inc.*, 680 F.3d 1316, *overruled on other grounds*, 795 F.3d. 1329 (11th Cir. 2015)).

This Court should find that Defendants abandoned the argument and it therefore should not be addressed. If, however, the Court disagrees, Plaintiffs respectfully ask for the opportunity to fully address the matter, including being given leave to respond to the opposition's arguments and to be heard at oral argument.

## Conclusion

It is not—and cannot be—the law that transgender people are strangers to our Constitution's protections against invidious governmental discrimination. *Skrmetti* does not bless nor give license to such discrimination. To the contrary, the Fourteenth Amendment protects persons from governmental enactments, like the Exclusions, that *facially* discriminate based on transgender status and/or are "designed to effect an invidious discrimination against transgender individuals," *Skrmetti*, 145 S. Ct. at 1833. Furthermore, *Skrmetti* does not impact Plaintiffs' Section 1557 claim, as its reasoning does not carry over to the statutory context.

Additionally, Defendants made the strategic decision not to raise enforceability of the Medicaid Act provisions in this case on appeal. As such, the argument has been abandoned without exception. If, however, the Court takes up the matter regardless of Defendants' purposeful decision, Plaintiffs should have the opportunity to fully respond to Defendants' arguments and additionally request oral argument on the matter.

For the foregoing reasons, the district court's judgment should be affirmed.

Dated this 11th day of July 2025.

Respectfully submitted,

Simone Chriss
SOUTHERN LEGAL COUNSEL, INC.
1229 NW 12th Avenue
Gainesville, FL 32601
(352) 271-8890
simone.chriss@southernlegal.org

Abigail Coursolle
NATIONAL HEALTH LAW PROGRAM
3701 Wilshire Boulevard, Suite 315
Los Angeles, CA 90010
(310) 736-1652
coursolle@healthlaw.org

Catherine McKee
Katy DeBriere
NATIONAL HEALTH LAW PROGRAM
1512 E. Franklin Street, Suite 110
Chapel Hill, NC 27514
(919) 968-6308
mckee@healthlaw.org
debriere@healthlaw.org

William C. Miller
Gary J. Shaw
PILLSBURY WINTHROP
SHAW PITTMAN, LLP
1200 17th Street, NW
Washington, DC 20036
(202) 663-8000
william.c.miller@pillsburylaw.com
gary.shaw@pillsburylaw.com

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
120 Wall Street, 19th Floor
New York, NY 10005
(212) 809-8585
ogonzalez-pagan@lambdalegal.org

Karen L. Loewy
LAMBDA LEGAL DEFENSE AND
EDUCATION FUND, INC.
815 16th Street NW, Suite 4140
Washington, DC 20006
(202) 804-6245
kloewy@lambdalegal.org

Jennifer Altman
Shani Rivaux
PILLSBURY WINTHROP
SHAW PITTMAN, LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131
(786) 913-4900
jennifer.altman@pillsburylaw.com
shani.rivaux@pillsburylaw.com

*Counsel for Plaintiffs-Appellees*

11

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the page limitation set forth in the Court's June 30, 2025 Order, as this brief does not exceed ten (10) single-spaced pages, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5)-(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font size 14.

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2025, I filed a true and correct copy of the foregoing with the Clerk of the United States Court of Appeals for the Eleventh Circuit by using the appellate case filing CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Omar Gonzalez-Pagan*
Omar Gonzalez-Pagan
